23

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 21 1999

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| PORT ELEVATOR-<br>BROWNSVILLE, L.C. | § § § | |
| VS. | § § | CIVIL NO. B-98-23 |
| IVONNE SOTO VEGA, BERSAIN<br>GUTIERREZ, AND SYSCO DE BAJA<br>S.A. DE C.V. | § § § | JURY DEMANDED |

## UNOPPOSED MOTION FOR LEAVE TO FILE AMENDED PLEADING, INCLUDING AUTHORITIES

1. Plaintiff seeks to amend its petition, and request leave of Court herewith, pursuant to F.R.C.P. 15(a).

2. Plaintiff seeks to amend its pleadings in the following respects and for the following reasons:

    A.    To clarify that the amount in controversy actually exceeds Seventy-Five Thousand and No/100 Dollars ($75,000.00).

    B.    To request an award of attorneys' fees.

3. The granting for leave to file the requested amendment will not prejudice the opposing parties; nor will such amendments serve to delay the ultimate trial of this action.

4. An amended petition is attached hereto as an addendum to this Motion.

5. Plaintiff therefore moves that leave of Court be granted to amend its pleadings.

1

2

Respectfully Submitted,

**SKAGGS & GARZA, L.L.P.**
P.O. Drawer 2285
710 Laurel
McAllen, Texas 78502-2285
Phone (956) 687-8216
Fax (956) 630-6570

_____
JOHN SKAGGS
State Bar No. 18452500
**ATTORNEY IN CHARGE FOR DEFENDANT PORT ELEVATOR-BROWNSVILLE, L.C.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel on this the 16 day of September, 1999:

Roy Dale
6301 N. 10th St.
McAllen, Texas 78502

_____
John Skaggs

3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR-<br>BROWNSVILLE, L.C. | § § § | |
| VS. | § § | CIVIL NO. B-98-23 |
| IVONNE SOTO VEGA, BERSAIN<br>GUTIERREZ, AND SYSCO DE BAJA<br>S.A. DE C.V. | § § § | JURY DEMANDED |

### FIRST AMENDED COMPLAINT IN INTERPLEADER

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

1. This complaint is filed by Port Elevator-Brownsville, L.C.

2. Plaintiff is a corporation organized under the laws of the State of Texas.

3. Defendants are individuals who may be served at the following address:

   1. Ivonne Soto Vega
      Paseo Rio Tijuana No. 1716
      Zona Del Rio, Tijuana B.C. Mexico

   2. Bersain Gutierrez and
      *Sysco De Baja S. A. de C.V.*
      2295 Paseo de la Americas, Suite 22
      Otay Mesa, California 92173

4. This Court has jurisdiction pursuant to 28 USC, Sections 1332, 1335 and 2361, in that it is alleged that all Respondents are citizens of the Republic of Mexico.

Alternatively, this Complaint is filed pursuant to Rule 22 FRCP. Plaintiff has heretofore tendered to the registry of the Court the total amount of $75,000.00 and is still in possession of cash or commodity in excess of said amount. It is estimated by

1

Plaintiff that the total amount in controversy, less reasonable offsets for storage and handling, is in excess $100,000.00.

Plaintiff herein further asserts diversity between the stake holder (Plaintiff) and one or more of the Defendants; and further asserts the existence of diversity as between the named Defendants.

In compliance with the provisions of 28 USC Section 1335, Plaintiff asserts that it is in possession of money or property of value more than $500.00.

5. Plaintiff is merely a stakeholder of cash, and other commodities of value, ownership to which is claimed by Defendants. The cash and commodities are described as follows: cash and corn in an as yet undetermined value, currently on deposit at the Plaintiff's Port of Brownsville warehouse facility; less reasonable storage and handling fees deducted by Plaintiff. Plaintiff tenders herewith a check payable to the "United States District Court Registry" in the total amount of any cash on hand, there to abide to the judgment of the Court. Plaintiff further asserts its intention to tender additional cash representing the liquidated value of the corn, as such cash amounts accrue or come in the possession of Plaintiff.

6. As detailed below, Plaintiff may be exposed to double or multiple liablility by reason of competing and inconsistent claims made by Defendants.

