4.

United States District Court
Southern District of Texas
FILED

JUN 15 2000

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR-<br>BROWNSVILLE, L.C. | § § § | |
| VS. | § § | CIVIL NO. B-98-23 |
| IVONNE SOTO VEGA, BERSAIN<br>GUTIERREZ, SYSCO DE BAJA<br>S.A. DE C.V. AND WALTER<br>PUFFELIS AND D/B/A AGI/<br>AKRON GROUP, INC. | § § § § § | JURY DEMANDED |

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT, INCLUDING AUTHORITIES

1.      Plaintiff seeks to amend its complaint and request leave of Court, herewith, pursuant to F.R.C.P. 15(a).

2.      Plaintiff seeks to amend its complaint in the following respects and for the following reasons:

      A.  To request Declaratory Relief pursuant to 28 U.S.C. §2201.

      B.  To seek damages for breach of contract.

      C.  To include Walter Puffelis, Individually, and d/b/a AGI/AKRON GROUP, INC. as additional parties to the breach of contract action.

3.      The granting for leave to file the requested amendment will not prejudice the opposing parties; nor will such amendments serve to delay the ultimate trial of this action.

4.      An amended complaint is attached hereto as an addendum to this Motion.

5.      Plaintiff therefore moves that leave of Court be granted to amend its complaint.

Respectfully Submitted,

SKAGGS & GARZA, L.L.P.
P.O. Drawer 2285
710 Laurel
McAllen, Texas 78502-2285
Phone (956) 687-8203
Fax (956) 630-6570

_____
JOHN SKAGGS
State Bar No. 18452500
ATTORNEYS IN CHARGE FOR
DEFENDANT PORT ELEVATOR-
BROWNSVILLE, L.C.

CERTIFICATE OF CONFERENCE

I certify that on _14_ day of _June_, 2000, counsel for Port Elevator, L.C.

and counsel for Ivonne Vega conferred on this Motion and that Defense counsel is

opposed.

_____
JOHN SKAGGS

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel on this the 14 day of June, 2000.

Roy Dale
6301 N. 10th St.
McAllen, Texas 78502

JOHN SKAGGS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR- | § | |
| BROWNSVILLE, L.C. | § | |
| | § | |
| VS. | § | CIVIL NO. B-98-23 |
| | § | |
| IVONNE SOTO VEGA, BERSAIN | § | JURY DEMANDED |
| GUTIERREZ, SYSCO DE BAJA | § | |
| S.A. DE C.V. AND WALTER | § | |
| PUFFELIS, INDIVIDUALLY AND | § | |
| D/B/A AGI/AKRON GROUP, INC. | § | |

## SECOND AMENDED COMPLAINT

1.    This complaint is filed by Port Elevator-Brownsville, L.C.

2.    Plaintiff is a corporation organized under the laws of the State of Texas.

3.    Defendants are individuals who may be served at the following address:

    1.    Ivonne Soto Vega
          Paseo Rio Tijuana No. 1716
          Zona Del Rio, Tijuana B.C. Mexico

    2.    Bersain Gutierrez and
          Sysco De Baja S. A. de C.V.
          1853 Carolyn Drive
          Chula Vista, California 91913

    3.    Walter Puffelis and AGI/AKRON GROUP, INC.
          1330 Orange Avenue Suite 329
          Coronado, California 92118

4.    This Court has jurisdiction pursuant to 28 USC, Sections 1331, 1332, 1335 and 2361, in that it is alleged that all Respondents are citizens of the Republic of Mexico.

5.    Alternatively, this Complaint is filed pursuant to Rule 22 FRCP.  Plaintiff has heretofore tendered to the registry of the Court the total amount of $76,000.00 and is still in possession of cash received from the sale of commodity in excess of said amount.

It is estimated by Plaintiff that the total amount in controversy, less reasonable offsets for storage and handling, is in excess of $100,000.00.

6.   Plaintiff herein further asserts diversity between the stakeholder (Plaintiff) and one or more of the Defendants; and further asserts the existence of diversity as between the named Defendants.

7.   In compliance with the provisions of 28 USC Section 1335, Plaintiff asserts that it is in possession of money or property of value more than $500.00.

8.   Plaintiff is a stakeholder of cash, obtained from the sale of commodity, ownership to which is claimed by Defendants.  The cash is described as follows: cash from the sale of corn in a liquidated amount which is claimed to be owned by multiple Defendants. Certain cash from said sale is currently on deposit at the Plaintiff's Port of Brownsville warehouse facility; less reasonable storage, handling, and other fees deducted or charged by Plaintiff. Plaintiff has tendered checks payable to the "United States District Court Registry" representing certain cash on hand, there to abide to the judgment of the Court.  Plaintiff further asserts its intention to tender or retain cash representing the partial liquidated value of the corn, subject to counterclaims plead herein.

9.   As detailed below, Plaintiff may be exposed to double or multiple liability by reason of competing and inconsistent claims made by Defendants.

10.  In the event Plaintiff should receive a counter-claim for

CS4PDF - www.fanna.com

breach of contract, conversion, violation of statutory trade practices laws, or a like pleading; in such event Plaintiff would affirmatively show that the commodity in question was specifically stored in the Plaintiff's warehouse pursuant to a contract and referenced tariffs, copies of which are attached hereto and incorporated by reference at this point.  Conflicting claims of ownership of the commodity or any cash generated by the sale of said commodity has been asserted by Defendants, and allegations of actionable conduct on the part of Port Elevator have been alleged by one or more of the said Defendants.

11.  Plaintiff previously proposed the voluntary tender of the herein referenced cash and commodities to a mutually acceptable neutral third-party, and such proposal was made in writing.   The Defendants refused or neglected to respond, and each continued to assert respective superior ownership.

