Case 1:98-cv-00023   Document 46   Filed in TXSD on 07/03/2000   Page 1 of 54

United States District Court
Southern District of Texas
FILED

JUL 0 3 2000

Michael N. Milby
Clerk of Court

46

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR -<br>BROWNSVILLE, L.C. | § § § | |
| VS. | § § | CIVIL NO. B-98-23 |
| IVONNE SOTO VEGA, BERSAIN<br>GUTIERREZ, AND SYSCO DE BAJA,<br>S.A. DE C.V. | § § § § | JURY DEMANDED |

### DEFENDANT IVONNE SOTO VEGA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT, INCLUDING AUTHORITIES

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES, **IVONNE SOTO VEGA,** Defendant in the above-styled and numbered cause and subject her Second Motion to Dismiss filed on or about May 11, 2000, files this Response in Opposition to Plaintiff **PORT ELEVATOR-BROWNSVILLE, L.C.'S** (hereinafter **"PORT ELEVATOR"**) Motion for Leave to File Amended Complaint, Including Authorities and in support thereof would show as follows:

### I.

### HISTORY OF CASE

**PORT ELEVATOR** requests leave of court to file what amounts to an Original Complaint. **PORT ELEVATOR** in the past, through its Original and First Amended Complaints in Interpleader which were filed on February 11, 1998 and November 23, 1999, respectively, had asserted that this was a suit in "interpleader". In the two complaints, **PORT ELEVATOR** contended that it was an innocent stakeholder of cash and commodities and sought a declaration as to the ownership of the cash and commodities. **PORT ELEVATOR** also sought its storage and handling fees concerning the commodities.

**PORT ELEVATOR** contends that the only claimants to the cash and commodities are **IVONNE SOTO VEGA** and **BERSAIN GUTIERREZ,** both residents of the country of Mexico. **MR. GUTIERREZ**, as the docket sheet reflects, was served on November 23, 1998 and his answer was due on December 13, 1998. **MR. GUTIERREZ** has not appeared in this lawsuit. **MS. VEGA** has yet to be served in case. Since **MR. GUTIERREZ** has not appeared, there is no controversy as to the ownership of the commodities and cash being held by **PORT ELEVATOR.**

II.

The new claims which **PORT ELEVATOR** seeks to add in this lawsuit against **MS. VEGA** and the new party which **PORT ELEVATOR** seeks to bring into this lawsuit, WALTER PUFFELIS, INDIVIDUALLY AND d/b/a AGI/AKRON GROUP, INC. are the subject of a prior state court lawsuit. **MS. VEGA** filed her lawsuit in state court on or about May 28, 1999, which predates **PORT ELEVATOR'S** proposed affirmative claims for relief in this case. A copy of **MRS. VEGA'S** Original Petition is attached hereto as **Exhibit "A".** The parties to the Original Petition included **PORT ELEVATOR,** SOUTHWEST GRAIN CO., INC., WALTER PUFFELIS GALVAN, III and AGI/AKRON GROUP, INC. The depositions of the corporate representatives for **PORT ELEVATOR** and SOUTHWEST GRAIN CO., INC. were taken in the state court case. Additionally, the deposition of Enrique Villarreal was taken. He testified that he had entered into a contract to buy the corn **MS. VEGA** had stored at **PORT ELEVATOR** from **MS. VEGA,** but the court would not release the corn. A trial setting was obtained in the state court matter. The case was set for trial for September 11, 2000.

See **Exhibit "B"**, Affidavit of William D Mount, Jr.  Default judgments were taken on April 5, 2000 and May 18, 2000, respectively by **MS. VEGA** against the two Defendants which **PORT ELEVATOR** seeks to add in this lawsuit.  Copies of these interlocutory judgments are attached hereto as **Exhibits "C"** and **"D"**.  On or about May 19, 2000, the state court held a hearing on **PORT ELEVATOR'S** request to abate the state court matter due to this case.  At the state court hearing, **MS. VEGA** asserted that she had a pending Motion to Dismiss in the federal matter.  Judge Aparicio granted the motion to abate, but stated that if this court were to dismiss **MS. VEGA** from the federal lawsuit that he would lift the abatement and reschedule the state court trial for December 2000 or January 2001.  See **Exhibit "B"**.

### III.

### PORT ELEVATOR'S PROPOSED BREACH OF CONTRACT CLAIM CANNOT BE BROUGHT AGAINST MS. VEGA

**PORT ELEVATOR** seeks to amend its Complaint in Interpleader to bring a claim against **MS. VEGA** for breach of contract.  However, at Section 23 of **PORT ELEVATOR'S** Proposed Second Amended Complaint, **PORT ELEVATOR** "denies Defendant **VEGA** was a contracting party as herein described".  Since **PORT ELEVATOR** claims it does not have a contract with **MS. VEGA**, Plaintiff cannot as a matter of law prove breach of contract.  Because it cannot prove a breach of contract claim, **PORT ELEVATOR'S** Motion for Leave must be denied.

### IV.

A trial court does not abuse its discretion in denying leave to amend a complaint which, even as amended, would fail to state a

cause of action.  <u>S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Housing Development Fund Co., Inc.</u>, 608 F.2d 28 (2nd Cir. 1979).  Amendments to complaints are not allowed where a party seeks to assert a claim that lacks merit.  <u>Vulcan Society of Westchester County v. City of White Plains</u>, 82 F.R.D. 379 (D.C.N.Y. 1979).  A district court is justified in denying a motion for leave to amend pleadings if the proposed amendment could not withstand a motion to dismiss.  <u>Journal Pub. Co. v. American Home Assur. Co.</u>, 771 F. Supp. 632 (S.D.N.Y. 1991).  Because **PORT ELEVATOR** has failed to state a contract claim against **MS. VEGA** since it denies a contract existed between the parties, **PORT ELEVATOR** has failed to state a claim and this court should not grant **PORT ELEVATOR'S** Motion for Leave.

## V.

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain a short and plain statement of the claim showing that the pleader is entitled to relief.  **PORT ELEVATOR** has not set forth a breach of contract claim because it denies there was a contract between **PORT ELEVATOR** and **MS. VEGA**.  Because **PORT ELEVATOR** has failed to set forth a claim showing that it is entitled to relief, this court should deny **PORT ELEVATOR'S** Motion for Leave to File an Amended Complaint.

## VI.

**MS. VEGA** would aver that there has been a violation of Rule 11 of the Federal Rules of Civil Procedure by **PORT ELEVATOR'S** attorney

in requesting relief to file a breach of contract claim when the attorney's client denies there is any contract between the parties. **MS. VEGA** would request that the court raise this issue of a Rule 11 violation on the court's own initiative under the authority of Rule 11(c)(1)(B).

## VII.

## MS. VEGA REQUESTS THAT THIS COURT DECLINE TO ENTERTAIN PORT ELEVATOR'S PROPOSED DECLARATORY JUDGMENT CLAIM

**PORT ELEVATOR** has proposed in its Motion for Leave to File Amended Complaint that it be allowed to bring a declaratory judgment claim to declare duties and obligations under the contract attached hereto as **Exhibit "E"**. However, this particular contract is already the subject of the state court matter. **MS. VEGA** has brought claims under this particular contract. See **Exhibit "F"**, copy of Plaintiff's First Amended Petition filed on or about March 22, 2000. A court may in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere. Abbott Laboratories v. Gardner, 387 U.S. 136, 1967. As a suit concerning this particular contract is pending elsewhere, this court should decline to exercise diversity jurisdiction over it.

## VIII.

It is well established that a district court "is not required to provide declaratory judgment relief, and it is a matter for the district court's sound discretion whether to decide a declaratory judgment action." Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 601 (5th Cir. 1983) (citing Brillhart v. Excess Ins. Co.

of Am., 316 U.S. 491 (1942)); see also <u>Dresser Indus., Inc. v. Insurance Co. of N. Am.</u>, 358 F.Supp. 327, 330 (N.D. Tex.) (Declaratory Judgment Act "gives a court a choice, not a command"), aff'd, 475 F.2d 1402 (5th Cir. 1973). Although a district court may not dismiss the request for declaratory judgment relief "on the basis of a whim or personal disinclination," <u>Hollis v. Itawamba County Loans</u>, 657 F.2d 746, 750 (5th Cir. 1981), the court may consider a variety of factors in determining whether to decide a declaratory judgment suit. <u>Rowan Companies, Inc. v. Griffin</u>, 876 F.2d 26, 28, 29 (5th Cir. 1989). As examples, declaratory judgment relief may be denied because of a pending state court proceeding in which the matters in controversy between the parties may be fully litigated, <u>Brillhart</u>, 316 U.S. at 494-95; <u>Hollis</u>, 657 F.2d at 750, because the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum-shopping, <u>Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill</u>, 751 F.2d 801, 804 (5th Cir.), cert. denied, 474 U.S. 909 (1985), because of possible inequities in permitting the plaintiff to gain precedence in time and forum, <u>Id</u>., or because of inconvenience to the parties or the witnesses, <u>Id</u>. **MS. VEGA** requests that this court decline to entertain a declaratory judgment action because the issues concerning the subject contract may be decided in the state court matter. Plaintiff's First Amended Petition in the state court matter reflects that the contract which **PORT ELEVATOR** seeks to interpret is already the subject of the lawsuit.

