Case 1:98-cv-00023   Document 69   Filed in TXSD on 05/22/2001   Page 1 of 13

69

United States District Court
Southern District of Texas
FILED

MAY 2 2 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR-<br>BROWNSVILLE, L.C. | § | |
| | § | |
| | § | |
| VS. | § | CIVIL NO. B-98-23 |
| | § | |
| IVONNE SOTO VEGA, BERSAIN | § | JURY DEMANDED |
| GUTIERREZ, AND SYSCO DE BAJA | § | |
| S.A. DE C.V. | § | |

## MOTION TO DISMISS PARTY (CRAIG ELKINS)
## INCLUDING BRIEFING

1.   This Motion is filed by Craig Elkins.

2.   This Motion is filed pursuant to Rule 12(b), F.R.C.P.

3.   <u>Factual basis for this Motion</u>:  On or about February 16, 2001, Defendants filed a complaint adding Craig Elkins as a party Defendant.

The complaint referenced above was ultimately "served" on Craig Elkins.  Defendants' efforts to make Craig Elkins a party to this action are defective in the following respects:

    A.   Such complaint served on Craig Elkins was stricken by the Court on February 22, 2001.

    B.   No leave of Court was granted to Defendants prior to filing such complaint or requesting such service pursuant to Rule 6(b) and Rule 14, F.R.C.P.

4.   Defendants failed to state a claim against Craig Elkins under which relief can be granted.  In support thereof, Craig Elkins would show:

    A.   All causes of action asserted against the said Craig Elkins are barred by the applicable statute of

CMPDF - www.fasio.com

limitations.  All actions complained about in Plaintiff's pleadings occurred more than four years ago.  The statue of limitations in contract is four years pursuant to Section 16.003, Texas Civil Practice and Remedies Code; the statute of limitations in tort is two years pursuant to Section 16.004, Texas Civil Practice and Remedies Code; the residual statute of limitations is four years pursuant to Section 16.051, Texas Civil Practice and Remedies Code; the statute of limitations pursuant to the Texas Deceptive Trade Practices Act is two years pursuant to Section 17.565, Texas Business & Commerce Code.

B.   All contracts asserted by Defendants were contracts with "Port Elevator-Brownsville, L.C.", not with Craig Elkins. It is undisputed, and Defendants assert no factual basis to maintain that Craig Elkins (an individual) and "<u>Port Elevator-Brownsville, L.C.</u>" (a Texas limited liability corporation) are the same entity.  Defendants have plead no contracts or agreements which exist with  Third-Party Defendant Elkins;  and Defendants assert no legally recognized exception which would provide a factual basis for individual liability on the part of Craig Elkins (alter ego, etc.).

C.   This Third-Party Defendant, Craig Elkins, would show unto the Court that Defendants have failed to invoke the jurisdiction of the Court by failing to file and serve an appropriate complaint pursuant to Rule 7, F.R.C.P. Therefore, under the current status of the pleadings, the

Court lacks both personal jurisdiction and subject matter jurisdiction over the claims referenced herein. When the complaint was stricken by the Court, no civil action was therefore commenced against Craig Elkins pursuant to Rule 3, F.R.C.P.

5. Craig Elkins further asserts the defenses of insufficiency of process and insufficiency of service of process. Predicates for summons and service of process in the federal courts are contained in Rule 4, F.R.C.P. All are predicated upon the filing of a complaint. No filed complaint exists against Craig Elkins due to it having been stricken as referenced above.

6. To the extent certain alternative defenses are reliant on the Court's examination of the operative written contract or agreement, such written instrument has previously been filed among the papers of the Clerk's file in this matter, and is properly authenticated and contained in the record. A courtesy copy of such operative contractual document (the contract between Port Elevator-Brownsville, L.C. and other parties) is attached to this pleading and incorporated at this point by reference.

