98

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 2 9 2002

Michael N. Milby
Clerk of Court

PORT ELEVATOR-          §
BROWNSVILLE, L.C.       §
                        §
VS.                     §          CIVIL NO. B-98-23
                        §
IVONNE SOTO VEGA, BERSAIN §
GUTIERREZ, AND SYSCO DE BAJA §
S.A. DE C.V.            §

PLAINTIFFS' RESPONSE TO VEGA'S
MOTION FOR SUMMARY JUDGMENT

1.    This Response is filed by Port-Elevator Brownsville, L.C.,
Craig Elkins, and Southwest Grain Co., Inc.

2.    Procedural status of the case.

      The parties announced a probable settlement in January 2002.
The Court imposed a deadline for completion of settlement paperwork
by March 1, 2002.

      Based on conversations with opposing counsel, and based on the
fact that opposing counsel has filed a Motion for Summary Judgment,
Plaintiffs presume that the settlement proposed by Vega has failed
to materialize.

      As a consequence, the parties were previously ordered to file
dispositive motions by March 11, 2002.

      Plaintiff (joined by other parties) filed their Motion on the
deadline date.  Defendant Vega has also filed a Motion.

      This pleading is filed in response to the Motion filed by
Vega.

1

**Issues presented:**

A.    Ownership of the approximately 5,000 metric tons of corn received at Port Elevator on October 31, 1996, November 13, 1996 and November 27, 1996;

B.    Ownership and entitlement to proceeds of the Port Elevator auction on corn claimed by Ms. Vega that includes the funds interpleaded by Port Elevator; and

C.    Entitlement to attorney's fees by Port Elevator on its Rule 22 interpleader action.

RESPONSE

3.    <u>No evidence in support of Vega's liability assertions.</u>

The text of Rule 56 FRCP is attached to this response.

None of the Vega's documentary evidence is authenticated in any respect.

The deposition testimony given by witness Elkins and witness Gonzalez does not support Vega's liability allegations.  In fact, the deposition given by witness Gonzalez was attached to Port Elevator's own Motion.  Witness Elkins' testimony is the same in all material respects as the affidavit which was relied on for Port Elevator's own Motion for Summary Judgment.

Witness Villarreal presents no liability testimony in support of Vega's pleadings.  He was a purported "damages" witness.

The undersigned counsel has searched through the referenced testimony, and can find no testimony which even remotely supports Vega's liability allegations.  If such evidence exists, it is not pointed out by Vega's counsel, and there are no references to the

2

locations of such evidence in the attachments to Vega's Motion.

To the extent necessary, these parties formally object to Vega's counsel assertions (the "factual" assertions contained in the Motion) all of which refers to unauthenticated documentary "evidence" [not sworn or certified pursuant to Rule 56(e) FRCP], or which are inappropriately predicated affidavit testimony (Vega's affidavit, see below).

4.    <u>No evidence from Defendant Ivonne Soto Vega.</u>

Ivonne Soto Vega presents no liability evidence in connection with her allegations contained in her complaint.

There are no new affidavits attached to Vega's Motion.

Vega's counsel attaches a fax xerox copy of an old "affidavit" executed some time in 1997.  Such affidavit is totally insufficient pursuant to the Federal Motion for Summary Judgment Rule, which states in part "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein", Rule 56(e) FRCP.

Even if such affidavit was sufficient to support Vega's allegations, such is in conflict with the clear testimony contained in the affidavit of Mr. Elkins (attached to Port Elevator's Motion), and also Mr. Elkins' deposition testimony attached to Vega's Motion.  Vega is not entitled to a judgment, as a matter of law because of "genuine issues of material fact" raised by the competing evidence.  Rule 56(c) FRCP.

3

No authenticated documentary evidence supports the conclusory allegations contained in the "old" Vega affidavit. In fact, it was the receipt of this affidavit which gave rise to the original controversy between Gutierrez and Vega, which compelled Port Elevator to interplead the funds.

5.    <u>No evidence from Vega in support of her allegations of "negligence, fraud, conversion or DTPA" issues.</u>

As anticipated, and predicted in the Motion filed by Port Elevator, et. al, Vega is unable to support her own liability allegations.

Vega has not endeavored to invoke any of available Federal Remedies for preservation of testimony pursuant to the Rules governing the Court's consideration of Motions for Summary Judgment.