7. In the event Plaintiff should receive a counter-claim for breach of contract, conversion, violation of statutory trade practices laws, or a like pleading; in such event Plaintiff would

2

affirmatively show that the commodity in question was specifically stored in the Plaintiff's warehouse pursuant to a contract and referenced tariffs, copies of which are attached hereto and incorporated by reference at this point. Conflicting claims of ownership of the commodity or any cash generated by the sale of said commodity has been asserted by Defendants, and allegations of actionable conduct on the part of Port Elevator have been alleged by one or more of the said Defendants.

8. Plaintiff previously proposed the voluntary tender of the herein referenced cash and commodities to a mutually acceptable neutral third-party, and such proposal was made in writing. The Defendants refused or neglected to respond, and each continued to assert respective superior ownership.

9. Thereafter, Plaintiff proposed the sale of the said commodity, pursuant to contract, so as to mitigate any damages resulting from spoilage or change in market value. Plaintiff received no response from Defendants related thereto.

10. Plaintiff finds itself with no alternative but to tender the corn or the value thereof to the Court for adjudication of the identity of the proper owner or owners.

11. Plaintiff herein specifically prays that the court adjudicate the ownership of the corn, or the value thereof; and if raised by Defendants that the Court determine that Plaintiff is without fault in the circumstances related to the contracting, storage, and disposal of the corn, and money which is the subject of this action. Plaintiff further prays that the Court discharge Plaintiff

3

from further liability herewith.

12. Plaintiff further prays for an award for reasonable attorneys' fees, the award of which is within the equitable powers of this Court.

13. A jury is demanded in connection with this Complaint.

                              Respectfully Submitted,

                              SKAGGS & GARZA, L.L.P.
                              P.O. Drawer 2285
                              710 Laurel
                              McAllen, Texas 78502-2285
                              Phone (956) 687-8216
                              Fax (956) 630-6570

                              _____

                              **JOHN SKAGGS**
                              State Bar No. 18452500
                              **ATTORNEYS FOR PLAINTIFF**

# Port Elevator - Brownsville, L.C.

### RATE & SERVICE CONTRACT

The term "grain" as used in this contract shall mean Corn. All rates in this contract will be quoted in U.S. dollars per bushel. Payment for Receiving is due upon completion of each unloading. Payment for Delivery is due weekly. All payments are to be in U.S. currency.

The minimum quantity of grain to be handled under this contract is ONE MILLION Bushels (1,000,000 bushels). If the minimum quantity handled requirement is not met, the Receiving and Delivering Charges increase by one hundred percent (100%).

### RECEIVING AND DELIVERING

Receiving From Railcars . . . . . . . . . . $ 0.02   per bushel.

Delivering to Trucks:
   U.S. Trucks . . . . . . . . . . . . . $ 0.02   per bushel.
   Mexican Trucks . . . . . . . . . . . . $ 0.02   per bushel.

Delivering of grain will be done only upon the written instructions of SYSCO de BAJA, SA de CV and signed by Bersain Gutierrez. Fax instructions are acceptable with originals to follow by overnight courier.

RECEIVING INCLUDES INSURANCE AND 15 DAYS STORAGE.

STORAGE:  ALL grain is to be stored Identity Preserved (I.P.)

Each calendar day or fraction thereof after first fifteen days.

All grains except Flax . . . . . . .   $ 0.001   per bushel.

### TREATING AND CONDITIONING
Treating for weevils in cars,
   trucks or elevator . . . . . . . . . $ 0.045   per bushel.
Mixing or Turning--
   All loss in weight borne by owner . $ 0.015   per bushel.
   Cooling or Blowing . . . . . . . . . $ 0.005   per bushel.
   Malathion Treatment . . . . . . . . $ 0.015   per bushel.

NOTE: THIS IS A SPECIAL CONTRACT AT RATES OTHER THAN STATED IN OUR PUBLISHED TARIFF. SUCH RATES UNDER THE SAME TERMS WILL BE MADE AVAILABLE TO ALL DEPOSITORS. THIS CONTRACT EXPIRES DECEMBER 31st 1996 AT 24:00 HOURS.