12.   Thereafter, Plaintiff proposed the sale of the said commodity, pursuant to contract, so as to mitigate any damages resulting from spoilage or change in market value.  Plaintiff received no response from Defendants related thereto.

13.   Plaintiff finds itself with no alternative but to tender the corn or the partial value thereof to the Court for adjudication of the identity of the proper owner or owners.

### REQUEST FOR DECLARATORY RELIEF

14.   This Request for Relief is made pursuant to 28 U.S.C. §2201.

15.   Ivonne Soto Vega has asserted claims against Port Elevator-Brownsville, L.C. which are derived from the contract and transactions heretofore recited in this pleading.   Vega asserts

duties and obligations arising as a result of the said contract and the asserted relationship between the parties.

16.  Vega has asserted such allegations in a suit which was filed later in time and filed in State District Court in Hidalgo County, Texas.   On the 22nd day of May, 2000, the State District Court ordered Vega's claims abated based on Port Elevator's assertions of the pendency of this prior filed action in the United States District Court.

17.  A copy of Vega's pleadings in connection with her State Court suit are attached hereto and incorporated at this point by reference, as evidence of Ms. Vega's assertion of rights pursuant to the contract which is the subject of this pleading.

18.  Port Elevator-Brownsville, L.C. now seeks a declaration of the rights, duties, legal relations and obligations of any interested party arising out of the said contract, and arising out of the assertions contained in Vega's aforementioned pleading which is attached hereto.     Port Elevator-Brownsville, L.C. seeks a determination of the relative liabilities, and any fault as asserted in connection with the aforementioned State Court action, which has been abated in deference to this action pending in the Federal Court.

19.  In this connection, Port Elevator-Brownsville, L.C. would further assert that at all material times related hereto, it was acting through its authorized agent, servant, or employee Craig Elkins.  Port Elevator-Brownsville, L.C. would further assert that Craig Elkins is a salaried employee of Southwest Grain Co., Inc. To the extent of any involvement by the said Craig Elkins and

CVMPDF - www.fesno.com

Southwest Grain Co., Inc.   Port Elevator-Brownsville, L.C. would further request a determination of the relevant duties, faults and liabilities of said entities.   To the extent necessary, the said Craig Elkins and Southwest Grain Co., Inc. hereby appear in this action for all purposes consistent with this pleading.

BREACH OF CONTRACT

20.   Plaintiff, through its agent, Craig Elkins, entered into a contract with Bersain Gutierrez, as representative for Sysco de Baja and Walter Puffelis, as representative for Akron Group, Inc., in October 1996.   The above mentioned contract is attached hereto and incorporated herein by reference.   Pursuant to this contract, the minimum quantity of corn to be deposited with Port Elevator was one million bushels.

21.   In consideration for the movement of a large volume of corn over a short period of time, Plaintiff gave Bersain Gutierrez and Walter Puffelis a special contract with lower receiving and delivering charges.   All deposits were to be made by Walter Puffelis of AGI/Akron Group, Inc., and withdrawals were to be made by Bersain Gutierrez of Sysco de Baja S.A. de C.V..   All deposits and withdrawals were to occur no later than December 31, 1996.

22.   At no time during the term of the contract were one million bushels of corn deposited with Port Elevator.   Defendants' failure to deposit and withdraw one million bushels of corn within the contract period, caused higher sums of money to accrue for the unloading, storage, fumigation, turning, aereation, cracking, and loading out in the amount of $81,438.04 plus interest.

23.   Ivonne Soto Vega has asserted she was a party to the above

referenced contract by her own statement. Ms. Vega filed her petition in the 92nd Judicial District Court in Hidalgo County, Texas, Cause No. C-2969-99-A. On page seven, paragraph "c", of Ms. Vega's state court pleading, Ms. Vega alleged that she "entered into a contract" with Plaintiff to "store corn at their facility in Brownsville, Texas" in the fall of 1996. Although Plaintiff denies Defendant Vega was a contracting party as herein described; in the event contractual privity status should be determined or adjudicated by the court, then Plaintiff asserts such contract has in fact also been breached individually by Defendant Vega.

24. All Defendants in this cause of action breached the contract entered into with Plaintiff in October 1996 and are liable for the damages proximately caused by this breach.

25. Plaintiff herein specifically prays that the court adjudicate the ownership of the corn, or the value thereof; that the Court determine that Plaintiff is without fault in the circumstances related to the contracting, storage, and disposal of the corn, and money which is the subject of this action. Plaintiff further prays that the Court discharge Plaintiff from further liability herewith.

26. Plaintiff further prays for an award of reasonable attorneys' fees, the award of which is within the equitable powers of this Court.

27. Port Elevator-Brownsville, L.C., Craig Elkins, and Southwest Grain Co., Inc. further seek a declaration from the Court regarding the duties and liabilities connected with the transactions addressed herein; and further seek a declaration of no fault or liability related thereto. Moreover, Plaintiff prays that the

court find Defendants have breached the contract entered into between the parties. Plaintiff further requests an award of actual damages related to the prosecution or defense of this action, for costs of Court, for pre-judgment interest, and post-judgment interest; and further for award of attorneys' fees arising out of the prosecution or defense of this action.