## IX.

As an additional reason for **MS. VEGA'S** assertion that a declaratory judgment should not be entertained, **MS. VEGA** contends that **PORT ELEVATOR** filed its request for leave to file a declaratory judgment suit to avoid liability in anticipation of **MS. VEGA'S** lawsuit and for the purpose of forum-shopping. The evidence shows that **PORT ELEVATOR** did not attempt to bring this claim until after **MS. VEGA** filed her lawsuit in state court for breach of contract. **PORT ELEVATOR** could have filed a counter-suit for breach of contract in the state court matter and a request for a declaration of its rights and obligations under the contract, but failed to do so. **PORT ELEVATOR'S** conduct in requesting a declaratory judgment in this court at this time amounts to forum-shopping.

### X.

**PORT ELEVATOR** makes a statement in its Motion for Leave that the granting of leave to file the requested amendment will not prejudice the opposing parties. This statement is false. As earlier discussed herein, **MS. VEGA** has a state court interlocutory judgment against WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC. and against AKRON GROUP, INC. If the Motion for Leave were sustained, these judgments could be prejudiced.

### XI.

Additionally, **PORT ELEVATOR** is required to assert its claims against **MS. VEGA**, MR. GALVAN, and AGI/AKRON GROUP, INC. in state court as they are compulsory counterclaims. Texas Rule of Civil

Procedure 97(a) requires **PORT ELEVATOR** to bring as a compulsory counterclaim in state court any claim within the jurisdiction of that court, not already the subject of a pending action, which at the time of filing of its pleading **PORT ELEVATOR** had against any opposing party, when that claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and when it does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction.  See Tex. R. Civ. P. 97(a).  **PORT ELEVATOR'S** proposed claims in this court fall squarely within this rule.  **PORT ELEVATOR** is seeking to circumvent the state court process and is in fact forum-shopping when it seeks to bring its proposed claims in this court.

For the above reasons, Defendant **IVONNE SOTO VEGA** respectfully requests that this Honorable Court deny Plaintiff **PORT ELEVATOR-BROWNSVILLE, L.C.'S** Motion for Leave to File Amended Complaint, Including Authorities and grant such other and further relief which Defendant may justly be entitled.

Respectfully submitted,

*Roy Dale by Bill Mount with permission*

ROY S. DALE
State Bar No. 05326700
WILLIAM D. MOUNT, JR.
State Bar No. 14602950

DALE & KLEIN, L.L.P.
6301 N. 10th St.
McAllen, Texas 78504
Tel. No. (956) 687-8700
Fax. No. (956) 687-2416

ATTORNEYS FOR DEFENDANT,
IVONNE SOTO VEGA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document has been forwarded to counsel of record, to wit:

John Skaggs
SKAGGS & GARZA, L.L.P.
710 Laurel
P.O. Drawer 2285
McAllen, Texas 78502-2285

**VIA CERTIFIED MAIL/RRR** on this the 30th day of June, 2000.

Roy Dale by Bill M
_with permission_
ROY S. DALE

H:\p\99-3843\motions\Rsp to MFL to File Am Complaint                    page 9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PORT ELEVATOR –        §
BROWNSVILLE, L.C.       §
                             §
VS.                   §      CIVIL NO. B-98-23
                             §
IVONNE SOTO VEGA, BERSAIN   §      JURY DEMANDED
GUTIERREZ, AND SYSCO DE BAJA,  §
S.A. DE C.V.          §

## ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT, INCLUDING AUTHORITIES

On the _____ day of _____, 2000, came on to be heard Plaintiff **PORT ELEVATOR-BROWNSVILLE, L.C.'S** Motion for Leave to File Amended Complaint, Including Authorities.  The Court having heard the arguments of counsel and considered same, and being of the opinion that Plaintiff's motion is not well-taken, it is therefore,

ORDERED that Plaintiff's Motion be, and is hereby **DENIED**.

**SIGNED FOR ENTRY** on this _____ day of _____, 2000, Brownsville Division.

_____
J U D G E   P R E S I D I N G

CAUSE NO. C-2969-99-A

| | | |
|---|---|---|
| IVONNE SOTO VEGA | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| PORT ELEVATOR-BROWNSVILLE, | § | |
| L.C., SOUTHWEST GRAIN CO., | § | |
| INC., AGI/AKRON GROUP, INC., | § | HIDALGO COUNTY, TEXAS |
| SYSCO DE BAJA, WALTER PUFFELIS | § | |
| GALVAN, III, INDIVIDUALLY AND | § | |
| D/B/A AGI/AKRON GROUP, INC., | § | |
| CRAIG ELKINS, INDIVIDUALLY AND | § | |
| D/B/A PORT ELEVATOR-BROWNSVILLE, | § | |
| L.C. AND SOUTHWEST GRAIN CO., | § | |
| INC., BERSAIN GUTIERREZ ZENTENO, | § | |
| INDIVIDUALLY AND D/B/A SYSCO | § | |
| DE BAJA | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE STATE DISTRICT JUDGE:

NOW COMES **IVONNE SOTO VEGA**, Plaintiff in the above-styled and numbered cause and files her Original Petition and for cause of action would respectfully show the following:

### I.

### DISCOVERY CONTROL PLAN-LEVEL 2

Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.

### PARTIES

Plaintiff **IVONNE SOTO VEGA** is a Mexican National who resides in Mexico.

Defendant **PORT ELEVATOR-BROWNSVILLE, L.C.** (hereinafter also refers to all employees, agents, and representatives) is a Texas limited liability company licensed to do business in the State of


EXHIBIT
A

Texas.  It may be served with process through its registered agent, **CRAIG ELKINS**, at 2334 Boca Chica Blvd., Ste. 200, Brownsville, Texas 78520.

Defendant **SOUTHWEST GRAIN CO., INC.** (hereinafter also refers to all employees, agents, and representatives) is a Texas corporation licensed to do business in Texas.  It may be served through its registered agent, Tommy Joe Crutcher, at Rt. 3, Box 188-F, Edinburg, Texas 78539.

Defendant **AGI/AKRON GROUP, INC.** (hereinafter also refers to all employees, agents, and representatives) is a California corporation which may be served with process through its registered agent, Rocky Halfon, at 225 Broadway, 19th Floor, San Diego, California 92101.

Defendant **SYSCO DE BAJA** (hereinafter also refers to all employees, agents, and representatives) is a California business which may be served by serving **BERSAIN GUTIERREZ ZENTENO**.

Defendant **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC.** (hereinafter **WALTER PUFFELIS**) is an individual who may be served at his place of business, 8653 Ave. Costa Norte Suite, Otay Mesa, San Diego, California 92173.

Defendant **CRAIG ELKINS, INDIVIDUALLY AND D/B/A PORT ELEVATOR-BROWNSVILLE, L.C. and SOUTHWEST GRAIN CO., INC.** (hereinafter **CRAIG ELKINS**) is an individual who is a resident of Texas and may be served with process at his residence, 910 Rio Grande Drive, Mission, Texas 78572.

Defendant **BERSAIN GUTIERREZ ZENTENO, INDIVIDUALLY AND D/B/A**

**SYSCO DE BAJA** (hereinafter **BERSAIN GUTIERREZ**) is an individual who may be served with process at his place of business, 2295 Paseo De La Americas, Suite 22, Otay Mesa, California 92173.

### III.

### JURISDICTION AND VENUE

The damages claimed are in excess of the minimum jurisdictional limits of this court. Venue is proper in Hidalgo County, Texas under Section 15.002(2) of the Texas Civil Practice & Remedies Code in that **CRAIG ELKINS** is a natural person whose residence at the time the cause of action accrued was Mission, Hidalgo County. Venue is proper under Section 15.002(3) because **SOUTHWEST GRAIN CO., INC.'S** principal office in this state is located in Hidalgo County.

### IV.

### GENERAL FACTS

**IVONNE VEGA** made three purchases of yellow corn of almost 5,000 metric tones in the Fall of 1996 for the express purpose of reselling the corn to one or more buyers in Mexico and making a profit. On or about October 21, 1996, **MS. VEGA** purchased 3,444.434 metric tons of yellow corn from **WALTER PUFFELIS, III** and **AGI/AKRON GROUP, INC.** The purchase price was $170.00 per metric ton. On or about November 13, 1996, **MS. VEGA** made two more purchases from **WALTER PUFFELIS, III**, and **AGI/AKRON GROUP, INC.** One purchase was for 688.309 metric tons and the other was for 1,791.566 metric tons. The price per metric ton again was $170.00. Acting under **MS. VEGA'S** instructions, the yellow corn was transported via rail

car to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC. CRAIG ELKINS** was the manager of **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** at the time the corn was delivered.

## V.

**MR. GUTIERREZ** and **SYSCO DE BAJA** accepted the yellow corn on behalf of **MS. VEGA** when the shipments arrived in the Fall of 1996 at **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC. MR. GUTIERREZ** and **SYSCO DE BAJA** had no authority to sell or transfer the corn or enter into any contracts concerning storage or delivery of the corn.

## VI.

Within days of the corn's arrival, **MR. GUTIERREZ** and **SYSCO DE BAJA** sold about 3,400 metric tons of **MS. VEGA'S** yellow corn without **MS. VEGA'S** permission or knowledge. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** expressly released the yellow corn to **MR. GUTIERREZ** and **SYSCO DE BAJA** knowing that the corn would be sold. At the time the corn was released, **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** knew that **MS. VEGA** had an ownership interest in the corn.

## VII.

**MS. VEGA** found a buyer for her approximately 5,000 metric tons of corn and requested in September of 1997 that **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** release her corn. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO, INC.** declined to do so. **MS. VEGA** first

discovered in October 1997 that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** had released about 3,400 tons of her corn the year previously. Subsequently, **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** sold the remaining 1,600 metric tons of **MS. VEGA'S** yellow corn without her permission.