7. Request is hereby made that all causes of action as asserted against Third-Party Defendant Craig Elkins be dismissed by the Court.

Respectfully Submitted,

John Skaggs
P.O. Drawer 2285
710 Laurel
McAllen, Texas 78502-2285
Phone (956) 687-8216
Fax (956) 630-6570

JOHN SKAGGS
State Bar No. 18452500
Federal I.D. No. 1225
Attorney in Charge for
Craig Elkins

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on opposing counsel on this the 22 day of May , 2001:

Mr. Roy Dale
DALE & KLEIN
6301 N. 10th St.
McAllen, Texas 78504

John Skaggs

Case 1:98-cv-00023   Document 69   Filed in TXSD on 05/22/2001   Page 5 of 13

# Port Elevator - Brownsville, L.C.

## RATE & SERVICE CONTRACT

The term "grain" as used in this contract shall mean Corn. All rates in this contract will be quoted in U.S. dollars per bushel. Payment for Receiving is due upon completion of each unloading. Payment for Delivery is due weekly. All payments are to be in U.S. currency.

The minimum quantity of grain to be handled under this contract is ONE MILLION Bushels (1,000,000 bushels). If the minimum quantity handled requirement is not met, the Receiving and Delivering Charges increase by one hundred percent (100%).

### RECEIVING AND DELIVERING

Receiving From Railcars . . . . . . . . . $ 0.02    per bushel.

Delivering to Trucks:
   U.S. Trucks . . . . . . . . . . . . . $ 0.02    per bushel.
   Mexican Trucks . . . . . . . . . . . $ 0.02    per bushel.

Delivering of grain will be done only upon the written instructions of SYSCO de BAJA, SA de CV and signed by Bersain Gutierrez. Fax instructions are acceptable with originals to follow by overnight courier.

RECEIVING INCLUDES INSURANCE AND 15 DAYS STORAGE.

STORAGE:  ALL grain is to be stored Identity Preserved (I.P.)

Each calendar day or fraction thereof after first fifteen days.

All grains except Flax . . . . . . $ 0.001   per bushel.

TREATING AND CONDITIONING
   Treating for weevils in cars,
     trucks or elevator . . . . . . . . . $ 0.045  per bushel.
   Mixing or Turning––
   All loss in weight borne by owner  . $ 0.015   per bushel.
   Cooling or Blowing  . . . . . . . . $ 0.005   per bushel.
   Malathion Treatment . . . . . . . . . $ 0.015  per bushel.

NOTE:  THIS IS A SPECIAL CONTRACT AT RATES OTHER THAN STATED IN OUR PUBLISHED TARIFF.  SUCH RATES UNDER THE SAME TERMS WILL BE MADE AVAILABLE TO ALL DEPOSITORS.  THIS CONTRACT EXPIRES DECEMBER 31st 1996 AT 24:00 HOURS.

_____          _____
SYSCO DE BAJA, S.A. DE C.V.                 AKRON GROUP INC (AGI)


PORT ELEVATOR-BROWNSVILLE, L.C.

P.O. BOX 4448, BROWNSVILLE, TEXAS 78523-4448  (210) 831-8245  FAX (210) 831-8101

# RATES

The term "grain" as used in this tariff shall be understood to mean Wheat, Corn, Oats, rye, Barley, Grain Sorghum, Flaxseed and Soybeans. Rates to cover handling, storing and/or treating other commodities such as Meals, Beans, Seed, Rice, etc will be quoted by the elevator management upon request. All rates in this tariff will be quoted in U.S. cents per bushel unless otherwise stated.

## RECEIVING AND DELIVERING

Receiving From Railcars . . . . . . . . . . $.04___ per bushel.

Receiving From Trucks:
  U.S. Trucks . . . . . . . . . . . . . . . $.04___ per bushel.
  Mexican Trucks . . . . . . . . . . . . . $.07___ per bushel.

Receiving From Vessels/Barges: . . . . . . $.04___ per bushel.