6.    <u>By establishing her ownership of the corn, Vega would establish her own liability for the value of services rendered in connection with the storage and handling of the corn.</u>

Vega has not denied her liability for the storage or handling of her "own" corn which was tendered to the Port Elevator facility.

Frankly, due to circumstances attendant to Bersain Gutierrez' recent disappearance, and Ivonne Vega's recent incarceration, Port Elevator sees no realistic hope of executing judgment against either Gutierrez or Vega for the contractual (or quantum meruit) charges associated with the handling and storage of the corn.

Without any liability proof against Port Elevator or the other parties, Vega has no offsetting claim.

4

The Elevator's tariff charges and attorneys' fees greatly exceed the amount which is in the custody of the Court, which is claimed by Vega.    Such charges are properly established and authenticated in Port Elevator's Motion for Summary Judgment.

The issue of entitlement to attorneys' fees is addressed briefly below.

7.    <u>Vega's briefing supports Port Elevator's Motion for Summary Judgment.</u>

Without reviewing the actual text of the authorities cited by Vega's counsel, the undersigned counsel for Port Elevator observes that all of the cited authorities support the summary judgment issues contained in the Motion for Summary Judgment filed by Port Elevator, et al.

Specifically, Port Elevator is under no obligation to disapprove the allegations made by Vega.

Port Elevator must only prove allegations which are contrary to Vega's position as contained in her pleadings.    The summary judgment rule itself precludes the use of "mere allegations or denials" contained in the pleadings in support of a motion for summary judgment by Vega.    [Rule 56(c)(e) FRCP]  Vega must support her own Motion for Summary Judgment (or refute Port's Motion for Summary Judgment) with the specified, accepted testimony and documentation [(see Rule 56(e) FRCP)].

Vega has not done this.

8.    <u>Port Elevator had no purported "knowledge" of Vega's claimed ownership.</u>

5

Vega admits that Bersain Gutierrez was her agent in connection with the delivery of the corn to Brownsville. (See Port's prior Motion for Summary Judgment.) (Curiously, her counsel now implies, for the first time in Vega's present Motion for Summary Judgment, at Page 2, Line 2, that Bersain Gutierrez was <u>AGI's</u> agent. This only illustrates Port Elevator's frustration that Vega "can't seem to keep her story straight". It also illustrates the wisdom of ignoring "mere allegations" in favor of "proof" in the context of a Motion for Summary Judgment as mandated by Rule 56.)

Any purported "knowledge" by Port Elevator's employees is discussed in exhaustive detail in Elkins' affidavit (attached to Port Elevator's own Motion for Summary Judgment); as well as Maria Gutierrez' deposition and Craig Elkins' deposition testimony.

Reference should be made to the Elkins' affidavit for a concise summary of the established testimony as contained in the depositions. In summary, Port Elevator had no such knowledge.

Port also refers generally to agency allegations and principles referenced in Port Elevator's Motion for Summary Judgment (in summary, if Vega is the owner of the corn, and Gutierrez is her agent, the relative liabilities under the written agreement would still be binding on Vega as the principal in the transaction; see the general discussion of agency principles and general briefing contained in Port Elevator's Motion for Summary Judgment).

For such reason, even if Vega is someday successful in establishing her ownership of the corn, she will still owe Port

6

Elevator for contractual storage and handling charges and attorneys' fees.

9.  <u>Vega's liability for attorneys' fees.</u>

Vega makes the general allegation that some theory of "delay" should preclude Port Elevator, et al's claim for recovery of attorneys' fees.  Such assertion is not briefed in any respect by Vega in her Motion.

References to abundant legal authorities in support of Port Elevator, et al's claim for attorneys' fees <u>and costs</u> is contained in Port Elevator's Motion for Summary Judgment.  Port Elevator will not endeavor to repeat the briefing in this response.

10.  <u>Future testimony or evidence from Vega.</u>

In the event testimony in support of Vega's assertions materializes prior to any ruling by this Court, it is the express intention of these parties to brief any issues purportedly raised by any such future-asserted facts.

11.  <u>Summary:</u>

A.  Vega has not, by anything approaching competent evidence, established her ownership of the corn.

B.  Vega has not established a superior right to any claim for the funds on deposit in the Court.  Those funds should be used to reimburse Port Elevator in connection with Vega's storage and handling charges, and also for attorneys' fees to respond to Vega's frivolous suit.

C.  Port Elevator, et al's entitlement to an award of attorneys' fees and costs has been established, both

7

factually and legally.  No factual or legal authorities are offered by Vega to dispute Port Elevator's claim.