_____     _____
SYSCO DE BAJA, S.A. DE C.V.          AKRON GROUP INC (AGI)

_____
PORT ELEVATOR-BROWNSVILLE, L.C.

P.O. BOX 4448, BROWNSVILLE, TEXAS 78523-4448, (210) 831-8245, FAX (210) 831-3181

# RATES

The term "grain" as used in this tariff shall be understood to mean Wheat, Corn, Oats, rye, Barley, Grain Sorghum, Flaxseed and Soybeans. Rates to cover handling, storing and/or treating other commodities such as Meals, Beans, Seed, Rice, etc will be quoted by the elevator management upon request. All rates in this tariff will be quoted in U.S. cents per bushel unless otherwise stated.

## RECEIVING AND DELIVERING

| | |
|---|---|
| Receiving From Railcars . . . . . . . . . . . . . | $.04 per bushel. |
| Receiving From Trucks: | |
|   U.S. Trucks . . . . . . . . . . . . . . . . | $.04 per bushel. |
|   Mexican Trucks . . . . . . . . . . . . . . | $.07 per bushel. |
| Receiving From Vessels/Barges: . . . . . . | $.04 per bushel. |
| Delivering to Vessels: . . . . . . . . . . | $.04 per bushel. |
| Delivering to Barges: . . . . . . . . . . . | $.04 per bushel. |
| Delivering to Railcars: . . . . . . . . . . | $.04 per bushel. |
| Delivering to Trucks: | |
|   U.S. Trucks . . . . . . . . . . . . . . . . | $.04 per bushel. |
|   Mexican Trucks . . . . . . . . . . . . . . | $.10 per bushel. |

RECEIVING INCLUDES INSURANCE AND 10 DAYS STORAGE.

COOPERING CARS:
  The elevator will not furnish grain doors or Cooper cars.

STORAGE:
  Each calendar day or fraction thereof after first ten days.

| | |
|---|---|
| All grains except Flax . . . . . . . . . | $1/10 per bushel. |
| Flax(all loss in weight or elevator) . . | $1/2 per bushel |

TREATING AND CONDITIONING
  Treating for weevils in cars,
    trucks or elevator . . . . . . . . . . . $.045 per bushel.
  Mixing or Turning--
    All loss in weight borne by owner . . . $.03 per bushel.

  Cooling or Blowing . . . . . . . . . . . . $.01 per bushel.
  Malathion Treatment . . . . . . . . . . . $.015 per bushel.

NOTE: WE RESERVE THE RIGHT TO ENTER INTO SPECIAL CONTRACTS AT RATES OTHER THAN STATED IN THIS TARIFF FOR DEFINITE QUANTITIES OF GRAIN AND FOR DEFINITE STORAGE PERIODS IF APPLICABLE. SUCH RATES UNDER THE SAME TERMS WILL BE MADE AVAILABLE TO ALL DEPOSITORS.

## RECEIPT OF GRAIN

Grain will be received, stored and handled in the elevator subject to the following rules, regulations and charges. All rates and charges shown in the Rate Schedule of this tariff covers work performed on straight time basis.

## RULES AND REGULATIONS

**ITEM 1 - INSPECTION** - All grain shall be inspected and graded in accordance with standards established under the United States Grain Standards Act before received into and discharged from the elevator. Fees for inspection and grading to be set by the Corpus Christ Grain Exchange on inbound grain. All outbound grain to be graded by Federal Grain Inspection Service. All inspections and grading expense to be borne by the owner.

**ITEM 2 - UNLOADING GRAIN INTO THE ELEVATOR** - The Elevator management reserves the right to refuse any grain which in its opinion is unmerchantable or is unfit condition for storage, transfer or handling. The primary purpose of the Elevator is for the transfer of grain from railcars, trucks, barges and vessels to transportation modes which will move grain through the elevator for export and will be used for storage of grain only to the extent not required for such primary purpose; therefore, the management reserves the right to preferentially unload those cars, trucks, barges or vessels for which outward shipping space has been engaged and is available.

**ITEM 3 - STORING REGARDLESS OF OWNERSHIP** - Grains will be placed in bins containing the same kind and grade regardless of ownership. Preserving identity or special binning will be done only by special arrangements.

**ITEM 4 - GRAIN AT OWNER RISK** - All grain placed in the elevator is at owners risk of depreciation in grade from heating, insects or any other cause including natural increase in dockage content resulting from repeated handling under normal grain elevator operational practices and methods.