28. A jury is demanded in connection with this Complaint.

Respectfully submitted,

John Skaggs
P.O. Drawer 2285
McAllen, Texas 78502-2285
Phone (956) 687-8203
Fax (956) 630-6570

_____
JOHN SKAGGS
State Bar No. 18452500
Fed I.D. No. 1225
ATTORNEY FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel on this the

_____ day of _____, 2000:

Roy Dale
6301 N. 10th St.
McAllen, Texas 78504

_____
JOHN SKAGGS

CAUSE NO. _C-3169-99 A_

| | | |
|---|---|---|
| IVONNE SOTO VEGA | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| PORT ELEVATOR-BROWNSVILLE, | § | |
| L.C., SOUTHWEST GRAIN CO., | § | |
| INC., AGI/AKRON GROUP, INC., | § | HIDALGO COUNTY, TEXAS |
| SYSCO DE BAJA, WALTER PUFFELIS | § | |
| GALVAN, III, INDIVIDUALLY AND | § | |
| D/B/A AGI/AKRON GROUP, INC., | § | |
| CRAIG ELKINS, INDIVIDUALLY AND | § | |
| D/B/A PORT ELEVATOR-BROWNSVILLE, | § | |
| L.C. AND SOUTHWEST GRAIN CO., | § | |
| INC., BERSAIN GUTIERREZ ZENTENO, | § | |
| INDIVIDUALLY AND D/B/A SYSCO | § | |
| DE BAJA | § | 92nd JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE STATE DISTRICT JUDGE:

NOW COMES **IVONNE SOTO VEGA**, Plaintiff in the above-styled and numbered cause and files her Original Petition and for cause of action would respectfully show the following:

### I.

### DISCOVERY CONTROL PLAN-LEVEL 2

Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.

### PARTIES

Plaintiff **IVONNE SOTO VEGA** is a Mexican National who resides in Mexico.

Defendant **PORT ELEVATOR-BROWNSVILLE, L.C.** (hereinafter also refers to all employees, agents, and representatives) is a Texas limited liability company licensed to do business in the State of

Texas.  It may be served with process through its registered agent, CRAIG ELKINS, at 2334 Boca Chica Blvd., Ste. 200, Brownsville, Texas 78520.

Defendant **SOUTHWEST GRAIN CO., INC.** (hereinafter also refers to all employees, agents, and representatives) is a Texas corporation licensed to do business in Texas.  It may be served through its registered agent, Tommy Joe Crutcher, at Rt. 3, Box 188-F, Edinburg, Texas 78539.

Defendant **AGI/AKRON GROUP, INC.** (hereinafter also refers to all employees, agents, and representatives) is a California corporation which may be served with process through its registered agent, Rocky Halfon, at 225 Broadway, 19th Floor, San Diego, California 92101.

Defendant **SYSCO DE BAJA** (hereinafter also refers to all employees, agents, and representatives) is a California business which may be served by serving **BERSAIN GUTIERREZ ZENTENO.**

Defendant **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC.** (hereinafter **WALTER PUFFELIS**) is an individual who may be served at his place of business, 8653 Ave. Costa Norte Suite, Otay Mesa, San Diego, California 92173.

Defendant **CRAIG ELKINS, INDIVIDUALLY AND D/B/A PORT ELEVATOR-BROWNSVILLE, L.C., and SOUTHWEST GRAIN CO., INC.** (hereinafter **CRAIG ELKINS**) is an individual who is a resident of Texas and may be served with process at his residence, 910 Rio Grande Drive, Mission, Texas 78572.

Defendant **BERSAIN GUTIERREZ ZENTENO, INDIVIDUALLY AND D/B/A**

**SYSCO DE BAJA** (hereinafter **BERSAIN GUTIERREZ**) is an individual who may be served with process at his place of business, 2295 Paseo De La Americas, Suite 22, Otay Mesa, California 92173.

### III.

### JURISDICTION AND VENUE

The damages claimed are in excess of the minimum jurisdictional limits of this court. Venue is proper in Hidalgo County, Texas under Section 15.002(2) of the Texas Civil Practice & Remedies Code in that **CRAIG ELKINS** is a natural person whose residence at the time the cause of action accrued was Mission, Hidalgo County. Venue is proper under Section 15.002(3) because **SOUTHWEST GRAIN CO., INC.'S** principal office in this state is located in Hidalgo County.

### IV.

### GENERAL FACTS

**IVONNE VEGA** made three purchases of yellow corn of almost 5,000 metric tones in the Fall of 1996 for the express purpose of reselling the corn to one or more buyers in Mexico and making a profit. On or about October 21, 1996, **MS. VEGA** purchased 3,444.434 metric tons of yellow corn from **WALTER PUFFELIS, III** and **AGI/AKRON GROUP, INC.** The purchase price was $170.00 per metric ton. On or about November 13, 1996, **MS. VEGA** made two more purchases from **WALTER PUFFELIS, III,** and **AGI/AKRON GROUP, INC.** One purchase was for 688.309 metric tons and the other was for 1,791.566 metric tons. The price per metric ton again was $170.00. Acting under **MS. VEGA'S** instructions, the yellow corn was transported via rail

car to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** **CRAIG ELKINS** was the manager of **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** at the time the corn was delivered.

## V.

**MR. GUTIERREZ** and **SYSCO DE BAJA** accepted the yellow corn on behalf of **MS. VEGA** when the shipments arrived in the Fall of 1996 at **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** **MR. GUTIERREZ** and **SYSCO DE BAJA** had no authority to sell or transfer the corn or enter into any contracts concerning storage or delivery of the corn.

## VI.

Within days of the corn's arrival, **MR. GUTIERREZ** and **SYSCO DE BAJA** sold about 3,400 metric tons of **MS. VEGA'S** yellow corn without **MS. VEGA'S** permission or knowledge. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** expressly released the yellow corn to **MR. GUTIERREZ** and **SYSCO DE BAJA** knowing that the corn would be sold. At the time the corn was released, **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** knew that **MS. VEGA** had an ownership interest in the corn.