### VIII.

### CAUSE OF ACTION AGAINST CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C. AND SOUTHWEST GRAIN CO, INC.

**a. Conversion**

**MS. VEGA** was the sole owner of the yellow corn which stored at **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC. MS. VEGA** had the right of possession of this property. **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** unlawfully and without authority assumed dominion and control over **MS. VEGA'S** property to the exclusion of **MS. VEGA'S** rights in this property in that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** turned over **MS. VEGA'S** property to one or more third parties including **BERSAIN GUTIERREZ ZENTENO** and **SYSCO DE BAJA. MS. VEGA** would show that she had left the property in **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO.'S** possession for the purpose of storing the property until the property was to be sold. **MS. VEGA** would show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** conduct was unlawful in that they turned over **MS. VEGA'S** corn to **MR. GUTIERREZ** and **SYSCO DE BAJA** without permission. **MR. GUTIERREZ** and **SYSCO DE BAJA** immediately sold said corn. **MS. VEGA** would further

show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** possession was unlawful when they refused to return **MS. VEGA'S** corn when she requested that said corn be returned at a time when she had a buyer for said corn.  **MS. VEGA** sues for the fair market value of the property at the times and places of the conversion.  **MS. VEGA** is also entitled to interest on the sum of the value of the property converted from the dates of conversion, at the prejudgment rate of interest.  **MS. VEGA** would further show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** conversion of the property, as alleged above, was fraudulent and/or malicious in that they knew the property belonged to **MS. VEGA**, but deliberately released said property to **MR. GUTIERREZ** and **SYSCO DE BAJA** and later refused upon request by **MS. VEGA** to release the property to **MS. VEGA** for sale to a third party.  **MS. VEGA** would show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO.** specifically intended to cause substantial injury to **MS. VEGA** and accordingly **MS. VEGA** asks that exemplary damages be awarded against **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.**

   b.   **Negligence**

   **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** breached the duty owed to **MS. VEGA** to store her yellow corn and not release said property without her express permission.  **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** breached that duty by negligently releasing **MS. VEGA'S** property to one or more third parties and by

later refusing to release **MS. VEGA'S** property to her upon request, proximately causing damages. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** entered into a storage and delivery contract with **SYSCO DE BAJA** and **AGI/AKRON GROUP, INC.** that delivery of the corn shall be "done only upon the written instructions of **SYSCO DE BAJA, SA DE CV** and signed by **BERSAIN GUTIERREZ**." **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** were on notice that **MS. VEGA** had an interest in the yellow corn that was shipped to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** through the bills of lading that accompanied the corn. The bills of lading stated that **MS. VEGA** was to be notified once the shipments were received in Brownsville, Texas. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** had a duty to notify **MS. VEGA** when the corn arrived, but failed to do so, proximately causing damages. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** negligently entered into a contract with **SYSCO DE BAJA** and **AGI/AKRON GROUP, INC.** **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** to the exclusion of **MS. VEGA** and are liable for the damages proximately caused to **MS. VEGA** by the conduct described herein.

     c.   **Breach of Contract**

     In the Fall of 1996, **MS. VEGA** entered into a contract with **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** to store corn at their facility in Brownsville, Texas. As part of the agreement, **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE,**

L.C. and **SOUTHWEST GRAIN CO., INC.** agreed not to release the corn without the express permission of **MS. VEGA.** **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** breached this contract by releasing **MS. VEGA'S** corn to one or more third parties including **BERSAIN GUTIERREZ** and **SYSCO DE BAJA** without her permission and by later refusing to release **MS. VEGA'S** corn to her when she requested its release in September of 1997. **MS. VEGA** did not become aware that **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** had released her corn to one or more third parties until about October 1997.

IX.

CAUSE OF ACTION AGAINST BERSAIN GUTIERREZ AND SYSCO DE BAJA

    a.   **Conversion**

**BERSAIN GUTIERREZ** and **SYSCO DE BAJA** accepted **MS. VEGA'S** yellow corn at **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** in Brownsville, Texas. At the time **MR. GUTIERREZ** and **SYSCO DE BAJA** received the corn, they knew the corn was owned by **MS. VEGA.** They knew that they had no authority to sell or transfer **MS. VEGA'S** corn without her express permission. Within days of the corn being delivered to the facility in Brownsville, Texas, **MR. GUTIERREZ** and **SYSCO DE BAJA** unlawfully and without authority assumed dominion and control over **MS. VEGA'S** corn to the exclusion of **MS. VEGA'S** rights in said corn and thereafter sold about 3,400 metric tons of **MS. VEGA'S** corn. **MS. VEGA** sues for the fair market value of her corn at the times and places of the conversion. **MS. VEGA** is also entitled to interest on the sum of the value of the property

converted from the dates of conversion, at the prejudgment rate of interest. **MS. VEGA** would further show that **MR. GUTIERREZ** and **SYSCO DE BAJA'S** conversion of the property, as alleged above, was fraudulent and/or malicious in that **MR. GUTIERREZ** and **SYSCO DE BAJA** knew the property belonged to **MS. VEGA** and that they had no authority to assert dominion, control, transfer and/or sell said property without the express permission of **MS. VEGA**. **MS. VEGA** would show that **MR. GUTIERREZ** and **SYSCO DE BAJA** specifically intended to cause substantial injury to **MS. VEGA** and accordingly **MS. VEGA** requests that exemplary damages be awarded against **MR. GUTIERREZ** and **SYSCO DE BAJA**.

**b.   Negligence**

**MR. GUTIERREZ** and **SYSCO DE BAJA** breached the duty owed to **MS. VEGA** to store her yellow corn at **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** in Brownsville, Texas when they allowed the corn to be released to one or more third parties, proximately causing damages to **MS. VEGA**.

**c.   Fraud**

After **MS. VEGA'S** corn was delivered to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** in Brownsville, Texas, **MR. GUTIERREZ** and **SYSCO DE BAJA** knowingly represented to **MS. VEGA** that the corn was safe and secure at the facility in Brownsville, Texas and continued to make such representations even though they had sold about 3,400 metric tons within days of delivery to the Brownsville facility. **MS. VEGA** relied upon **MR. GUTIERREZ** and **SYSCO DE BAJA'S** representations and/or concealments

to her injury.  Further, **MR. GUTIERREZ** and **SYSCO DE BAJA** intended that **MS. VEGA** rely upon his misrepresentations and/or concealments.

**X.**

**CAUSE OF ACTION AGAINST WALTER PUFFELIS GALVAN, III
AND AGI/AKRON GROUP, INC.**

**a.    Negligence**

**WALTER PUFFELIS**, III and **AGI/AKRON GROUP, INC.** owed a duty to **MS. VEGA** to protect her interest at the times her yellow corn was delivered to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.**  They violated this duty by entering into a contract with **PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC., BERSAIN GUTIERREZ** and **SYSCO DE BAJA** and excluding **MS. VEGA** at a time when **MS. VEGA** owned the corn.  The storage and delivery contract entered into stated in part that the corn would only be released "upon the written instructions of **SYSCO DE BAJA, SA DE CV** and signed by **BERSAIN GUTIERREZ**" to the exclusion of **MS. VEGA.**  **WALTER PUFFELIS, III** and **AGI/AKRON GROUP, INC.'S** failure to protect **MS. VEGA'S** interests in the corn, proximately caused damages for which she sues.

**b.    Fraud**

**WALTER PUFFELIS**, III and **AGI/AKRON GROUP, INC.** represented to **MS. VEGA** that her corn would be safe and secure at the facility in Brownsville, Texas, but entered into a contract wherein **MR. GUTIERREZ** and **SYSCO DE BAJA** were granted permission to remove the corn at will from the facility.  **MS. VEGA** relied upon **MR. PUFFELIS** and **AGI/AKRON GROUP, INC.'S** representations as to the safety and security of her corn to her detriment.

## XI.

## UNLAWFUL CONSPIRACY

**MS. VEGA** would further show that there was an unlawful conspiracy between and/or among **CRAIG ELKINS**, **PORT ELEVATOR-BROWNSVILLE, L.C.**, **SOUTHWEST GRAIN CO., INC.**, **SYSCO DE BAJA**, **MR. GUTIERREZ**, **MR. PUFFELIS** and **AGI/AKRON GROUP, INC.** to defraud **MS. VEGA** of her property, resulting in injury for which she sues.

**WHEREFORE**, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial Plaintiff have:

1. Judgment against Defendants for a sum within the jurisdictional limits of the court;

2. Prejudgment interest as provided by law;

3. Postjudgment interest as provided by law;

4. An award of exemplary damages against Defendants in a sum determined by the trier of fact;

5. Attorney's fees;

6. Costs of suit;

7. Such other and further relief which Plaintiff may justly be entitled.

Respectfully submitted,

DALE & KLEIN, L.L.P.
6301 N. 10th Street
McAllen, Texas 78504
Tel. No. (956) 687-8700
Fax. No. (956) 687-2416

ROY S. DALE
State Bar No. 05326700
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
ATTORNEYS FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR - | § | |
| BROWNSVILLE, L.C. | § | |
| | § | |
| VS. | § | CIVIL NO. B-98-23 |
| | § | |
| IVONNE SOTO VEGA, BERSAIN | § | JURY DEMANDED |
| GUTIERREZ, AND SYSCO DE BAJA, | § | |
| S.A. DE C.V. | § | |

## AFFIDAVIT OF WILLIAM D. MOUNT, JR.

STATE OF TEXAS

COUNTY OF HIDALGO

**BEFORE ME,** the undersigned Notary Public, personally appeared **WILLIAM D. MOUNT, JR.,** who being by me duly sworn did depose and state the following:

"My name is **WILLIAM D. MOUNT, JR.** I am over the age of eighteen years, have never been convicted of a felony or a misdemeanor involving moral turpitude and I am competent to make this Affidavit and make this Affidavit upon personal knowledge. Everything herein is true and correct. I represent Defendant IVONNE SOTO VEGA in the above-referenced cause.