Delivering to Vessels: . . . . . . . . . . $.04___ per bushel.

Delivering to Barges: . . . . . . . . . . . $.04___ per bushel.

Delivering to Railcars: . . . . . . . . . . $.04___ per bushel.

Delivering to Trucks:
  U.S. Trucks . . . . . . . . . . . . . . . $.04___ per bushel.
  Mexican Trucks . . . . . . . . . . . . . $.10___ per bushel.

RECEIVING INCLUDES INSURANCE AND 10 DAYS STORAGE.

COOPERING CARS:
  The elevator will not furnish grain doors or Cooper cars.

STORAGE:
  Each calendar day or fraction thereof after first ten days.

  All grains except Flax . . . . . . . . . $1/10___ per bushel.
  Flax(all loss in weight or elevator) . . $1/2___ per bushel

TREATING AND CONDITIONING
  Treating for weevils in cars,
  trucks or elevator . . . . . . . . . . $.045_ per bushel.
  Mixing or Turning--
    All loss in weight borne by owner . . . $.03___ per bushel.

  Cooling or Blowing . . . . . . . . . . . $.01___ per bushel.
  Malathion Treatment . . . . . . . . . . . $.015_ per bushel.

NOTE: WE RESERVE THE RIGHT TO ENTER INTO SPECIAL CONTRACTS AT RATES OTHER THAN STATED IN THIS TARIFF FOR DEFINITE QUANTITIES OF GRAIN AND FOR DEFINITE STORAGE PERIODS IF APPLICABLE. SUCH RATES UNDER THE SAME TERMS WILL BE MADE AVAILABLE TO ALL DEPOSITORS.

# RECEIPT OF GRAIN

Grain will be received, stored and handled in the elevator subject to the following rules, regulations and charges. All rates and charges shown in the Rate Schedule of this tariff covers work performed on straight time basis.

## RULES AND REGULATIONS

**ITEM 1 - INSPECTION -** All grain shall be inspected and graded in accordance with standards established under the United States Grain Standards Act before received into and discharged from the elevator. Fees for inspection and grading to be set by the Corpus Christ Grain Exchange on inbound grain. All outbound grain to be graded by Federal Grain Inspection Service. All inspections and grading expense to be borne by the owner.

**ITEM 2 - UNLOADING GRAIN INTO THE ELEVATOR -** The Elevator management reserves the right to refuse any grain which in its opinion is unmerchantable or is unfit condition for storage, transfer or handling. The primary purpose of the Elevator is for the transfer of grain from railcars, trucks, barges and vessels to transportation modes which will move grain through the elevator for export and will be used for storage of grain only to the extent not required for such primary purpose; therefore, the management reserves the right to preferentially unload those cars, trucks, barges or vessels for which outward shipping space has been engaged and is available.

**ITEM 3 - STORING REGARDLESS OF OWNERSHIP -** Grains will be placed in bins containing the same kind and grade regardless of ownership. Preserving identity or special binning will be done only by special arrangements.

**ITEM 4 - GRAIN AT OWNER RISK -** All grain placed in the elevator is at owners risk of depreciation in grade from heating, insects or any other cause including natural increase in dockage content resulting from repeated handling under normal grain elevator operational practices and methods.

**ITEM 5 - CONDITIONING GRAIN -** The Elevator management reserves the right after due diligence to treat, dry or otherwise recondition any grain on the elevator which in its judgment is in need of such handling without prior knowledge or consent of the owner. Necessity of such handling to be concurred in by a Corpus Christi Grain Exchange inspector. Owner of the grain so handled will be liable for payment of all charges resulting therefrom as well as weight shrinkage of the grain.

**ITEM 6 - REMOVAL OF GRAIN -** If any grain in the elevator should become out of condition, the Elevator reserves the right to order same out on three (3) days notice and if not removed from the elevator before expiration of that time, the elevator management shall have the right to remove and dispose of such grain at the expense of and for the account of the owner.