D.    Vega has not established any wrongdoing on the part of Port Elevator, Elkins, or Southwest Grain.

12.  <u>Conclusion.</u>

Vega's Motion for Summary Judgment should be in all things denied.

Port Elevator, et al's Motion for Summary Judgment should be in all things granted.

Respectfully Submitted,


JOHN SKAGGS
P.O. Drawer 2285
710 Laurel
McAllen, Texas 78502-2285
Phone (956) 687-8216
Fax (956) 630-6570

JOHN SKAGGS
State Bar No. 18452500

Federal ID #1225
ATTORNEYS FOR PLAINTIFFS

8

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on opposing counsel on this the 28 day of ___March___, 2002:

Roy Dale
William Mount
6301 N. 10th St.
McAllen, Texas 78504

_____
John Skaggs

9

**Rule 55**                    RULES OF CIVIL PROCEDURE

judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

(d) **Plaintiffs, Counterclaimants, Cross-Claimants.** The provisions of this rule apply whether the party entitled to the judgment by default is a plaintiff, a third-party plaintiff, or a party who has pleaded a cross-claim or counterclaim. In all cases a judgment by default is subject to the limitations of Rule 54(c).

(e) **Judgment Against the United States.** No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987.)

**ADVISORY COMMITTEE NOTES**

**1937 Adoption**

This represents the joining of the equity decree *pro confesso* (former Equity Rules 12 (Issue of Subpoena—Time for Answer), 16 (Defendant to Answer—Default—Decree *Pro Confesso* ), 17 (Decree *Pro Confesso* to be Followed by Final Decree—Setting Aside Default), 29 (Defenses—How Presented), 31 (Reply—When Required—When Cause at Issue) ) and the judgment by default now governed by U.S.C., Title 28, [former] § 724 (Conformity act). For dismissal of an action for failure to comply with these rules or any order of the court, see Rule 41(b).

**Note to Subdivision (a).** The provision for the entry of default comes from the Massachusetts practice, 2 Mass.Gen. Laws (Ter.Ed., 1932) ch. 231, § 57. For affidavit of default, see 2 Minn.Stat. (Mason, 1927) § 9256.

**Note to Subdivision (b).** The provision in paragraph (1) for the entry of judgment by the clerk when plaintiff claims a sum certain is found in the N.Y.C.P.A. (1937) § 485, in Calif.Code Civ.Proc. (Deering, 1937) § 585(1), and in Conn.Practice Book (1934) § 47. For provisions similar to paragraph (2), compare Calif.Code, *supra*, § 585(2); N.Y.C.P.A. (1937) § 490; 2 Minn.Stat. (Mason, 1927) § 9256(3); 2 Wash.Rev.Stat.Ann. (Remington, 1932) § 411(2). U.S.C., Title 28, § 1874, formerly § 785 (Action to recover forfeiture in bond) and similar statutes are preserved by the last clause of paragraph (2).

**Note to Subdivision (e).** This restates substantially the last clause of U.S.C., Title 28, [former] § 763 (Action against the United States under the Tucker Act). As this rule governs in all actions against the United States, U.S.C., Title 28, [former] § 45 (Practice and procedure in certain cases under the interstate commerce laws) and similar statutes are modified insofar as they contain anything inconsistent therewith.

**Supplementary Note**

**Note.** The operation of Rule 55(b) (Judgment) is directly affected by the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix, § 501 et seq. Section 200 of the Act [50 U.S.C. Appendix, § 520] imposes specific requirements which must be fulfilled before a default judgment can be entered, *e.g.*, *Ledwith v. Storkan*, D.Neb.1942, 6 Fed.Rules Serv. 60b.24, Case 2, 2 F.R.D. 539, and also provides for the vacation of a judgment in certain circumstances. See discus-

sion in Commentary, Effect of Conscription Legislation on the Federal Rules, 1940, 3 Fed.Rules Serv. 725; 3 *Moore's Federal Practice*, 1938, Cum.Supplement § 55.02.

**1987 Amendment**

The amendments are technical. No substantive change is intended.

# Rule 56.    Summary Judgment

(a) **For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) **For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

(c) **Motion and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

(d) **Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

(e) **Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and

shall sho
to testif
certified
to in an
therewitl
supplem
interroga
for sum
provided
upon the
party's p
affidavits
set forth
issue for
respond,
entered a

(f) Wh
appear fr
motion th
ent by af
oppositio
judgment
vits to b
discovery
is just.