**ITEM 5 - CONDITIONING GRAIN** - The Elevator management reserves the right after due diligence to treat, dry or otherwise recondition any grain on the elevator which in its judgment is in need of such handling without prior knowledge or consent of the owner. Necessity of such handling to be concurred in by a Corpus Christi Grain Exchange inspector. Owner of the grain so handled will be liable for payment of all charges resulting therefrom as well as weight shrinkage of the grain.

**ITEM 6 - REMOVAL OF GRAIN** - If any grain in the elevator should become out of condition, the Elevator reserves the right to order same out on three (3) days notice and if not removed from the elevator before expiration of that time, the elevator management shall have the right to remove and dispose of such grain at the expense of and for the account of the owner.

**ITEM 7 - INSURANCE** - Insurance on all grain stored under the above Schedule of Charges will be carried by the elevator operator against loss or damage by Fire and Extended Coverage perils(windstorm, lightning, hail, explosion, riot, riot attending a strike, civil commotion, smoke, vehicles and aircraft) for its market value, to the extent that such insurance is procurable. The cost of such insurance is included in the charges for receiving and shipping grain. Loss by any other insurable cause shall be at the owner's risk.

**ITEM 8 - CONGESTION** - In the event of congestion of cars, barges, vessels or trucks, the elevator operator reserves the right, without liability for loss, damage or demurrage, to unload those cars, barges, vessels, or trucks for which outward transportation has been engaged and is available.

**ITEM 9 - TRIMMERS** - Mechanical grain trimmers are available at the elevator dock for use on all cargoes loaded. Rental in the amount of __10__ cents per gross ton plus $25.00 per hour to cover cost of maintenance man will be charged for their use.

**ITEM 10 - PERFORMANCE** - The Elevator will undertake to furnish all service specified in the tariff with reasonable promptness but it is not obligated to furnish services, or is it liable for failure to do so in event of Government intervention, labor troubles, war conditions or other causes beyond its control.

**ITEM 11 - DOCKAGE AND WHARFAGE** - Dockage is charged according to Brownsville Navigation District Tariff. Wharfage is __20__ cents per metric ton loaded or unloaded. Where more than one gross tonnage is applicable to a vessel, the highest will apply.

**ITEM 12 - VESSELS REQUIRED TO WORK OVERTIME** - In order to secure the fullest possible use of the elevator's grain handling facilities, whenever there are ships waiting to load or unload, or there is, in the elevator manager's judgment, necessity of overtime work to avoid congestion, vessels will work unlimited overtime at their own expense if requested to do so by the by elevator management. Any vessel refusing to do so shall vacate the berth on order of the elevator management. Should any vessel fail to vacate the berth when ordered to do so under these circumstances or under the circumstances set forth in Item 13, a dockage charge of $800.00 per hour for each hour or fraction thereof, will be assessed against the vessel and/or its owners, and agents, after notice to vacate has been given the vessel and/or its owners, agents, master or mate.

This charge shall not affect the right of the elevator to effect removal of the vessel from the berth by any lawful means, at vessel's risk and expense. A vessel losing its right to berth by refusal to work overtime shall lose its turn in favor of the next vessel that is willing to work overtime, which vessel shall retain the berth so long as it is willing to work sucessive straight times and overtime periods until loading or unloading is completed. The vessel so losing its turn shall be entitled to berth first available thereafter, subject to the same overtime provisions set forth above if the circumstances requiring overtime work are then found to exist by the elevator management. When vessel is not required to work overtime but desires to at owner's expense, such desires must be made known to elevator manager by 3:30 P.M. of the day the overtime is to be worked. The elevator reserves the right to refuse to operate the elevator during overtime hours.

ITEM 13 - BERTHING OF SHIPS - Except as otherwise provided in this Tariff, vessels awaiting berth at the elevator will load or discharge in the order in which they file with the elevator office. A filing shall be deemed accomplished with the presentation of:
    (1)  Certificate of Readiness in all compartments in which grain is to be loaded, issued by the National Cargo Bureau Representative.
    (2) Federal Grain Inspection Service satisfactory condition report.

Liner vessels, will be given preference in the assignment of berths over other vessels except when, in the judgment of the elevator management such preference would not be in the best interest of the satisfactory operation of the elevator or when, in the judgement of the elevator management, it would impose an undue hardship on other vessels waiting to load or unload.