## VII.

**MS. VEGA** found a buyer for her approximately 5,000 metric tons of corn and requested in September of 1997 that **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** release her corn. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO, INC.** declined to do so. **MS. VEGA** first

discovered in October 1997 that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** had released about 3,400 tons of her corn the year previously. Subsequently, **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** sold the remaining 1,600 metric tons of **MS. VEGA'S** yellow corn without her permission.

### VIII.

### CAUSE OF ACTION AGAINST CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C. AND SOUTHWEST GRAIN CO, INC.

**a.   Conversion**

**MS. VEGA** was the sole owner of the yellow corn which was stored at **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC. MS. VEGA** had the right of possession of this property. **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** unlawfully and without authority assumed dominion and control over **MS. VEGA'S** property to the exclusion of **MS. VEGA'S** rights in this property in that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** turned over **MS. VEGA'S** property to one or more third parties including **BERSAIN GUTIERREZ ZENTENO** and **SYSCO DE BAJA. MS. VEGA** would show that she had left the property in **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO.'S** possession for the purpose of storing the property until the property was to be sold. **MS. VEGA** would show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** conduct was unlawful in that they turned over **MS. VEGA'S** corn to **MR. GUTIERREZ** and **SYSCO DE BAJA** without permission. **MR. GUTIERREZ** and **SYSCO DE BAJA** immediately sold said corn. **MS. VEGA** would further

show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** possession was unlawful when they refused to return **MS. VEGA'S** corn when she requested that said corn be returned at a time when she had a buyer for said corn. **MS. VEGA** sues for the fair market value of the property at the times and places of the conversion. **MS. VEGA** is also entitled to interest on the sum of the value of the property converted from the dates of conversion, at the prejudgment rate of interest. **MS. VEGA** would further show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** conversion of the property, as alleged above, was fraudulent and/or malicious in that they knew the property belonged to **MS. VEGA**, but deliberately released said property to **MR. GUTIERREZ** and **SYSCO DE BAJA** and later refused upon request by **MS. VEGA** to release the property to **MS. VEGA** for sale to a third party. **MS. VEGA** would show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO.** specifically intended to cause substantial injury to **MS. VEGA** and accordingly **MS. VEGA** asks that exemplary damages be awarded against **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.**

   **b.   Negligence**

   **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** breached the duty owed to **MS. VEGA** to store her yellow corn and not release said property without her express permission. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** breached that duty by negligently releasing **MS. VEGA'S** property to one or more third parties and by

later refusing to release **MS. VEGA'S** property to her upon request, proximately causing damages. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** entered into a storage and delivery contract with **SYSCO DE BAJA** and **AGI/AKRON GROUP, INC.** that delivery of the corn shall be "done only upon the written instructions of **SYSCO DE BAJA, SA DE CV** and signed by **BERSAIN GUTIERREZ.**" **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** were on notice that **MS. VEGA** had an interest in the yellow corn that was shipped to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** through the bills of lading that accompanied the corn. The bills of lading stated that **MS. VEGA** was to be notified once the shipments were received in Brownsville, Texas. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** had a duty to notify **MS. VEGA** when the corn arrived, but failed to do so, proximately causing damages. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** negligently entered into a contract with **SYSCO DE BAJA** and **AGI/AKRON GROUP, INC. MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** to the exclusion of **MS. VEGA** and are liable for the damages proximately caused to **MS. VEGA** by the conduct described herein.

    c.   Breach of Contract

In the Fall of 1996, **MS. VEGA** entered into a contract with **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** to store corn at their facility in Brownsville, Texas. As part of the agreement, **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE,**

L.C. and **SOUTHWEST GRAIN CO., INC.** agreed not to release the corn without the express permission of **MS. VEGA**.  **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** breached this contract by releasing **MS. VEGA'S** corn to one or more third parties including **BERSAIN GUTIERREZ** and **SYSCO DE BAJA** without her permission and by later refusing to release **MS. VEGA'S** corn to her when she requested its release in September of 1997.  **MS. VEGA** did not become aware that **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** had released her corn to one or more third parties until about October 1997.

### IX.

### CAUSE OF ACTION AGAINST BERSAIN GUTIERREZ AND SYSCO DE BAJA

### a.    Conversion

**BERSAIN GUTIERREZ** and **SYSCO DE BAJA** accepted **MS. VEGA'S** yellow corn at **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** in Brownsville, Texas.  At the time **MR. GUTIERREZ** and **SYSCO DE BAJA** received the corn, they knew the corn was owned by **MS. VEGA**. They knew that they had no authority to sell or transfer **MS. VEGA'S** corn without her express permission.  Within days of the corn being delivered to the facility in Brownsville, Texas, **MR. GUTIERREZ** and **SYSCO DE BAJA** unlawfully and without authority assumed dominion and control over **MS. VEGA'S** corn to the exclusion of **MS. VEGA'S** rights in said corn and thereafter sold about 3,400 metric tons of **MS. VEGA'S** corn.  **MS. VEGA** sues for the fair market value of her corn at the times and places of the conversion.  **MS. VEGA** is also entitled to interest on the sum of the value of the property

converted from the dates of conversion, at the prejudgment rate of interest." **MS. VEGA** would further show that **MR. GUTIERREZ** and **SYSCO DE BAJA'S** conversion of the property, as alleged above, was fraudulent and/or malicious in that **MR. GUTIERREZ** and **SYSCO DE BAJA** knew the property belonged to **MS. VEGA** and that they had no authority to assert dominion, control, transfer and/or sell said property without the express permission of **MS. VEGA**.  **MS. VEGA** would show that **MR. GUTIERREZ** and **SYSCO DE BAJA** specifically intended to cause substantial injury to **MS. VEGA** and accordingly **MS. VEGA** requests that exemplary damages be awarded against **MR. GUTIERREZ** and **SYSCO DE BAJA**.