"I hereby certify that **Exhibits "A", "C", "D", "E"** and **"F"** attached to Defendant **IVONNE SOTO VEGA'S** Response in Opposition to Plaintiff **PORT ELEVATOR-BROWNSVILLE, L.C.'S** Motion for Leave to File Amended Complaint, Including Authorities are true and correct copies of the originals."

H:\p\99-3843\Mount-Aff

page 1

EXHIBIT
B
FALCON—DALLAS, TX.

I hereby certify that the facts asserted in Section 2 of Defendant **IVONNE SOTO VEGA'S** Response in Opposition to Plaintiff **PORT ELEVATOR-BROWNSVILLE, L.C.'S** Motion for Leave to File Amended Complaint, Including Authorities are true and correct based upon my personal knowledge.

"FURTHER THE AFFIANT SAYETH NOT."

_____
WILLIAM D. MOUNT, JR.

**SUBSCRIBED AND SWORN TO BEFORE ME** on this the 30th day of June, 2000, to certify which witness my hand and official seal.

_____
NOTARY PUBLIC, STATE OF TEXAS

My commission expires: 11~4~2000

MARIA NIEVES ORTIZ
MY COMMISSION EXPIRES
November 4, 2000

## CAUSE NO. C-2969-99-A

| | | |
|---|---|---|
| IVONNE SOTO VEGA | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| PORT ELEVATOR-BROWNSVILLE, | § | |
| L.C., SOUTHWEST GRAIN CO., | § | |
| INC., AGI/AKRON GROUP, INC., | § | HIDALGO COUNTY, TEXAS |
| WALTER PUFFELIS GALVAN, III, | § | |
| INDIVIDUALLY AND D/B/A | § | |
| AGI/AKRON GROUP, INC., | § | |
| CRAIG ELKINS, INDIVIDUALLY AND | § | |
| D/B/A PORT ELEVATOR-BROWNSVILLE, | § | |
| L.C. AND SOUTHWEST GRAIN CO., | § | |
| INC. | § | 92ND JUDICIAL DISTRICT |

### INTERLOCUTORY JUDGMENT

On the ___5th___ day of April 2000, came on to be heard the above-entitled and numbered cause wherein **IVONNE SOTO VEGA** is Plaintiff and **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC.** The Plaintiff appeared by her attorney of record and announced ready for trial. Defendant **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC.** although duly cited to appear and answer, failed to appear and answer, and wholly made default. Citation was served according to law and returned to the clerk where it remained on file for the time required by law.

The Court finds that Plaintiff has filed a First Amended Petition in this cause and further finds that the allegations contained against **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC.** are identical to the allegations made against **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A**



EXHIBIT
C

**AGI/AKRON GROUP, INC.** in the Original Petition.

The Court has read the pleadings and the papers on file, and it is of the opinion that Defendant **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC.** by his default admitted the allegations of Plaintiff's Original Petition which was served upon him and the allegations of Plaintiff's First Amended Original Petition which are identical as to him and that the allegations contained therein be and the same are deemed admitted as to **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC.,** that the cause of action sued on is unliquidated and not proven by an instrument in writing, and that Defendants **PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC.,** and **CRAIG ELKINS, INDIVIDUALLY AND D/B/A PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** have filed answers contesting the allegations of Plaintiff's Original Petition, makes the following orders:

IT IS, **THEREFORE, ORDERED, ADJUDGED AND DECREED** that the material allegations of Plaintiff's Original Petition and Plaintiff's First Amended Petition be and the same are deemed admitted as to **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC.,** and that **IVONNE SOTO VEGA,** Plaintiff have and recover of and from **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC.,** Defendant, such sum of money or other relief as may be proven on the trial of this cause as

provided below.

**IT IS FURTHER ORDERED** that the trial of this cause be had in accordance with this Court's scheduling order(s), at which time or such other time as may be proper, a final judgment shall be rendered, and this interlocutory judgment shall be finalized in accord with that judgment.

Signed this 5 day of April, 2000.

JUDGE PRESIDING

DATE _____ APR 0 5 2000

a true copy I certify
PAULINE G. GONZALEZ
District Clerk  Hidalgo County, Texas
BY X _____ Deputy

## CAUSE NO. C-2969-99-A

| | | |
|---|---|---|
| IVONNE SOTO VEGA | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| PORT ELEVATOR-BROWNSVILLE, | § | |
| L.C., SOUTHWEST GRAIN CO., | § | |
| INC., AGI/AKRON GROUP, INC., | § | HIDALGO COUNTY, TEXAS |
| WALTER PUFFELIS GALVAN, III, | § | |
| INDIVIDUALLY AND | § | |
| D/B/A AGI/AKRON GROUP, INC., | § | |
| CRAIG ELKINS, INDIVIDUALLY AND | § | |
| D/B/A PORT ELEVATOR-BROWNSVILLE, | § | |
| L.C. AND SOUTHWEST GRAIN CO., | § | |
| INC. | § | 92ND JUDICIAL DISTRICT |

### INTERLOCUTORY JUDGMENT

On the 18th day of May, 2000, came on to be heard the above-entitled and numbered cause wherein **IVONNE SOTO VEGA** is Plaintiff and **AGI/AKRON GROUP, INC.**, is Defendant.  The Plaintiff appeared by her attorney of record and announced ready for trial.  Defendant **AGI/AKRON GROUP, INC.**, although duly cited to appear and answer, failed to appear and answer, and wholly made default.  Citation was served according to law and returned to the clerk where it remained on file for the time required by law.

The Court has read the pleadings and the papers on file, and it is of the opinion that Defendant **AGI/AKRON GROUP, INC.** by its default admitted the allegations of Plaintiff's First Amended Petition, that the cause of action sued on is unliquidated and not proved by an instrument in writing, and that Defendants **PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC.** and **CRAIG ELKINS, INDIVIDUALLY AND D/B/A PORT ELEVATOR-BROWNSVILLE, L.C. AND SOUTHWEST GRAIN CO., INC.** have filed answers contesting the

H:\p\99-3843\motions\Interlocutory Judgment                                                    page 1



EXHIBIT D
FALCON•DALLAS, TX

allegations of Plaintiff's Original Petition, makes the following orders:

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** that the material allegations of Plaintiff's First Amended Petition be and the same are deemed admitted as to **AGI/AKRON GROUP, INC.** and that **IVONNE SOTO VEGA**, Plaintiff have and recover of and from **AGI/AKRON GROUP, INC.**, Defendant, such sum of money or other relief as may be proven on the trial of this cause as provided below.

**IT IS FURTHER ORDERED** that the trial of this cause be had in accordance with this Court's scheduling order(s), at which time or such other time as may be proper, a final judgment shall be rendered, and this Interlocutory Judgment shall be finalized in accord with that judgment.

**SIGNED** this 18 day of May, 2000.

JUDGE PRESIDING

DATE _____

A true copy I certify

**PAULINE G. GONZALEZ**
District Clerk   Hidalgo County, Texas

By _____ Deputy

H:\p\99-3843\motions\Interlocutory Judgment

**page 2**

# Port Elevator - Brownsville, L.C.

## RATE & SERVICE CONTRACT

The term "grain" as used in this contract shall mean Corn.  All rates in this contract will be quoted in U.S. dollars per bushel.  Payment for Receiving is due upon completion of each unloading.  Payment for Delivery is due weekly.  All payments are to be in U.S. currency.

The minimum quantity of grain to be handled under this contract is ONE MILLION Bushels (1,000,000 bushels).  If the minimum quantity handled requirement is not met, the Receiving and Delivering Charges increase by one hundred percent (100%).

### RECEIVING AND DELIVERING

Receiving From Railcars  . . . . . . . . . $ __0.02__  per bushel.

Delivering to Trucks:
  U.S. Trucks . . . . . . . . . . . . . . $ __0.02__  per bushel.
  Mexican Trucks . . . . . . . . . . . . $ __0.02__  per bushel.

Delivering of grain will be done only upon the written instructions of SYSCO de BAJA, SA de CV and signed by Bersain Gutierrez.  Fax instructions are acceptable with originals to follow by overnight courier.

RECEIVING INCLUDES INSURANCE AND 15 DAYS STORAGE.

STORAGE:  ALL grain is to be stored Identity Preserved (I.P.)

Each calendar day or fraction thereof after first fifteen days.

All grains except Flax  . . . . . . .   $ __0.001__  per bushel.

TREATING AND CONDITIONING
  Treating for weevils in cars,
    trucks or elevator . . . . . . . . . $ __0.045__  per bushel.
  Mixing or Turning--
    All loss in weight borne by owner  . $ __0.015__  per bushel.
    Cooling or Blowing  . . . . . . . . $ __0.005__  per bushel.
  Malathion Treatment . . . . . . . . . . $ __0.015__  per bushel.

NOTE:  THIS IS A SPECIAL CONTRACT AT RATES OTHER THAN STATED IN OUR PUBLISHED TARIFF.  SUCH RATES UNDER THE SAME TERMS WILL BE MADE AVAILABLE TO ALL DEPOSITORS.  THIS CONTRACT EXPIRES DECEMBER 31st, 1996 AT 24:00 HOURS.

SYSCO DE BAJA, S.A. DE C.V.                    AKRON GROUP INC (AGI)

PORT ELEVATOR-BROWNSVILLE, L.C.