**ITEM 7 - INSURANCE -** Insurance on all grain stored under the above Schedule of Charges will be carried by the elevator operator against loss or damage by Fire and Extended Coverage perils(windstorm, lightning, hail, explosion, riot, riot-attending a strike, civil commotion, smoke, vehicles and aircraft) for its market value, to the extent that such insurance is procurable. The cost of such insurance is included in the charges for receiving and shipping grain. Loss by any other insurable cause shall be at the owner's risk.

**ITEM 8 - CONGESTION -** In the event of congestion of cars, barges, vessels or trucks, the elevator operator reserves the right, without liability for loss, damage or demurrage, to unload those cars, barges, vessels, or trucks for which outward transportation has been engaged and is available.

**ITEM 9 - TRIMMERS -** Mechanical grain trimmers are available at the elevator dock for use on all cargoes loaded. Rental in the amount of _10_ cents per gross ton plus $25.00 per hour to cover cost of maintenance man will be charged for their use.

**ITEM 10 - PERFORMANCE -** The Elevator will undertake to furnish all service specified in the tariff with reasonable promptness but it is not obligated to furnish services, or is it liable for failure to do so in event of Government intervention, labor troubles, war conditions or other causes beyond its control.

**ITEM 11 - DOCKAGE AND WHARFAGE -** Dockage is charged according to Brownsville Navigation District Tariff. Wharfage is _20_ cents per metric ton loaded or unloaded. Where more than one gross tonnage is applicable to a vessel, the highest will apply.

**ITEM 12 - VESSELS REQUIRED TO WORK OVERTIME -** In order to secure the fullest possible use of the elevator's grain handling facilities, whenever there are ships waiting to load or unload, or there is, in the elevator manager's judgment, necessity of overtime work to avoid congestion, vessels will work unlimited overtime at their own expense if requested to do so by the by elevator management. Any vessel refusing to do so shall vacate the berth on order of the elevator management. Should any vessel fail to vacate the berth when ordered to do so under these circumstances or under the circumstances set forth in Item 13, a dockage charge of $800.00 per hour for each hour or fraction thereof, will be assessed against the vessel and/or its owners, and agents, after notice to vacate has been given the vessel and/or its owners, agents, master or mate.

This charge shall not affect the right of the elevator to effect removal of the vessel from the berth by any lawful means, at vessel's risk and expense. A vessel losing its right to berth by refusal to work overtime shall lose its turn in favor of the next vessel that is willing to work overtime, which vessel shall retain the berth so long as it is willing to work sucessive straight times and overtime periods until loading or unloading is completed. The vessel so losing its turn shall be entitled to berth first available thereafter, subject to the same overtime provisions set forth above if the circumstances requiring overtime work are then found to exist by the elevator management. When vessel is not required to work overtime but desires to at owner's expense, such desires must be made known to elevator manager by 3:30 P.M. of the day the overtime is to be worked. The elevator reserves the right to refuse to operate the elevator during overtime hours.

ITEM 13 - BERTHING OF SHIPS - Except as otherwise provided in this Tariff, vessels awaiting berth at the elevator will load or discharge in the order in which they file with the elevator office. A filing shall be deemed accomplished with the presentation of:
- (1)   Certificate of Readiness in all compartments in which grain is to be loaded, issued by the National Cargo Bureau Representative.
- (2) Federal Grain Inspection Service satisfactory condition report.

Liner vessels, will be given preference in the assignment of berths over other vessels except when, in the judgment of the elevator management such preference would not be in the best interest of the satisfactory operation of the elevator or when, in the judgement of the elevator management, it would impose an undue hardship on other vessels waiting to load or unload.

The term liners as used herein, shall mean vessels of lines having regularly advertised scheduled sailing from the Port of Brownsville, Texas, and the quantity of grain for loading is not in excess of 2/3 of the vessel's deadweight tonnage for cargo.