(g) Aff
pear to th
any of the
are preser
delay, the
ploying th
the reasor
vits cause
able attor
ney may b
(As amende
eff. July 1,

This rule
against the
Summary
disposing of
any materia
for more tha
American st
use of it. D
the records
tions for sur
the Adminis
383. See al
*of the State*
In Englar
dated claims
scope of the
land or chatt
or unliquidat

shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**(g) Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Mar. 2, 1987, eff. Aug. 1, 1987.)

**ADVISORY COMMITTEE NOTES**

**1937 Adoption**

This rule is applicable to all actions, including those against the United States or an officer or agency thereof.

Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. It has been extensively used in England for more than 50 years and has been adopted in a number of American states. New York, for example, has made great use of it. During the first nine years after its adoption there, the records of New York county alone show 5,600 applications for summary judgments. Report of the Commission on the Administration of Justice in New York State (1934), p. 383. See also *Third Annual Report of the Judicial Council of the State of New York* (1937), p. 30.

In England it was first employed only in cases of liquidated claims, but there has been a steady enlargement of the scope of the remedy until it is now used in actions to recover land or chattels and in all other actions at law, for liquidated or unliquidated claims, except for a few designated torts and breach of promise of marriage. *English Rules Under the Judicature Act* (The Annual Practice, 1937) O. 3, r. 6; Orders 14, 14A, and 15; see also O. 32, r. 6, authorizing an application for judgment at any time upon admissions. In Michigan (3 Comp.Laws (1929) § 14260) and Illinois (Smith-Hurd Ill.Stats. c. 110, §§ 181, 259.15, 259.16), it is not limited to liquidated demands. New York (N.Y.R.C.P. (1937) Rule 113; see also Rule 107) has brought so many classes of actions under the operation of the rule that the Commission on Administration of Justice in New York State (1934) recommend that all restrictions be removed and that the remedy be available "in any action" (p. 287). For the history and nature of the summary judgment procedure and citations of state statutes, see Clark and Samenow, *The Summary Judgment* (1929), 38 Yale L.J. 423.

Note to Subdivision (d). See Rule 16 (Pre-Trial Procedure; Formulating Issues) and the Note thereto.

Note to Subdivisions (e) and (f). These are similar to rules in Michigan. Mich.Court Rules Ann. (Searl, 1933) Rule 30.

**1946 Amendment**

Note to Subdivision (a). The amendment allows a claimant to move for a summary judgment at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party. This will normally operate to permit an earlier motion by the claimant than under the original rule, where the phrase "at any time after the pleading in answer thereto has been served" operates to prevent a claimant from moving for summary judgment, even in a case clearly proper for its exercise, until a formal answer has been filed. Thus in *Peoples Bank v. Federal Reserve Bank of San Francisco*, N.D.Cal.1944, 58 F.Supp. 25, the plaintiff's countermotion for a summary judgment was stricken as premature, because the defendant had not filed an answer. Since Rule 12(a) allows at least 20 days for an answer, that time plus the 10 days required in Rule 56(c) means that under original Rule 56(a) a minimum period of 30 days necessarily has to elapse in every case before the claimant can be heard on his right to a summary judgment. An extension of time by the court or the service of preliminary motions of any kind will prolong that period even further. In many cases this merely represents unnecessary delay. See *United States v. Adler's Creamery, Inc.*, C.C.A.2, 1939, 107 F.2d 987. The changes are in the interest of more expeditious litigation. The 20-day period, as provided, gives the defendant an opportunity to secure counsel and determine a course of action. But in a case where the defendant himself makes a motion for summary judgment within that time, there is no reason to restrict the plaintiff and the amended rule so provides.

Subdivision (c). The amendment of Rule 56(c), by the addition of the final sentence, resolves a doubt expressed in *Sartor v. Arkansas Natural Gas Corp.*, 1944, 64 S.Ct. 724, 321 U.S. 620, 88 L.Ed. 967. See also Commentary, Summary Judgment as to Damages, 1944, 7 Fed.Rules Serv. 974; *Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co.*, C.C.A.2d, 1945, 147 F.2d 399, certiorari denied 1945, 65 S.Ct. 1201, 325 U.S. 861, 89 L.Ed. 1982. It makes clear that although the question of recovery depends on the amount of damages, the summary judgment rule is applicable and summary judgment may be granted in a proper case. If the case is not fully adjudicated it may be dealt with as provided