The term liners as used herein, shall mean vessels of lines having regularly advertised scheduled sailing from the Port of Brownsville, Texas, and the quantity of grain for loading is not in excess of 2/3 of the vessel's deadweight tonnage for cargo.

The Elevator management reserves the right to change the turn of vessels when confronted with congestion, the urgent need to load or unload a particular grade of grain or to otherwise facilitate elevator operations.

Any vessel ordered to vacate the berth for such reasons will return to berth after the vessel loading/ or unloading immediately thereafter, if any completes loading/ or unloading or vacates the berth for other reasons, provided the aforesaid circumstance requiring the vessel to vacate the berth is found by elevator management to no longer exist.

The elevator management of Port Elevator-Brownsville, Inc. reserves the right to refuse the berth at our facility to any vessel without at least ten (10) days prior advice in writing from the suppliers of the cargo of their intention to load or unload the vessel at Port Elevator-Brownsville, Inc.

**ITEM 14 - APPLICATION FOR BERTH -** All vessels, their owners or agents, desiring berth at this facility shall file with the elevator office an application for berth on forms provided by the elevator. This application should be filed as far in advance as possible but in no case should such filing be later than 5:00 P.M. on the business day preceding the day the vessel desires to berth. The filing of this application shall have no bearing on the time that the vessel will be placed on turn for the berth as this will be governed by Item 13 of this Tariff.

**ITEM 15 - GENERAL REGULATIONS ON VESSELS:**

(1) The elevator operator shall not be liable for demurrage, damages, damages for delay or loss of dispatch time incurred by any vessel or charterer thereof for any causes other than willful or grossly negligent acts of the elevator operator.

(2) The elevator operator shall not be responsible for marine loss or damage to grain or barges, ships or their waterborne vessels to the elevator dock.

(3) In all other matters, the elevator shall not be responsible for delay caused by any cause beyond its control, however or wherever arising.

(4) Any vessel in berth shall at all times maintain appropriate officers and crew aboard to permit reception of cargo at any time of day or night, including Saturdays, Sundays and holidays.

(5) If in the opinion of the elevator operator the weather conditions so warrant, any vessel in berth may be ordered at any time of day or night to vacate said berth and anchor in the approved anchorage area until such time as weather conditions permit the vessel to return to berth. Appropriate officers and crew shall be maintained aboard the vessel for this purpose.

**ITEM 16 - RESPONSIBILITY FOR PAYMENT OF CHARGES -** All invoices for charges are due upon presentation of invoice and payable in Brownsville, Texas. Unless otherwise provided by special arrangement with the elevator management, the responsibility for payment of invoices for provisions or services rendered by this facility shall, in the first instance, be that of the local agent in Brownsville, Texas who orders or authorizes such provisions or services as well as of the vessel and vessel owner.

When necessity calls for enforcement of Item 12 of this Tariff, the charges incurred thereby shall have the effect of being authorized by the local agent of the vessel and/or charterer and responsibility for payment of such charges shall be that of the local agent.

The elevator reserves the right to refuse berth and load or unload ships of any local agent having unpaid accounts sixty days or older until such account is paid in full.

**ITEM 17 - OVERTIME:**

A) Overtime per hour is $175.00 per hour except as provided in B and C Below.

B) Overtime Hours:
Overtime will be assessed for work before 8:00 A.M. and after 5:00 P.M. during weekdays. All work on Saturdays and Sundays will be overtime hours. Sundays and Holidays will assessed at the rate of $235.00 per hour.

C) If elevator labor is called out for work, the following minimum hourly periods will assessed at overtime rate. 7:00 A.M. Call Out - 1 hour minimum; except Saturdays, Sundays or Holidays at which time, 4 hours overtime will be the minimum. 7:00 P.M. Call Out - 2 hours minimum. Overtime rate at $235.00 per hour will be assessed for time required to work during meal hours.

**ITEM 18 - HOLIDAYS** - The following days shall be recognized as Holidays by this facility and all work on these designated days will be performed at the discretion of the elevator management and at overtime rates as provided in Item No. 17 of this Tariff.

| | | |
|---|---|---|
| New Year's Day | Good Friday | Labor Day |
| Memorial Day | Thanksgiving Day | Christmas Day |
| Fourth of July | | |

In addition to the days specifically listed above, we shall also recognize as Holidays, with work performed under the conditions of this time, all days subsequently designated as Holidays or overtime days by the United States Government, the State of Texas, the City of Brownsville or other entity having lawful jurisdiction.