      **b.   Negligence**

    **MR. GUTIERREZ** and **SYSCO DE BAJA** breached the duty owed to **MS. VEGA** to store her yellow corn at **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** in Brownsville, Texas when they allowed the corn to be released to one or more third parties, proximately causing damages to **MS. VEGA**.

      **c.   Fraud**

    After **MS. VEGA'S** corn was delivered to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** in Brownsville, Texas, **MR. GUTIERREZ** and **SYSCO DE BAJA** knowingly represented to **MS. VEGA** that the corn was safe and secure at the facility in Brownsville, Texas and continued to make such representations even though they had sold about 3,400 metric tons within days of delivery to the Brownsville facility.  **MS. VEGA** relied upon **MR. GUTIERREZ** and **SYSCO DE BAJA'S** representations and/or concealments

to her injury.  Further, **MR. GUTIERREZ** and **SYSCO DE BAJA** intended that **MS. VEGA** rely upon his misrepresentations and/or concealments.

**X.**

**CAUSE OF ACTION AGAINST WALTER PUFFELIS GALVAN, III
AND AGI/AKRON GROUP, INC.**

a. **Negligence**

**WALTER PUFFELIS, III** and **AGI/AKRON GROUP, INC.** owed a duty to **MS. VEGA** to protect her interest at the times her yellow corn was delivered to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.**  They violated this duty by entering into a contract with **PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC., BERSAIN GUTIERREZ** and **SYSCO DE BAJA** and excluding **MS. VEGA** at a time when **MS. VEGA** owned the corn.  The storage and delivery contract entered into stated in part that the corn would only be released "upon the written instructions of **SYSCO DE BAJA, SA DE CV** and signed by **BERSAIN GUTIERREZ**" to the exclusion of **MS. VEGA**.  **WALTER PUFFELIS, III** and **AGI/AKRON GROUP, INC.'S** failure to protect **MS. VEGA'S** interests in the corn, proximately caused damages for which she sues.

b. **Fraud**

**WALTER PUFFELIS, III** and **AGI/AKRON GROUP, INC.** represented to **MS. VEGA** that her corn would be safe and secure at the facility in Brownsville, Texas, but entered into a contract wherein **MR. GUTIERREZ** and **SYSCO DE BAJA** were granted permission to remove the corn at will from the facility.  **MS. VEGA** relied upon **MR. PUFFELIS** and **AGI/AKRON GROUP, INC.'S** representations as to the safety and security of her corn to her detriment.

## XI.

### UNLAWFUL CONSPIRACY

**MS. VEGA** would further show that there was an unlawful conspiracy between and/or among **CRAIG ELKINS**, **PORT ELEVATOR-BROWNSVILLE, L.C.**, **SOUTHWEST GRAIN CO., INC.**, **SYSCO DE BAJA**, **MR. GUTIERREZ**, **MR. PUFFELIS** and **AGI/AKRON GROUP, INC.** to defraud **MS. VEGA** of her property, resulting in injury for which she sues.

**WHEREFORE**, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial Plaintiff have:

1. Judgment against Defendants for a sum within the jurisdictional limits of the court;

2. Prejudgment interest as provided by law;

3. Postjudgment interest as provided by law;

4. An award of exemplary damages against Defendants in a sum determined by the trier of fact;

5. Attorney's fees;

6. Costs of suit;

7. Such other and further relief which Plaintiff may justly be entitled.

Respectfully submitted,

DALE & KLEIN, L.L.P.
6301 N. 10th Street
McAllen, Texas 78504
Tel. No. (956) 687-8700
Fax. No. (956) 687-2416

_____
ROY S. DALE
State Bar No. 05326700
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
ATTORNEYS FOR PLAINTIFF

Case 1:98-cv-00023  Document 45  Filed in TXSD on 06/15/2000  Page 22 of 30

# Port Elevator - Brownsville, L.C.

## RATE & SERVICE CONTRACT

The term "grain" as used in this contract shall mean Corn.  All rates in this contract will be quoted in U.S. dollars per bushel.  Payment for Receiving is due upon completion of each unloading.  Payment for Delivery is due weekly.  All payments are to be in U.S. currency.

The minimum quantity of grain to be handled under this contract is ONE MILLION Bushels (1,000,000 bushels).  If the minimum quantity handled requirement is not met, the Receiving and Delivering Charges increase by one hundred percent (100%).

### RECEIVING AND DELIVERING

Receiving From Railcars . . . . . . . . . $ 0.02 ___ per bushel.

Delivering to Trucks:
   U.S. Trucks . . . . . . . . . . . $ 0.02 ___ per bushel.
   Mexican Trucks . . . . . . . . . . $ 0.02 ___ per bushel.

Delivering of grain will be done only upon the written instructions of SYSCO de BAJA, SA de CV and signed by Bersain Gutierrez.  Fax instructions are acceptable with originals to follow by overnight courier.

RECEIVING INCLUDES INSURANCE AND 15 DAYS STORAGE.

STORAGE:  ALL grain is to be stored Identity Preserved (I.P.)

   Each calendar day or fraction thereof after first fifteen days.

   All grains except Flax  . . . . . .     $ 0.001 ___ per bushel.

TREATING AND CONDITIONING
   Treating for weevils in cars,
      trucks or elevator . . . . . . . . $ 0.045 ___ per bushel.
   Mixing or Turning--
      All loss in weight borne by owner . $ 0.015 ___ per bushel.
      Cooling or Blowing . . . . . . . . $ 0.005 ___ per bushel.
   Malathion Treatment . . . . . . . . . $ 0.015 ___ per bushel.

NOTE:  THIS IS A SPECIAL CONTRACT AT RATES OTHER THAN STATED IN OUR PUBLISHED TARIFF.  SUCH RATES UNDER THE SAME TERMS WILL BE MADE AVAILABLE TO ALL DEPOSITORS.  THIS CONTRACT EXPIRES DECEMBER 31st 1996 AT 24:00 HOURS.

_____          _____
SYSCO DE BAJA, S.A. DE C.V.       AKRON GROUP INC (AGI)

            _____
            PORT ELEVATOR-BROWNSVILLE, L.C.

P.O. BOX 4448  BROWNSVILLE  TEXAS  78523 4448

# RATES

The term "grain" as used in this tariff shall be understood to mean Wheat, Corn, Oats, rye, Barley, Grain Sorghum, Flaxseed and Soybeans. Rates to cover handling, storing and/or treating other commodities such as Meals, Beans, Seed, Rice, etc will be quoted by the elevator management upon request. All rates in this tariff will be quoted in U.S. cents per bushel unless otherwise stated.

## RECEIVING AND DELIVERING

Receiving From Railcars . . . . . . . . . . $.04    per bushel.

Receiving From Trucks:
    U.S. Trucks . . . . . . . . . . . . . . $.04    per bushel.
    Mexican Trucks . . . . . . . . . . . . $.07    per bushel.

Receiving From Vessels/Barges: . . . . . $.04    per bushel.

Delivering to Vessels: . . . . . . . . . $.04    per bushel.

Delivering to Barges: . . . . . . . . . . $.04    per bushel.

Delivering to Railcars: . . . . . . . . . $.04    per bushel.

Delivering to Trucks:
    U.S. Trucks . . . . . . . . . . . . . . $.04    per bushel.
    Mexican Trucks . . . . . . . . . . . . $.10    per bushel.

RECEIVING INCLUDES INSURANCE AND 10 DAYS STORAGE.

COOPERING CARS:
    The elevator will not furnish grain doors or Cooper cars.

STORAGE:
    Each calendar day or fraction thereof after first ten days.

    All grains except Flax . . . . . . . . $1/10    per bushel.
    Flax(all loss in weight or elevator)  . . $1/2    per bushel

TREATING AND CONDITIONING
    Treating for weevils in cars,
        trucks or elevator . . . . . . . . . $.045  per bushel.
    Mixing or Turning--
        All loss in weight borne by owner . . . $.03    per bushel.

    Cooling or Blowing . . . . . . . . . . $.01    per bushel.
    Malathion Treatment . . . . . . . . . . $.015   per bushel.

NOTE:  WE RESERVE THE RIGHT TO ENTER INTO SPECIAL CONTRACTS AT RATES OTHER THAN STATED IN THIS TARIFF FOR DEFINITE QUANTITIES OF GRAIN AND FOR DEFINITE STORAGE PERIODS IF APPLICABLE.  SUCH RATES UNDER THE SAME TERMS WILL BE MADE AVAILABLE TO ALL DEPOSITORS.

CNPDF - www.texisi.com

## RECEIPT OF GRAIN

Grain will be received, stored and handled in the elevator subject to the following rules, regulations and charges. All rates and charges shown in the Rate Schedule of this tariff covers work performed on straight time basis.

## RULES AND REGULATIONS

**ITEM 1 - INSPECTION** - All grain shall be inspected and graded in accordance with standards established under the United States Grain Standards Act before received into and discharged from the elevator. Fees for inspection and grading to be set by the Corpus Christ Grain Exchange on inbound grain. All outbound grain to be graded by Federal Grain Inspection Service. All inspections and grading expense to be borne by the owner.

**ITEM 2 - UNLOADING GRAIN INTO THE ELEVATOR** - The Elevator management reserves the right to refuse any grain which in its opinion is unmerchantable or is unfit condition for storage, transfer or handling. The primary purpose of the Elevator is for the transfer of grain from railcars, trucks, barges and vessels to transportation modes which will move grain through the elevator for export and will be used for storage of grain only to the extent not required for such primary purpose; therefore, the management reserves the right to preferentially unload those cars, trucks, barges or vessels for which outward shipping space has been engaged and is available.

**ITEM 3 - STORING REGARDLESS OF OWNERSHIP** - Grains will be placed in bins containing the same kind and grade regardless of ownership. Preserving identity or special binning will be done only by special arrangements.

**ITEM 4 - GRAIN AT OWNER RISK** - All grain placed in the elevator is at owners risk of depreciation in grade from heating, insects or any other cause including natural increase in dockage content resulting from repeated handling under normal grain elevator operational practices and methods.

**ITEM 5 - CONDITIONING GRAIN** - The Elevator management reserves the right after due diligence to treat, dry or otherwise recondition any grain on the elevator which in its judgment is in need of such handling without prior knowledge or consent of the owner. Necessity of such handling to be concurred in by a Corpus Christi Grain Exchange inspector. Owner of the grain so handled will be liable for payment of all charges resulting therefrom as well as weight shrinkage of the grain.

**ITEM 6 - REMOVAL OF GRAIN -** If any grain in the elevator should become out of condition, the Elevator reserves the right to order same out on three (3) days notice and if not removed from the elevator before expiration of that time, the elevator management shall have the right to remove and dispose of such grain at the expense of and for the account of the owner.

**ITEM 7 - INSURANCE -** Insurance on all grain stored under the above Schedule of Charges will be carried by the elevator operator against loss or damage by Fire and Extended Coverage perils(windstorm, lightning, hail, explosion, riot, riot attending a strike, civil commotion, smoke, vehicles and aircraft) for its market value, to the extent that such insurance is procurable. The cost of such insurance is included in the charges for receiving and shipping grain. Loss by any other insurable cause shall be at the owner's risk.

**ITEM 8 - CONGESTION -** In the event of congestion of cars, barges, vessels or trucks, the elevator operator reserves the right, without liability for loss, damage or demurrage, to unload those cars, barges, vessels, or trucks for which outward transportation has been engaged and is available.

**ITEM 9 - TRIMMERS -** Mechanical grain trimmers are available at the elevator dock for use on all cargoes loaded. Rental in the amount of _10_ cents per gross ton plus $25.00 per hour to cover cost of maintenance man will be charged for their use.

**ITEM 10 - PERFORMANCE -** The Elevator will undertake to furnish all service specified in the tariff with reasonable promptness but it is not obligated to furnish services, or is it liable for failure to do so in event of Government intervention, labor troubles, war conditions or other causes beyond its control.

**ITEM 11 - DOCKAGE AND WHARFAGE -** Dockage is charged according to Brownsville Navigation District Tariff. Wharfage is _20_ cents per metric ton loaded or unloaded. Where more than one gross tonnage is applicable to a vessel, the highest will apply.

**ITEM 12 - VESSELS REQUIRED TO WORK OVERTIME -** In order to secure the fullest possible use of the elevator's grain handling facilities, whenever there are ships waiting to load or unload, or there is, in the elevator manager's judgment, necessity of overtime work to avoid congestion, vessels will work unlimited overtime at their own expense if requested to do so by the by elevator management. Any vessel refusing to do so shall vacate the berth on order of the elevator management. Should any vessel fail to vacate the berth when ordered to do so under these circumstances or under the circumstances set forth in Item 13, a dockage charge of $800.00 per hour for each hour or fraction thereof, will be assessed against the vessel and/or its owners, and agents, after notice to vacate has been given the vessel and/or its owners, agents, master or mate.

This charge shall not affect the right of the elevator to effect removal of the vessel from the berth by any lawful means, at vessel's risk and expense. A vessel losing its right to berth by refusal to work overtime shall lose its turn in favor of the next vessel that is willing to work overtime, which vessel shall retain the berth so long as it is willing to work sucessive straight times and overtime periods until loading or unloading is completed. The vessel so losing its turn shall be entitled to berth first available thereafter, subject to the same overtime provisions set forth above if the circumstances requiring overtime work are then found to exist by the elevator management. When vessel is not required to work overtime but desires to at owner's expense, such desires must be made known to elevator manager by 3:30 P.M. of the day the overtime is to be worked. The elevator reserves the right to refuse to operate the elevator during overtime hours.

**ITEM 13 - BERTHING OF SHIPS** - Except as otherwise provided in this Tariff, vessels awaiting berth at the elevator will load or discharge in the order in which they file with the elevator office. A filing shall be deemed accomplished with the presentation of:
  (1)   Certificate of Readiness in all compartments in which grain is to be loaded, issued by the National Cargo Bureau Representative.
  (2) Federal Grain Inspection Service satisfactory condition report.

Liner vessels, will be given preference in the assignment of berths over other vessels except when, in the judgment of the elevator management such preference would not be in the best interest of the satisfactory operation of the elevator or when, in the judgement of the elevator management, it would impose an undue hardship on other vessels waiting to load or unload.

The term liners as used herein, shall mean vessels of lines having regularly advertised scheduled sailing from the Port of Brownsville, Texas, and the quantity of grain for loading is not in excess of 2/3 of the vessel's deadweight tonnage for cargo.

The Elevator management reserves the right to change the turn of vessels when confronted with congestion, the urgent need to load or unload a particular grade of grain or to otherwise facilitate elevator operations.

Any vessel ordered to vacate the berth for such reasons will return to berth after the vessel loading/ or unloading immediately thereafter, if any completes loading/ or unloading or vacates the berth for other reasons, provided the aforesaid circumstance requiring the vessel to vacate the berth is found by elevator management to no longer exist.

The elevator management of Port Elevator-Brownsville, Inc. reserves the right to refuse the berth at our facility to any vessel without at least ten (10) days prior advice in writing from the suppliers of the cargo of their intention to load or unload the vessel at Port Elevator-Brownsville, Inc.

**ITEM 14 - APPLICATION FOR BERTH -** All vessels, their owners or agents, desiring berth at this facility shall file with the elevator office an application for berth on forms provided by the elevator. This application should be filed as far in advance as possible but in no case should such filing be later than 5:00 P.M. on the business day preceding the day the vessel desires to berth. The filing of this application shall have no bearing on the time that the vessel will be placed on turn for the berth as this will be governed by Item 13 of this Tariff.

**ITEM 15 - GENERAL REGULATIONS ON VESSELS:**

(1)   The elevator operator shall not be liable for demurrage, damages, damages for delay or loss of dispatch time incurred by any vessel or charterer thereof for any causes other than willful or grossly negligent acts of the elevator operator.

(2)   The elevator operator shall not be responsible for marine loss or damage to grain or barges, ships or their waterborne vessels to the elevator dock.

(3)   In all other matters, the elevator shall not be responsible for delay caused by any cause beyond its control, however or wherever arising.

(4)   Any vessel in berth shall at all times maintain appropriate officers and crew aboard to permit reception of cargo at any time of day or night, including Saturdays, Sundays and holidays.

(5)   If in the opinion of the elevator operator the weather conditions so warrant, any vessel in berth may be ordered at any time of day or night to vacate said berth and anchor in the approved anchorage area until such time as weather conditions permit the vessel to return to berth. Appropriate officers and crew shall be maintained aboard the vessel for this purpose.

**ITEM 16 - RESPONSIBILITY FOR PAYMENT OF CHARGES -** All invoices for charges are due upon presentation of invoice and payable in Brownsville, Texas. Unless otherwise provided by special arrangement with the elevator management, the responsibility for payment of invoices for provisions or services rendered by this facility shall, in the first instance, be that of the local agent in Brownsville, Texas who orders or authorizes such provisions or services as well as of the vessel and vessel owner.

When necessity calls for enforcement of Item 12 of this Tariff, the charges incurred thereby shall have the effect of being authorized by the local agent of the vessel and/or charterer and responsibility for payment of such charges shall be that of the local agent.

The elevator reserves the right to refuse berth and load or unload ships of any local agent having unpaid accounts sixty days or older until such account is paid in full.

**ITEM 17 - OVERTIME:**

A)  Overtime per hour is $175.00 per hour except as provided in B and C Below.

B)  Overtime Hours:

Overtime will be assessed for work before 8:00 A.M. and after 5:00 P.M. during weekdays.  All work on Saturdays and Sundays will be overtime hours.  Sundays and Holidays  will assessed at the rate of $235.00 per hour.

C)  If elevator labor is called out for work, the following minimum  hourly periods will assessed at overtime rate. 7:00 A.M. Call Out - 1 hour minimum, except Saturdays, Sundays or Holidays at which time, 4 hours overtime will be the minimum.  7:00 P.M. Call Out - 2 hours minimum. Overtime rate at $235.00 per hour will be assessed for time required to work during meal hours.

**ITEM 18 - HOLIDAYS** - The following days shall be recognized as Holidays by this facility and all work on these designated days will be performed at the discretion of the elevator management and at overtime rates as provided in Item No. 17 of this Tariff.

| | | |
|---|---|---|
| New Year's Day | Good Friday | Labor Day |
| Memorial Day | Thanksgiving Day | Christmas Day |
| Fourth of July | | |

In addition to the days specifically listed above, we shall also recognize as Holidays, with work performed under the conditions of this time, all days subsequently designated as Holidays or overtime days by the United States Government, the State of Texas, the City of Brownsville or other entity having lawful jurisdiction.

Should any Holiday fall on Saturday, the preceding Friday will be observed as a Holiday. Should any Holiday fall on Sunday, the following Monday will be observed as a Holiday.

No work will be scheduled or performed on Labor Day or Christmas Day except in cases of emergency such as fire, or where the property of the Company and/or its customers are in danger or serious injury.

**ITEM 19 -    RENTAL AND USE OF ELEVATOR EQUIPMENT, FACILITIES, PROPERTY AND PERSONNEL:**

A)  General - All vessels, their owners, agents and stevedores or others, hereinafter call "user", renting or using the elevator equipment, shall be upon and subject to the following conditions andcharges, the renting or use of which shall constitute an agreement with Port Elevator-Brownsville, Inc. to pay such charges and be bound by such conditions.

B)   Condition and Responsibility
  1) Equipment of the elevator is presumed to be in good condition when turned over to user, but Port Elevator - Brownsville, Inc does not warrant the mechanical condition thereof.

  2) By receiving possession thereof, user of elevator equipment agrees that upon termination of the period of use, it will be returned in condition as when received, ordinary wear and tear alone accepted.

  3) User assumes sole responsibility and liability for injury to or death of, any person whomsoever, or damage to or destruction of property of any person incident to or arising out of or connected with user's possession, use or operation of elevator equipment, or failure of such equipment to operate; and user shall protect, indemnify, and save harmless the Port Elevator - Brownsville, Inc. against any and all liability for or in respect of the same.

C)   The use and maintenance of equipment (except mechanical trimmers, but including any and all miscellaneous spouting equipment) a charge per Metric Ton (2,204.6 pounds) loaded will be quoted upon request.


**ITEM 20 - VESSELS IN ELEVATOR BERTH SHALL AT ALL TIME MAINTAIN TAUT LINES TO AVOID DAMAGE AND INJURY TO ELEVATOR      PROPERTY AND PERSONNEL.**

**ITEM 21 - RIGHT TO CONTRACT WITH THE GOVERNMENT** - Port Elevator - Brownsville, Inc may enter into contracts with the government of the United States of America or the government of Mexico or any agency thereof, providing for storage and services rates other than storage and services rates provided herein, applicable only to grain or grain by-product, or a commodity defined in any such contract as grain or grain by-product, in which the United States of America or the government of Mexico, or the agency thereof contracting with the undersigned warehouseman as aforesaid, has an interest.

**ITEM 22 - WATER AND ELECTRICITY** - Water and electricity provided by the elevator will be set by the management of the elevator based on current utility rates.

**ITEM 23 - INSURANCE** - All contractors, stevedores or individuals performing work on the elevator property will at all times maintain adequate insurance coverage as required by Local, State and Federal Regulations. Under no circumstances does Port Elevator-Brownsville, Inc. assume or accept any responsibility for these contractors, stevedores or individuals or any employees thereof.

**ITEM 24 - SMOKING OR OPEN FLAME -** The Port Elevator-Brownsville,Inc is designated as a non-smoking area.  However, certain designated smoking areas are provided. No open flames are permitted.  Hot work permits may be issued on a case-by-case basis.

**ITEM 25 - VISITORS -**  All visitors to Port Elevator - Brownsville, Inc. must check in at the office.  Visitors to any vessels at the elevator berth enter the property at their own risk.  All visitors to vessels in the berth must have permission from the owners, agents, captain or mate of the vessel which they are visiting.