P.O. BOX 4448, BROWNSVILLE


EXHIBIT
E

# RATES

The term "grain" as used in this tariff shall be understood to mean Wheat, Corn, Oats, rye, Barley, Grain Sorghum, Flaxseed and Soybeans. Rates to cover handling, storing and/or treating other commodities such as Meals, Beans, Seed, Rice, etc will be quoted by the elevator management upon request. All rates in this tariff will be quoted in U.S. cents per bushel unless otherwise stated.

### RECEIVING AND DELIVERING

Receiving From Railcars . . . . . . . . . . $.04     per bushel.

Receiving From Trucks:
   U.S. Trucks . . . . . . . . . . . . . . $.04     per bushel.
   Mexican Trucks  . . . . . . . . . . . . $.07     per bushel.

Receiving From Vessels/Barges:  . . . . . $.04     per bushel.

Delivering to Vessels:  . . . . . . . . . $.04     per bushel.

Delivering to Barges:  . . . . . . . . . . $.04     per bushel.

Delivering to Railcars:  . . . . . . . . . $.04     per bushel.

Delivering to Trucks:
   U.S. Trucks . . . . . . . . . . . . . . $.04     per bushel.
   Mexican Trucks . . . . . . . . . . . . $.10     per bushel.

**RECEIVING INCLUDES INSURANCE AND 10 DAYS STORAGE.**

COOPERING CARS:
   The elevator will not furnish grain doors or Cooper cars.

STORAGE:
   Each calendar day or fraction thereof after first ten days.

   All grains except Flax  . . . . . . . . $1/10  per bushel.
   Flax(all loss in weight or elevator)  . . $1/2     per bushel

TREATING AND CONDITIONING
   Treating for weevils in cars,
   trucks or elevator  . . . . . . . . . . $.045  per bushel.
   Mixing or Turning--
   All loss in weight borne by owner . . . $.03     per bushel.

Cooling or Blowing  . . . . . . . . . . $.01     per bushel.
Malathion Treatment . . . . . . . . . . $.015   per bushel.

NOTE:  WE RESERVE THE RIGHT TO ENTER INTO SPECIAL CONTRACTS AT RATES OTHER THAN STATED IN THIS TARIFF FOR DEFINITE QUANTITIES OF GRAIN AND FOR DEFINITE STORAGE PERIODS IF APPLICABLE.  SUCH RATES UNDER THE SAME TERMS WILL BE MADE AVAILABLE TO ALL DEPOSITORS.

## RECEIPT OF GRAIN

Grain will be received, stored and handled in the elevator subject to the following rules, regulations and charges. All rates and charges shown in the Rate Schedule of this tariff covers work performed on straight time basis.

## RULES AND REGULATIONS

**ITEM 1 - INSPECTION -** All grain shall be inspected and graded in accordance with standards established under the United States Grain Standards Act before received into and discharged from the elevator. Fees for inspection and grading to be set by the Corpus Christ Grain Exchange on inbound grain. All outbound grain to be graded by Federal Grain Inspection Service. All inspections and grading expense to be borne by the owner.

**ITEM 2 - UNLOADING GRAIN INTO THE ELEVATOR -** The Elevator management reserves the right to refuse any grain which in its opinion is unmerchantable or is unfit condition for storage, transfer or handling. The primary purpose of the Elevator is for the transfer of grain from railcars, trucks, barges and vessels to transportation modes which will move grain through the elevator for export and will be used for storage of grain only to the extent not required for such primary purpose; therefore, the management reserves the right to preferentially unload those cars, trucks, barges or vessels for which outward shipping space has been engaged and is available.

**ITEM 3 - STORING REGARDLESS OF OWNERSHIP -** Grains will be placed in bins containing the same kind and grade regardless of ownership. Preserving identity or special binning will be done only by special arrangements.

**ITEM 4 - GRAIN AT OWNER RISK -** All grain placed in the elevator is at owners risk of depreciation in grade from heating, insects or any other cause including natural increase in dockage content resulting from repeated handling under normal grain elevator operational practices and methods.

**ITEM 5 - CONDITIONING GRAIN -** The Elevator management reserves the right after due diligence to treat, dry or otherwise recondition any grain on the elevator which in its judgment is in need of such handling without prior knowledge or consent of the owner. Necessity of such handling to be concurred in by a Corpus Christi Grain Exchange inspector. Owner of the grain so handled will be liable for payment of all charges resulting therefrom as well as weight shrinkage of the grain.

**ITEM 6 - REMOVAL OF GRAIN** - If any grain in the elevator should become out of condition, the Elevator reserves the right to order same out on three (3) days notice and if not removed from the elevator before expiration of that time, the elevator management shall have the right to remove and dispose of such grain at the expense of and for the account of the owner.

**ITEM 7 - INSURANCE** - Insurance on all grain stored under the above Schedule of Charges will be carried by the elevator operator against loss or damage by Fire and Extended Coverage perils(windstorm, lightning, hail, explosion, riot, riot attending a strike, civil commotion, smoke, vehicles and aircraft) for its market value, to the extent that such insurance is procurable. The cost of such insurance is included in the charges for receiving and shipping grain. Loss by any other insurable cause shall be at the owner's risk.

**ITEM 8 - CONGESTION** - In the event of congestion of cars, barges, vessels or trucks, the elevator operator reserves the right, without liability for loss, damage or demurrage, to unload those cars, barges, vessels, or trucks for which outward transportation has been engaged and is available.

**ITEM 9 - TRIMMERS** - Mechanical grain trimmers are available at the elevator dock for use on all cargoes loaded. Rental in the amount of_10_ cents per gross ton plus $25.00 per hour to cover cost of maintenance man will be charged for their use.

**ITEM 10 - PERFORMANCE** - The Elevator will undertake to furnish all service specified in the tariff with reasonable promptness but it is not obligated to furnish services, or is it liable for failure to do so in event of Government intervention, labor troubles, war conditions or other causes beyond its control.

**ITEM 11 - DOCKAGE AND WHARFAGE** - Dockage is charged according to Brownsville Navigation District Tariff. Wharfage is _20_ cents per metric ton loaded or unloaded. Where more than one gross tonnage is applicable to a vessel, the highest will apply.

**ITEM 12 - VESSELS REQUIRED TO WORK OVERTIME** - In order to secure the fullest possible use of the elevator's grain handling facilities, whenever there are ships waiting to load or unload, or there is, in the elevator manager's judgment, necessity of overtime work to avoid congestion, vessels will work unlimited overtime at their own expense if requested to do so by the by elevator management. Any vessel refusing to do so shall vacate the berth on order of the elevator management. Should any vessel fail to vacate the berth when ordered to do so under these circumstances or under the circumstances set forth in Item 13, a dockage charge of $800.00 per hour for each hour or fraction thereof, will be assessed against the vessel and/or its owners, and agents, after notice to vacate has been given the vessel and/or its owners, agents, master or mate.

This charge shall not affect the right of the elevator to effect removal of the vessel from the berth by any lawful means, at vessel's risk and expense. A vessel losing its right to berth by refusal to work overtime shall lose its turn in favor of the next vessel that is willing to work overtime, which vessel shall retain the berth so long as it is willing to work successive straight times and overtime periods until loading or unloading is completed. The vessel so losing its turn shall be entitled to berth first available thereafter, subject to the same overtime provisions set forth above if the circumstances requiring overtime work are then found to exist by the elevator management. When vessel is not required to work overtime but desires to at owner's expense, such desires must be made known to elevator manager by 3:30 P.M. of the day the overtime is to be worked. The elevator reserves the right to refuse to operate the elevator during overtime hours.

ITEM 13 - BERTHING OF SHIPS - Except as otherwise provided in this Tariff, vessels awaiting berth at the elevator will load or discharge in the order in which they file with the elevator office. A filing shall be deemed accomplished with the presentation of:

(1)   Certificate of Readiness in all compartments in which grain is to be loaded, issued by the National Cargo Bureau Representative.
(2) Federal Grain Inspection Service satisfactory condition report.

Liner vessels, will be given preference in the assignment of berths over other vessels except when, in the judgment of the elevator management such preference would not be in the best interest of the satisfactory operation of the elevator or when, in the judgement of the elevator management, it would impose an undue hardship on other vessels waiting to load or unload.

The term liners as used herein, shall mean vessels of lines having regularly advertised scheduled sailing from the Port of Brownsville, Texas, and the quantity of grain for loading is not in excess of 2/3 of the vessel's deadweight tonnage for cargo.

The Elevator management reserves the right to change the turn of vessels when confronted with congestion, the urgent need to load or unload a particular grade of grain or to otherwise facilitate elevator operations.

Any vessel ordered to vacate the berth for such reasons will return to berth after the vessel loading/ or unloading immediately thereafter, if any completes loading/ or unloading or vacates the berth for other reasons, provided the aforesaid circumstance requiring the vessel to vacate the berth is found by elevator management to no longer exist.

The elevator management of Port Elevator-Brownsville, Inc. reserves the right to refuse the berth at our facility to any vessel without at least ten (10) days prior advice in writing from the suppliers of the cargo of their intention to load or unload the vessel at Port Elevator-Brownsville, Inc.

**ITEM 14 - APPLICATION FOR BERTH -** All vessels, their owners or agents, desiring berth at this facility shall file with the elevator office an application for berth on forms provided by the elevator. This application should be filed as far in advance as possible but in no case should such filing be later than 5:00 P.M. on the business day preceding the day the vessel desires to berth. The filing of this application shall have no bearing on the time that the vessel will be placed on turn for the berth as this will be governed by Item 13 of this Tariff.

**ITEM 15 - GENERAL REGULATIONS ON VESSELS:**

(1) The elevator operator shall not be liable for demurrage, damages, damages for delay or loss of dispatch time incurred by any vessel or charterer thereof for any causes other than willful or grossly negligent acts of the elevator operator.

(2) The elevator operator shall not be responsible for marine loss or damage to grain or barges, ships or their waterborne vessels to the elevator dock.

(3) In all other matters, the elevator shall not be responsible for delay caused by any cause beyond its control, however or wherever arising.

(4) Any vessel in berth shall at all times maintain appropriate officers and crew aboard to permit reception of cargo at any time of day or night, including Saturdays, Sundays and holidays.

(5) If in the opinion of the elevator operator the weather conditions so warrant, any vessel in berth may be ordered at any time of day or night to vacate said berth and anchor in the approved anchorage area until such time as weather conditions permit the vessel to return to berth. Appropriate officers and crew shall be maintained aboard the vessel for this purpose.

**ITEM 16 - RESPONSIBILITY FOR PAYMENT OF CHARGES -** All invoices for charges are due upon presentation of invoice and payable in Brownsville, Texas. Unless otherwise provided by special arrangement with the elevator management, the responsibility for payment of invoices for provisions or services rendered by this facility shall, in the first instance, be that of the local agent in Brownsville, Texas who orders or authorizes such provisions or services as well as of the vessel and vessel owner.

When necessity calls for enforcement of Item 12 of this Tariff, the charges incurred thereby shall have the effect of being authorized by the local agent of the vessel and/or charterer and responsibility for payment of such charges shall be that of the local agent.

The elevator reserves the right to refuse berth and load or unload ships of any local agent having unpaid accounts sixty days or older until such account is paid in full.

⊗

ITEM 14 - APPLICATION FOR BERTH - All vessels, their owners or agents, desiring berth at this facility shall file with the elevator office an application for berth on forms provided by the elevator. This application should be filed as far in advance as possible but in no case should such filing be later than 5:00 P.M. on the business day preceding the day the vessel desires to berth. The filing of this application shall have no bearing on the time that the vessel will be placed on turn for the berth as this will be governed by Item 13 of this Tariff.

ITEM 15 - GENERAL REGULATIONS ON VESSELS:

(1)   The elevator operator shall not be liable for demurrage, damages, damages for delay or loss of dispatch time incurred by any vessel or charterer thereof for any causes other than willful or grossly negligent acts of the elevator operator.

(2)   The elevator operator shall not be responsible for marine loss or damage to grain or barges, ships or their waterborne vessels to the elevator dock.

(3)   In all other matters, the elevator shall not be responsible for delay caused by any cause beyond its control, however or wherever arising.

(4)   Any vessel in berth shall at all times maintain appropriate officers and crew aboard to permit reception of cargo at any time of day or night, including Saturdays, Sundays and holidays.

(5)   If in the opinion of the elevator operator the weather conditions so warrant, any vessel in berth may be ordered at any time of day or night to vacate said berth and anchor in the approved anchorage area until such time as weather conditions permit the vessel to return to berth.  Appropriate officers and crew shall be maintained aboard the vessel for this purpose.

ITEM 16 - RESPONSIBILITY FOR PAYMENT OF CHARGES - All invoices for charges are due upon presentation of invoice and payable in Brownsville, Texas.  Unless otherwise provided by special arrangement with the elevator management, the responsibility for payment of invoices for provisions or services rendered by this facility shall, in the first instance, be that of the local agent in Brownsville, Texas who orders or authorizes such provisions or services as well as of the vessel and vessel owner.

When necessity calls for enforcement of Item 12 of this Tariff, the charges incurred thereby shall have the effect of being authorized by the local agent of the vessel and/or charterer and responsibility for payment of such charges shall be that of the local agent.

The elevator reserves the right to refuse berth and load or unload ships of any local agent having unpaid accounts sixty days or older until such account is paid in full.

⊗

**ITEM 17 - OVERTIME:**

A)  Overtime per hour is $175.00 per hour except as provided in B and C Below.

B)  Overtime Hours:
    Overtime will be assessed for work before 8:00 A.M. and after 5:00 P.M. during weekdays. All work on Saturdays and Sundays will be overtime hours. Sundays and Holidays will assessed at the rate of $235.00 per hour.

C)  If elevator labor is called out for work, the following minimum hourly periods will assessed at overtime rate. 7:00 A.M. Call Out - 1 hour minimum; except Saturdays, Sundays or Holidays at which time, 4 hours overtime will be the minimum. 7:00 P.M. Call Out - 2 hours minimum. Overtime rate at $235.00 per hour will be assessed for time required to work during meal hours.

**ITEM 18 - HOLIDAYS -** The following days shall be recognized as Holidays by this facility and all work on these designated days will be performed at the discretion of the elevator management and at overtime rates as provided in Item No. 17 of this Tariff.

| | | |
|---|---|---|
| New Year's Day | Good Friday | Labor Day |
| Memorial Day | Thanksgiving Day | Christmas Day |
| Fourth of July | | |

In addition to the days specifically listed above, we shall also recognize as Holidays, with work performed under the conditions of this time, all days subsequently designated as Holidays or overtime days by the United States Government, the State of Texas, the City of Brownsville or other entity having lawful jurisdiction.

Should any Holiday fall on Saturday, the preceding Friday will be observed as a Holiday. Should any Holiday fall on Sunday, the following Monday will be observed as a Holiday.

No work will be scheduled or performed on Labor Day or Christmas Day except in cases of emergency such as fire, or where the property of the Company and/or its customers are in danger of serious injury.

**ITEM 19 -   RENTAL AND USE OF ELEVATOR EQUIPMENT, FACILITIES, PROPERTY AND PERSONNEL:**

A)  General - All vessels, their owners, agents and stevedores or others, hereinafter call "user", renting or using the elevator equipment, shall be upon and subject to the following conditions and charges, the renting or use of which shall constitute an agreement with Port Elevator-Brownsville, Inc. to pay such charges and be bound by such conditions.

B)   **Condition and Responsibility**

1)   Equipment of the elevator is presumed to be in good condition when turned over to user, but Port Elevator - Brownsville, Inc does not warrant the mechanical condition thereof.

2)   By receiving possession thereof, user of elevator equipment agrees that upon termination of the period of use, it will be returned in condition as when received, ordinary wear and tear alone accepted.

3)   User assumes sole responsibility and liability for injury to or death of, any person whomsoever, or damage to or destruction of property of any person incident to or arising out of or connected with user's possession, use or operation of elevator equipment, or failure of such equipment to operate; and user shall protect, indemnify, and save harmless the Port Elevator - Brownsville, Inc. against any and all liability for or in respect of the same.

C)   The use and maintenance of equipment (except mechanical trimmers, but including any and all miscellaneous spouting equipment) a charge per Metric Ton (2,204.6 pounds) loaded will be quoted upon request.

**ITEM 20 - VESSELS IN ELEVATOR BERTH SHALL AT ALL TIME MAINTAIN TAUT LINES TO AVOID DAMAGE AND INJURY TO ELEVATOR        PROPERTY AND PERSONNEL.**

**ITEM 21 - RIGHT TO CONTRACT WITH THE GOVERNMENT -** Port Elevator - Brownsville, Inc may enter into contracts with  the government of the United States of America  or the government of Mexico or any agency thereof, providing for storage and services rates other than storage and services rates provided herein, applicable only to grain or grain by-product, or a commodity defined in any such contract as grain or grain by-product, in which the United States of America or the government of Mexico, or the agency thereof contracting with the undersigned warehouseman as aforesaid, has an interest.

**ITEM 22 - WATER AND ELECTRICITY -** Water and electricity provided by the elevator will be set by the management of the elevator based on current utility rates.

**ITEM 23 - INSURANCE -** All contractors, stevedores or individuals performing work on the elevator property will at all times maintain adequate insurance coverage as required by Local, State and Federal Regulations. Under no circumstances does Port Elevator-Brownsville, Inc. assume or accept any responsibility for these contractors, stevedores or individuals or any employees thereof.

⊗

**ITEM 24 - SMOKING OR OPEN FLAME -** The Port Elevator-Brownsville,Inc is designated as a non-smoking area. However, certain designated smoking areas are provided. No open flames are permitted. Hot work permits may be issued on a case-by-case basis.

**ITEM 25 - VISITORS -** All visitors to Port Elevator - Brownsville, Inc. must check in at the office. Visitors to any vessels at the elevator berth enter the property at their own risk. All visitors to vessels in the berth must have permission from the owners, agents, captain or mate of the vessel which they are visiting.

**FILED**

CAUSE NO. C-2969-99-A    AT_____O'CLOCK_____M

MAR 22 2000

| | |
|---|---|
| IVQNNE SOTO VEGA | IN THE DISTRICT COURT OF |
| VS. | PAULINE G. GONZALEZ, CLERK<br>District Courts, Hidalgo County<br>By _____Deputy |
| PORT ELEVATOR-BROWNSVILLE,<br>L.C., SOUTHWEST GRAIN CO.,<br>INC., AGI/AKRON GROUP, INC.,<br>WALTER PUFFELIS GALVAN, III,<br>INDIVIDUALLY AND D/B/A<br>AGI/AKRON GROUP, INC.,<br>CRAIG ELKINS, INDIVIDUALLY AND<br>D/B/A PORT ELEVATOR-BROWNSVILLE,<br>L.C. AND SOUTHWEST GRAIN CO.,<br>INC. | HIDALGO COUNTY, TEXAS<br><br>92ND JUDICIAL DISTRICT |

§ § § § § § § § § § § § § §

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE STATE DISTRICT JUDGE:

NOW COMES **IVONNE SOTO VEGA**, Plaintiff in the above-styled and numbered cause and files her First Amended Petition and for cause of action would respectfully show the following:

I.

### DISCOVERY CONTROL PLAN-LEVEL 2

Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

II.

### PARTIES

Plaintiff **IVONNE SOTO VEGA** is a Mexican National who resides in Mexico.

Defendant **PORT ELEVATOR-BROWNSVILLE, L.C.** (hereinafter also refers to all employees, agents, and representatives) is a Texas limited liability company licensed to do business in the State of Texas. It may be served with process through its registered agent,

H:\P\99-3843\PLEADING\1ST AM PET                                      PAGE 1



Case 1:98-cv-00023   Document 46   Filed in TXSD on 07/03/2000   Page 40 of 54

**CRAIG ELKINS**, at 2334 Boca Chica Blvd., Ste. 200, Brownsville, Texas 78520. Defendant has been served and has made an appearance herein.

Defendant **SOUTHWEST GRAIN CO., INC.** (hereinafter also refers to all employees, agents, and representatives) is a Texas corporation licensed to do business in Texas. It may be served through its registered agent, Tommy Joe Crutcher, at Rt. 3, Box 188-F, Edinburg, Texas 78539. Defendant has been served and has made an appearance herein.

Defendant **AGI/AKRON GROUP, INC.** (hereinafter also refers to all employees, agents, and representatives) is a California corporation which engages in business in Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process, in any proceeding that arises out of the business done in Texas and to which the nonresident is a party. Defendant may be served through substituted service on the Secretary of State. Defendant's home office address is 225 Broadway, 19th Floor, San Diego, California 92101.

Defendant **WALTER PUFFELIS GALVAN, III, INDIVIDUALLY AND D/B/A AGI/AKRON GROUP, INC.** (hereinafter **WALTER PUFFELIS**) is an individual who may be served at his place of business, 8653 Ave. Costa Norte Suite, Otay Mesa, San Diego, California 92173. Defendant has been served, but has failed to appear herein.

Defendant **CRAIG ELKINS, INDIVIDUALLY AND D/B/A PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** (hereinafter **CRAIG**

**ELKINS**) is an individual who is a resident of Texas and may be served with process at his residence, 910 Rio Grande Drive, Mission, Texas 78572.  Defendant has been served and has appeared herein.

### III.

### JURISDICTION AND VENUE

The damages claimed are in excess of the minimum jurisdictional limits of this court.  Venue is proper in Hidalgo County, Texas under Section 15.002(2) of the Texas Civil Practice & Remedies Code in that **CRAIG ELKINS** is a natural person whose residence at the time the cause of action accrued was Mission, Hidalgo County.  At the time of the incidents giving rise to this suit, **MR. ELKINS** was a paid employee of **SOUTHWEST GRAIN CO., INC.** Venue is proper under Section 15.002(3) because **SOUTHWEST GRAIN CO., INC.'S** principal office in this state is located in Hidalgo County.

### IV.

### GENERAL FACTS

**IVONNE VEGA** made three purchases of yellow corn of almost 5,000 metric tons in the Fall of 1996 for the express purpose of reselling the corn to one or more buyers in Mexico and making a profit.  On or about October 21, 1996, **MS. VEGA** purchased 3,444.434 metric tons of yellow corn from **WALTER PUFFELIS, III** and **AGI/AKRON GROUP, INC.**  The purchase price was $170.00 per metric ton.  On or about November 13, 1996, **MS. VEGA** made two more purchases from

**WALTER PUFFELIS, III**, and **AGI/AKRON GROUP, INC.** One purchase was for 688.309 metric tons and the other was for 1,791.566 metric tons. The price per metric ton again was $170.00. Acting under **MS. VEGA'S** instructions, the yellow corn was transported via rail car to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** **CRAIG ELKINS** was the manager of **PORT ELEVATOR-BROWNSVILLE, L.C.** and being paid by **SOUTHWEST GRAIN CO., INC.** at the time the corn was delivered.

### V.

Mr. Gutierrez and Sysco De Baja accepted the yellow corn on behalf of **MS. VEGA** when the shipments arrived in the Fall of 1996 at **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** Mr. Gutierrez and Sysco De Baja had no authority to sell or transfer the corn or enter into any contracts concerning storage or delivery of the corn.

### VI.

Within days of the corn's arrival, Mr. Gutierrez and Sysco De Baja sold about 3,400 metric tons of **MS. VEGA'S** yellow corn without **MS. VEGA'S** permission or knowledge. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** expressly released the yellow corn to Mr. Gutierrez and Sysco De Baja knowing that the corn would be sold. At the time the corn was released, **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** knew that **MS. VEGA** had an ownership interest in the corn.

## VII.

**MS. VEGA** found a buyer for her approximately 5,000 metric tons of corn and requested in September of 1997 that **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** release her corn. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO, INC.** declined to do so. **MS. VEGA** first discovered in October 1997 that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** had released about 3,400 tons of her corn the year previously. Subsequently, **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** sold what remained of **MS. VEGA'S** yellow corn without her permission.

## VIII.

### CAUSE OF ACTION AGAINST CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C. AND SOUTHWEST GRAIN CO, INC.

a. **Conversion**

**MS. VEGA** was the sole owner of the yellow corn which was stored at **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** **MS. VEGA** had the right of possession of this property. **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** unlawfully and without authority assumed dominion and control over **MS. VEGA'S** property to the exclusion of **MS. VEGA'S** rights in this property in that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** turned over **MS. VEGA'S** property to

one or more third parties including Bersain Gutierrez Zenteno and Sysco De Baja. **MS. VEGA** would show that she had left the property in **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO.'S** possession for the purpose of storing the property until the property was to be sold. **MS. VEGA** would show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** conduct was unlawful in that they turned over **MS. VEGA'S** corn to one or more third parties including Mr. Gutierrez and Sysco De Baja without permission. **MS. VEGA** would further show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** possession was unlawful when they refused to return **MS. VEGA'S** corn when she requested that said corn be returned at a time when she had a buyer for said corn. **MS. VEGA** sues for the fair market value of the property at the times and places of the conversion. **MS. VEGA** is also entitled to interest on the sum of the value of the property converted from the dates of conversion, at the prejudgment rate of interest. **MS. VEGA** would further show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** conversion of the property, as alleged above, was fraudulent and/or malicious in that they knew the property belonged to **MS. VEGA**, but deliberately released said property to Mr. Gutierrez and Sysco De Baja and later refused upon request by **MS. VEGA** to release the property to **MS. VEGA** for sale to a third party. **MS. VEGA** would

show that **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO.** specifically intended to cause substantial injury to **MS. VEGA** and accordingly **MS. VEGA** asks that exemplary damages be awarded against **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.**

     **b.**   **Negligence**

**MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** breached the duty owed to **MS. VEGA** to store her yellow corn and not release said property without her express permission. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** breached that duty by negligently releasing **MS. VEGA'S** property to one or more third parties and by later refusing to release **MS. VEGA'S** property to her upon request, proximately causing damages. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** entered into a storage and delivery contract with Sysco De Baja and **AGI/AKRON GROUP, INC.** that delivery of the corn shall be "done only upon the written instructions of Sysco De Baja, SA DE CV and signed by Bersain Gutierrez." **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** were on notice that **MS. VEGA** had an interest in the yellow corn that was shipped to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** through the bills of lading that accompanied the corn. The bills of lading stated

that **MS. VEGA** was to be notified once the shipments were received in Brownsville, Texas. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** had a duty to notify **MS. VEGA** when the corn arrived, but failed to do so, proximately causing damages. **MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** negligently entered into a contract with Sysco De Baja and **AGI/AKRON GROUP, INC. MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** to the exclusion of **MS. VEGA** and are liable for the damages proximately caused to **MS. VEGA** by the conduct described herein.

    c.   **Breach of Contract**

In the Fall of 1996, **MS. VEGA** entered into a contract with **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** to store corn at their facility in Brownsville, Texas. As part of the agreement, **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** agreed not to release the corn without the express permission of **MS. VEGA. MR. ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** breached this contract by releasing **MS. VEGA'S** corn to one or more third parties including Bersain Gutierrez and Sysco De Baja without her permission and by later refusing to release **MS. VEGA'S** corn to her when she requested its release in September of 1997. **MS. VEGA** did not become aware that **CRAIG ELKINS, PORT ELEVATOR-BROWNSVILLE, L.C.**

and **SOUTHWEST GRAIN CO., INC.** had released her corn to one or more third parties until about October 1997.

### d.   Deceptive Trade Practices Act Claim

**MS. VEGA** brings suit against **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** pursuant to the Texas Deceptive Trade Practices Act (DTPA) [see Bus. & Com. C. § 17.41 et seq.].  On or about November 28, 1997, **MS. VEGA** gave written notice to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** advising of **MS. VEGA'S** specific complaint and the amount of damages and expenses, including attorney's fees, reasonably incurred by **MS. VEGA** in asserting these claims against Defendants.   A true and correct copy of a written notice is attached hereto as **Exhibit "A"** and incorporated by reference the same as if fully copied and set forth at length.

### IX.

**MS. VEGA** would show that **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** agreed to store corn at their elevator on **MS. VEGA'S** behalf.   Several representations were made which include, but are not limited to, the following:

1.   The corn would be safely stored at the elevator without fear of loss;

2.   The corn would be stored at the elevator and would only be released upon the owner's instructions.

In spite of the representations made, the corn was released without the consent of **MS. VEGA** to Bersain Gutierrez and/or a number of

other third-parties.

## X.

PORT ELEVATOR-BROWNSVILLE, L.C. and SOUTHWEST GRAIN CO., INC.
have violated the following provisions of Section 17.46(b) of the
Deceptive Trade Practices Act:

(1)   Passing off goods or services as those of another
      (Section 17.46(b)(1));

(2)   Causing confusion or misunderstanding as to the
      source, sponsorship, approval, or certification of
      goods or services (Section 17.46(b)(2));

(3)   Causing confusion or misunderstanding as to
      affiliation, connection, or association with, or
      certification by, another (Section 17.46(b)(3));

(4)   Representing that goods or services have
      sponsorship, approval, characteristics,
      ingredients, uses, benefits, or quantities which
      they do not have or that a person has a
      sponsorship, approval, status, affiliation, or
      connection which he does not have (Section
      17.46(b)(5));

(5)   Representing that goods or services are of a
      particular standard, quality, or grade, or that
      goods are of a particular style or model, if they
      are of another (Section 17.46(7)).

MS. VEGA relied upon these representations to her detriment.

## XI.

PORT ELEVATOR-BROWNSVILLE, L.C. and SOUTHWEST GRAIN CO.,
INC.'S conduct as described above was a producing cause of MS.
VEGA'S economic damages. The conduct of PORT ELEVATOR-BROWNSVILLE,
L.C. and SOUTHWEST GRAIN CO., INC., as described herein, was
committed intentionally and/or knowingly. The Defendants were
actually aware, at the time of the conduct, of the falsity,

deception, and unfairness of the conduct about which **MS. VEGA** complains. In particular, **MS. VEGA** suffered mental anguish on the date that **MS. VEGA** learned of **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** knowing and/or intentional misconduct which has continued through this date. Accordingly, **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** are liable to **MS. VEGA** for mental anguish damages suffered by **MS. VEGA** and additional damages of up to three times the amount of economic damages as permitted by the Deceptive Trade Practices-Consumer Protection Act.

**XII.**

**PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.'S** conduct, as described herein, and the resulting damage and loss to **MS. VEGA** has necessitated **MS. VEGA'S** retention of the attorneys whose names are subscribed to this lawsuit. **MS. VEGA** is entitled to a recovery from **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** of an additional sum to compensate **MS. VEGA** for a reasonable fee for such attorney's necessary services in the preparation and a prosecution of this action, as well as a reasonable fee for any and all necessary appeals to other courts.

**XIII.**

<u>**CAUSE OF ACTION AGAINST WALTER PUFFELIS GALVAN, III AND AGI/AKRON GROUP, INC.**</u>

a. **Negligence**

**WALTER PUFFELIS, III** and **AGI/AKRON GROUP, INC.** owed a duty to

**MS. VEGA** to protect her interest in the yellow corn delivered to **PORT ELEVATOR-BROWNSVILLE, L.C.** and **SOUTHWEST GRAIN CO., INC.** when they knew it was her corn.   They violated this duty by entering into a contract with **PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC.**, Bersain Gutierrez and Sysco De Baja and excluding **MS. VEGA** at a time when **MS. VEGA** owned the corn.   The storage and delivery contract entered into stated in part that the corn would only be released "upon the written instructions of Sysco De Baja, SA DE CV and signed by Bersain Gutierrez" to the exclusion of **MS. VEGA**.   **WALTER PUFFELIS, III** and **AGI/AKRON GROUP, INC.'S** failure to protect **MS. VEGA'S** interests in the corn, proximately caused damages for which she sues.

    **b.   Fraud**

**WALTER PUFFELIS, III** and **AGI/AKRON GROUP, INC.** represented to **MS. VEGA** that her corn would be safe and secure at the facility in Brownsville, Texas, but entered into a contract wherein Mr. Gutierrez and Sysco De Baja were granted permission to remove the corn at will from the facility.   **MS. VEGA** relied upon **MR. PUFFELIS** and **AGI/AKRON GROUP, INC.'S** representations as to the safety and security of her corn to her detriment.

**XIV.**

**<u>UNLAWFUL CONSPIRACY</u>**

**MS. VEGA** would further show that there was an unlawful conspiracy between and/or among **CRAIG ELKINS, PORT ELEVATOR-**

**BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC., MR. PUFFELIS** and

**AGI/AKRON GROUP, INC.** to defraud **MS. VEGA** of her property,

resulting in injury for which she sues.

**WHEREFORE**, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial Plaintiff have:

1.  Judgment against Defendants for a sum within the jurisdictional limits of the court including a trebling of damages under the DTPA;

2.  Prejudgment interest as provided by law;

3.  Postjudgment interest as provided by law;

4.  An award of exemplary damages against Defendants in a sum determined by the trier of fact;

5.  Attorney's fees;

6.  Costs of suit;

7.  Such other and further relief which Plaintiff may justly be entitled.

Respectfully submitted,

DALE & KLEIN, L.L.P.
6301 N. 10th Street
McAllen, Texas 78504
Tel. No. (956) 687-8700
Fax. No. (956) 687-2416

ROY S. DALE
State Bar No. 05326700
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document has been forwarded to counsel of record, to wit:

John Skaggs
SKAGGS & GARZA, L.L.P.
710 Laurel
P.O. Drawer 2285
McAllen, Texas 78502-2285

**VIA CERTIFIED MAIL/RRR** on this the 22nd day of March, 2000.

ROY S. DALE

# *Guillermo Vega, Jr.*
## *Attorney at Law*

*546-5573*

*Suite 105*
*302 Kings Highway*
*Brownsville, Texas 78521*

November 28, 1997

CRAIG ELKINS
GENERAL MANAGER OF
PORT ELEVATOR - BROWNSVILLE, L.C.
9155 R.L. OSTOS RD.
PORT OF BROWNSVILLE
BROWNSVILLE, TEXAS 78521
956-831-8245-TELEPHONE
956-831-3181-TELEFAX

RE:   IVONNE SOTO VEGA

Dear Mr. Elkins,

I have been retained to represent Ivonne Soto Vega with respect to a claim that she has against you. Please direct all communication concerning this matter to me.

As you know, on September 24, 1996, our client purchased 5,000 metric tons of corn and you agreed through her representative, Bersain Gutierrez, to store the corn at your grain elevator at the Port of Brownsville.   At the time our client agreed to store the corn at your grain elevator you made several representations, among which are the following:

1.     That the corn would be safely stored at the grain elevator without fear of loss
2.     That you would agree to store the corn at the grain elevator and would release the corn to the owner as per owner's instructions.

In spite of the representations made, the corn was released without the consent of the owner of the corn to Bersain Gutierrez and other unknown third parties.   When our client went to get the 5,000 metric tons of corn to sell to a potential buyer you had released approximately 3,300 metric tons of corn without the consent of our client to Bersain Gutierrez and other unknown third parties and you  refused to release the remaining corn at the grain elevator to Ivonne Soto Vega.

It is our contention that your conduct constitutes false, misleading and deceptive acts and practices in violation of §17.46 (b)(1), (2), (3), and (8) of the Deceptive Trade Practices--Consumer Protection Act.

The damages which our client has suffered as a result of you releasing the corn without the consent of our client include, but are not limited to, the amount it cost our client to buy the corn, or alternatively, the difference between our client paid for the product and its actual value the potential buyer would have paid for it.  You are also liable for the value and the cost associated with purchasing the corn which our client lost when the corn was wrongfully released by you to Bersain Gutierrez and other third parties unknown to the owner and



PLAINTIFF'S EXHIBIT "A"

the mental anguish that our client suffered as a result of losing her corn.

In addition, our client was unable to sell the corn since you refused to release the corn to our client to sell to the potential buyer that the owner has obtained. Our client's inability to sell the corn has caused consequential damages to our client.

Based upon the information now available to us, and for purposes of this notice letter, we estimate that our client's actual damages and expenses are $875,000.00. Of course, we reserve the right to adjust this amount to conform to the information and evidence that will be available to us at the time of trial should litigation be necessary.

Our client has incurred reasonable attorney's fees in the pursuit of the claim stated in this letter. The amount of fees incurred as of the date of this letter is $15,000.00. Of course, I am sure you understand that if this matter is not settled quickly, the amount of time spent on this claim and the amount of attorneys' fees will increase dramatically.

Under the contract of employment we have with our client, I have been assigned an interest in this claim against you.

The purpose of this letter is to encourage you to resolve our client's claim in a fair and equitable manner without the need for further legal action. In the event you fail to respond to this letter with an offer of settlement that is acceptable to our client, I will have no alternative but to recommend our client that a lawsuit be filed against you. The lawsuit, will, among other authorities, be filed under the Texas Deceptive Trade Practices and Consumer Protection Act. In this lawsuit, rather than seeking only the amount of money we are asking of you at this time, we will seek to recover the full measure of our client's damages, expenses and attorney's fees as allowed by law.

In the event that you have insurance or a bond which you believe may cover all or any part of the claims made in this letter, you are requested to notify your insurance carrier or bonding company of this claim immediately.

If you are interested in resolving this matter without the necessity of litigation, please contact me within sixty days of your receipt of this letter, pursuant to Section 17.505 of the Deceptive Trade Practices—Consumer Protection Act.

A copy of this letter is being sent to Port of Brownsville and Bersain Gutierrez, who, in our opinion, is subject to the same claims and defenses our client has against you.

Sincerely,

Guillermo Vega, Jr.

GV/cs
Certified Mail: P 182 733 438