The Elevator management reserves the right to change the turn of vessels when confronted with congestion, the urgent need to load or unload a particular grade of grain or to otherwise facilitate elevator operations.

Any vessel ordered to vacate the berth for such reasons will return to berth after the vessel loading/ or unloading immediately thereafter, if any completes loading/ or unloading or vacates the berth for other reasons, provided the aforesaid circumstance requiring the vessel to vacate the berth is found by elevator management to no longer exist.

The elevator management of Port Elevator-Brownsville, Inc. reserves the right to refuse the berth at our facility to any vessel without at least ten (10) days prior advice in writing from the suppliers of the cargo of their intention to load or unload the vessel at Port Elevator-Brownsville, Inc.

**ITEM 14 - APPLICATION FOR BERTH** - All vessels, their owners or agents, desiring berth at this facility shall file with the elevator office an application for berth on forms provided by the elevator. This application should be filed as far in advance as possible but in no case should such filing be later than 5:00 P.M. on the business day preceding the day the vessel desires to berth. The filing of this application shall have no bearing on the time that the vessel will be placed on turn for the berth as this will be governed by Item 13 of this Tariff.

**ITEM 15 - GENERAL REGULATIONS ON VESSELS:**

(1) The elevator operator shall not be liable for demurrage, damages, damages for delay or loss of dispatch time incurred by any vessel or charterer thereof for any causes other than willful or grossly negligent acts of the elevator operator.

(2) The elevator operator shall not be responsible for marine loss or damage to grain or barges, ships or their waterborne vessels to the elevator dock.

(3) In all other matters, the elevator shall not be responsible for delay caused by any cause beyond its control, however or wherever arising.

(4) Any vessel in berth shall at all times maintain appropriate officers and crew aboard to permit reception of cargo at any time of day or night, including Saturdays, Sundays and holidays.

(5) If in the opinion of the elevator operator the weather conditions so warrant, any vessel in berth may be ordered at any time of day or night to vacate said berth and anchor in the approved anchorage area until such time as weather conditions permit the vessel to return to berth. Appropriate officers and crew shall be maintained aboard the vessel for this purpose.

**ITEM 16 - RESPONSIBILITY FOR PAYMENT OF CHARGES** - All invoices for charges are due upon presentation of invoice and payable in Brownsville, Texas. Unless otherwise provided by special arrangement with the elevator management, the responsibility for payment of invoices for provisions or services rendered by this facility shall, in the first instance, be that of the local agent in Brownsville, Texas who orders or authorizes such provisions or services as well as of the vessel and vessel owner.

When necessity calls for enforcement of Item 12 of this Tariff, the charges incurred thereby shall have the effect of being authorized by the local agent of the vessel and/or charterer and responsibility for payment of such charges shall be that of the local agent.

The elevator reserves the right to refuse berth and load or unload ships of any local agent having unpaid accounts sixty days or older until such account is paid in full.

**ITEM 17 - OVERTIME:**

A)   Overtime per hour is $175.00_ per hour except as provided in B and C Below.

B)   Overtime Hours:
Overtime will be assessed for work before 8:00 A.M. and after 5:00 P.M. during weekdays. All work on Saturdays and Sundays will be overtime hours. Sundays and Holidays will assessed at the rate of $235.00 per hour.

C)   If elevator labor is called out for work, the following minimum hourly periods will assessed at overtime rate. 7:00 A.M. Call Out - 1 hour minimum; except Saturdays, Sundays or Holidays at which time, 4 hours overtime will be the minimum. 7:00 P.M. Call Out - 2 hours minimum. Overtime rate at $235.00 per hour will be assessed for time required to work during meal hours.

**ITEM 18 - HOLIDAYS -** The following days shall be recognized as Holidays by this facility and all work on these designated days will be performed at the discretion of the elevator management and at overtime rates as provided in Item No. 17 of this Tariff.

| | | |
|---|---|---|
| New Year's Day | Good Friday | Labor Day |
| Memorial Day | Thanksgiving Day | Christmas Day |
| Fourth of July | | |

In addition to the days specifically listed above, we shall also recognize as Holidays, with work performed under the conditions of this time, all days subsequently designated as Holidays or overtime days by the United States Government, the State of Texas, the City of Brownsville or other entity having lawful jurisdiction.

Should any Holiday fall on Saturday, the preceding Friday will be observed as a Holiday. Should any Holiday fall on Sunday, the following Monday will be observed as a Holiday.

No work will be scheduled or performed on Labor Day or Christmas Day except in cases of emergency such as fire, or where the property of the Company and/or its customers are in danger or serious injury.

**ITEM 19 -    RENTAL AND USE OF ELEVATOR EQUIPMENT, FACILITIES, PROPERTY AND PERSONNEL:**

A)   General - All vessels, their owners, agents and stevedores or others, hereinafter call "user", renting or using the elevator equipment, shall be upon and subject to the following conditions andcharges, the renting or use of which shall constitute an agreement with Port Elevator-Brownsville, Inc. to pay such charges and be bound by such conditions.

B)   Condition and Responsibility

1) Equipment of the elevator is presumed to be in good condition when turned over to user, but Port Elevator - Brownsville, Inc does not warrant the mechanical condition thereof.

2) By receiving possession thereof, user of elevator equipment agrees that upon termination of the period of use, it will be returned in condition as when received, ordinary wear and tear alone accepted.

3) User assumes sole responsibility and liability for injury to or death of, any person whomsoever, or damage to or destruction of property of any person incident to or arising out of or connected with user's possession, use or operation of elevator equipment, or failure of such equipment to operate; and user shall protect, indemnify, and save harmless the Port Elevator - Brownsville, Inc. against any and all liability for or in respect of the same.

C)   The use and maintenance of equipment (except mechanical trimmers, but including any and all miscellaneous spouting equipment) a charge per Metric Ton (2,204.6 pounds) loaded will be quoted upon request.

**ITEM 20 - VESSELS IN ELEVATOR BERTH SHALL AT ALL TIME MAINTAIN TAUT LINES TO AVOID DAMAGE AND INJURY TO ELEVATOR       PROPERTY AND PERSONNEL.**

**ITEM 21 - RIGHT TO CONTRACT WITH THE GOVERNMENT** - Port Elevator - Brownsville, Inc may enter into contracts with  the government of the United States of America  or the government of Mexico or any agency thereof, providing for storage and services rates other than storage and services rates provided herein, applicable only to grain or grain by-product, or a commodity defined in any such contract as grain or grain by-product, in which the United States of America or the government of Mexico, or the agency thereof contracting with the undersigned warehouseman as aforesaid, has an interest.

**ITEM 22 - WATER AND ELECTRICITY** - Water and electricity provided by the elevator will be set by the management of the elevator based on current utility rates.

**ITEM 23 - INSURANCE** - All contractors, stevedores or individuals performing work on the elevator property will at all times maintain adequate insurance coverage as required by Local, State and Federal Regulations. Under no circumstances does Port Elevator-Brownsville, Inc. assume or accept any responsibility for these contractors, stevedores or individuals or any employees thereof.

**ITEM 24 - SMOKING OR OPEN FLAME -** The Port Elevator-Brownsville,Inc is designated as a non-smoking area. However, certain designated smoking areas are provided. No open flames are permitted. Hot work permits may be issued on a case-by-case basis.

**ITEM 25 - VISITORS -** All visitors to Port Elevator - Brownsville, Inc. must check in at the office. Visitors to any vessels at the elevator berth enter the property at their own risk. All visitors to vessels in the berth must have permission from the owners, agents, captain or mate of the vessel which they are visiting.