Should any Holiday fall on Saturday, the preceding Friday will be observed as a Holiday. Should any Holiday fall on Sunday, the following Monday will be observed as a Holiday.

No work will be scheduled or performed on Labor Day or Christmas Day except in cases of emergency such as fire, or where the property of the Company and/or its customers are in danger or serious injury.

**ITEM 19 -    RENTAL AND USE OF ELEVATOR EQUIPMENT, FACILITIES, PROPERTY AND PERSONNEL:**

A) General - All vessels, their owners, agents and stevedores or others, hereinafter call "user", renting or using the elevator equipment, shall be upon and subject to the following conditions andcharges, the renting or use of which shall constitute an agreement with Port Elevator-Brownsville, Inc. to pay such charges and be bound by such conditions.

B)  Condition and Responsibility

1) Equipment of the elevator is presumed to be in good condition when turned over to user, but Port Elevator - Brownsville, Inc does not warrant the mechanical condition thereof.

2) By receiving possession thereof, user of elevator equipment agrees that upon termination of the period of use, it will be returned in condition as when received, ordinary wear and tear alone accepted.

3) User assumes sole responsibility and liability for injury to or death of, any person whomsoever, or damage to or destruction of property of any person incident to or arising out of or connected with user's possession, use or operation of elevator equipment, or failure of such equipment to operate; and user shall protect, indemnify, and save harmless the Port Elevator - Brownsville, Inc. against any and all liability for or in respect of the same.

C)  The use and maintenance of equipment (except mechanical trimmers, but including any and all miscellaneous spouting equipment) a charge per Metric Ton (2,204.6 pounds) loaded will be quoted upon request.

**ITEM 20 - VESSELS IN ELEVATOR BERTH SHALL AT ALL TIME MAINTAIN TAUT LINES TO AVOID DAMAGE AND INJURY TO ELEVATOR     PROPERTY AND PERSONNEL.**

**ITEM 21 - RIGHT TO CONTRACT WITH THE GOVERNMENT** - Port Elevator - Brownsville, Inc may enter into contracts with the government of the United States of America or the government of Mexico or any agency thereof, providing for storage and services rates other than storage and services rates provided herein, applicable only to grain or grain by-product, or a commodity defined in any such contract as grain or grain by-product, in which the United States of America or the government of Mexico, or the agency thereof contracting with the undersigned warehouseman as aforesaid, has an interest.

**ITEM 22 - WATER AND ELECTRICITY** - Water and electricity provided by the elevator will be set by the management of the elevator based on current utility rates.

**ITEM 23 - INSURANCE** - All contractors, stevedores or individuals performing work on the elevator property will at all times maintain adequate insurance coverage as required by Local, State and Federal Regulations. Under no circumstances does Port Elevator-Brownsville, Inc. assume or accept any responsibility for these contractors, stevedores or individuals or any employees thereof.

**ITEM 24 - SMOKING OR OPEN FLAME -** The Port Elevator-Brownsville, Inc is designated as a non-smoking area. However, certain designated smoking areas are provided. No open flames are permitted. Hot work permits may be issued on a case-by-case basis.

**ITEM 25 - VISITORS -** All visitors to Port Elevator - Brownsville, Inc. must check in at the office. Visitors to any vessels at the elevator berth enter the property at their own risk. All visitors to vessels in the berth must have permission from the owners, agents, captain or mate of the vessel which they are visiting.



JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
PORT ELEVATOR - BROWNSVILLE, L.C.

## DEFENDANTS
IVONNE SOTO VEGA, BERSAIN GUTIERREZ, and SYSCO DE BAJA, S.A. DE C.V.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
    (EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Unknown-Mexico
    (IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

SKAGGS & REYNA    (956)687-8203
P. O. Drawer 2285
McAllen, Texas 78502

ATTORNEYS (IF KNOWN)

B-98-23

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 USC Sections 1332, 1335, 2361, Interpleader

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | LABOR | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $ N/A

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions): N/A

JUDGE _____  DOCKET NUMBER _____

DATE 2-11-98

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT