IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 3 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| PORT ELEVATOR - BROWNSVILLE, L.C. AND SOUTHWEST GRAIN CO., INC. | § § § § | |
| VS. | § § | CIVIL NO. B-98-23 |
| IVONNE SOTO VEGA, BERSAIN GUTIERREZ, SYSCO DE BAJA, S.A. DE C.V. AND WALTER PUFFELIS, INDIVIDUALLY AND D/B/A AGI AKRON GROUP, INC. | § § § § § § § | JURY DEMANDED |
| VS. | § § | |
| CRAIG ELKINS, INDIVIDUALLY AND D/B/A PORT ELEVATOR-BROWNSVILLE, L.C., AND SOUTHWEST GRAIN CO. , INC. | § § § § | |

**IVONNE SOTO VEGA'S AMENDED RESPONSE TO PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC. AND CRAIG ELKINS' MOTIONS FOR SUMMARY JUDGMENT AND DEFAULT JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

IVONNE SOTO VEGA, Defendant, Counter-Plaintiff and Third-Party Plaintiff (hereinafter "MS. VEGA") files this Amended Response in Opposition to Motions for Summary Judgment and Default Judgment filed by Plaintiffs and Counter-Defendants, PORT ELEVATOR-BROWNSVILLE, L.C. (hereinafter "PORT ELEVATOR") and SOUTHWEST GRAIN CO., INC. (hereinafter "SOUTHWEST GRAIN") and Third-Party Defendant CRAIG ELKINS and in support thereof would show as follows:

I.

## INTRODUCTION

PORT ELEVATOR, SOUTHWEST GRAIN AND CRAIG ELKINS (Movants) on or about March 11, 2002, filed Motions for Summary Judgment and Default Judgment against MS. VEGA, Defendant BERSAIN GUTIERREZ and Defendant SYSCO DE BAJA, S.A. DE C.V. MS. VEGA takes no position on the Movants' request for relief against MR. GUTIERREZ or SYSCO DE BAJA, S.A. DE C.V. other than to apprize the trial court that SYSCO DE BAJA, S.A. DE C.V. was never served with a summons. PORT ELEVATOR-BROWNSVILLE and SOUTHWEST GRAIN seek a summary judgment against MS. VEGA on her claims for negligence, conversion, fraud and for violations of the Texas Deceptive Trade Practices Act. PORT ELEVATOR-BROWNSVILLE and SOUTHWEST GRAIN seek a judgment against MS. VEGA that she is liable for breach of contract damages in the amount of $81,438.04. PORT ELEVATOR-BROWNSVILLE, SOUTHWEST GRAIN AND MR. ELKINS request entry of a declaratory judgment on the issue of ownership of the corn or its value and which determines that they are without fault related to the "contracting, storage, and disposal of the corn, and the money which is the subject of this action". Movants' motion at p. 15. PORT ELEVATOR-BROWNSVILLE, SOUTHWEST GRAIN and MR. ELKINS have requested that they be paid for their attorneys' fees and costs which they claim is in the amount of $58,200.00. Movants' motion at p. 24. As will

be discussed below, Movants' request for relief against **MS. VEGA** is not meritorious and must be denied.

II.

## MS. VEGA'S EVIDENCE IN SUPPORT OF DENIAL OF PORT ELEVATOR, SOUTHWEST GRAIN AND CRAIG ELKINS' MOTIONS FOR SUMMARY JUDGMENT AND DEFAULT JUDGMENT

1.  **CRAIG ELKINS'** deposition taken on December 21, 1999 -- Exhibit "1";

2.  Enrique Villarreal's deposition taken on May 10, 2000 -- Exhibit "2";

3.  October 25, 1996 invoice for 2,444.434 metric tons of corn -- Exhibit "3";

4.  November 12, 1996 invoice for 1,791.588 metric tons of corn -- Exhibit "4";

5.  November 13, 1996 invoice for 688.309 metric tons of corn -- Exhibit "5";

6.  Affidavit of Ownership executed by **IVONNE SOTO VEGA** on November 3, 1997, concerning 4,236 metric tons of corn -- Exhibit "6";

7.  Letter of Credit issued to the account of **IVONNE SOTO VEGA** with the beneficiary being **AGI** in the amount of $720,120.00 for the first two shipments of corn -- Exhibit "7";

8.  Complaint in Interpleader filed on February 11, 1998 -- Exhibit "8";

9.  October 28, 1997 correspondence from **AGI** representative, stating the **MS. VEGA** was sold 4,236 metric tons of corn on October 25, 1996 and November 12, 1996 -- Exhibit "9";

10. December 18, 1997 notice from **PORT ELEVATOR**, stating that bids/offers were now being accepted on approximately 1,600 metric tons of yellow corn -- Exhibit "10";

11. Deposition of Maria Gonzalez taken on June 22, 2001 -- Exhibit "11";

12. Affidavit of attorney, William D. Mount, Jr. taken on April, 2002 - Exhibit "12";

13. **PORT ELEVATOR'S** Second Amended Complaint -- Exhibit "13";

14. Return of summons for service of **BERSAIN GUTIERREZ** with affidavit -- Exhibit "14";

15. Avis Odenbaugh's report -- Exhibit "15";

16. Docket sheet -- Exhibit "16";

17. May 31, 2001 correspondence -- Exhibit "17";

18. June 27, 2001 correspondence -- Exhibit "18";

19. June 28, 2001 correspondence -- Exhibit "19"; and

20. Deposition of Tommy Joe Crutcher taken on March 28, 2000 -- Exhibit "20".

## III.

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that a summary judgment shall be rendered if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). By its very terms, the rule permits summary judgment even if the parties disagree as to some facts. Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). Summary judgment is precluded under Rule 56(c) only when the facts in dispute might affect the outcome of the suit under governing law and the dispute is genuine. Id. at 248. Should it appear that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law, the district court should grant summary judgment. <u>Speaks v. Trikora Lloyd P.T.</u>, 838 F.2d 1436, 1438-39 (5th Cir. 1988).

IV.

The movant need not disprove the non-moving party's claims in order to secure a summary judgment. Summary judgment is proper whenever the movant demonstrates "an absence of evidence to support the non-moving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); *accord* <u>Slaughter v. Allstate Ins. Co.</u>, 803 F.2d 857, 860 (5th Cir. 1986). Thus, the defendant is entitled to summary judgment when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the plaintiff's case, and on which [the plaintiff], will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322; *accord* <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (the burden is not on the moving party to produce evidence showing the absence of a genuine issue of material fact). *See also* <u>Reese v. Anderson</u>, 926 F.2d 494, 498 (5th Cir. 1991); <u>International Ass'n of Machinists and Aerospace Workers No. 2504 v. International Mfg. Co.</u>, 812 F.2d 219, 222 (5th Cir. 1987)("[M]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment"); <u>Anderson</u>, 477 U.S. at 249-50 (holding that "there is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party....If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted").

### V.

Where the moving party has the burden (the plaintiff on a claim for relief or the defendant on an affirmative defense), his showing must be sufficient for the trial court to hold that no reasonable trier of fact could find other than for the moving party. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986), quoting from Schwarzer, Summary Judgment Under The Federal Rules: Defining Genuine Issue of Material Fact (1984). "If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). "The inquiry involved in a ruling on a motion for summary judgment...necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

### VI.

### MS. VEGA OWNED THE 5,000 METRIC TONS OF STORED CORN

The undisputed evidence reflects that **MS. VEGA** bought 2,444.434 metric tons of corn from **AGI** of San Diego, California on

October 25, 1996. Exhibit "3", Invoice. On November 12, 1996, an additional 1,791.566 metric tons of corn was sold by **AGI** to **MS. VEGA**. Exhibit "4", Invoice. Both invoices or bills of lading state that the corn was sold to "Mrs. Ivonne Soto Vega, Paseo Rio Tijuana No. 1716, Zona del Rio, Tijuana B.C. Mexico". Exhibits "3" and "4", Invoices. Both further state that the corn is to be shipped to "Mrs. Ivonne Soto Vega, Brownsville, Texas 78521". Id. Both bills of lading are signed by **WALTER PUFFELIS, III**, the authorized representative for **AGI**, the seller. Id. Both bills of lading were signed by **BERSAIN GUTIERREZ**, under the line, "received by". The first invoice was notarized by Maria Gonzalez, an employee with **PORT ELEVATOR** and **CRAIG ELKINS'** secretary. Exhibit "3", Invoice; Exhibit "1", **MR. ELKINS'** deposition at p. 43-45. **CRAIG ELKINS** is the manager of **PORT ELEVATOR**. Exhibit "1", **MR. ELKINS'** deposition at p. 45. **PORT ELEVATOR** therefore was on notice as to who owned the 2,444.434 metric tons of corn identified in the first invoice. There has been no evidence produced that **AGI**, the seller, issued invoices for the corn in any name other than **MS. VEGA**.

## VII.

The total dollar amount of the two invoices was $720,120.00. Exhibits "3" and "4", Invoices. A letter of credit was issued for the account of **IVONNE SOTO VEGA** and in favor of **AGI** by Banoro, S.A. Tijuana, B.C. Mexico in September 1996 for the purchase of the

first two shipments of corn.  Exhibit "7", Letter of Credit.  The letter of credit was in the amount of $722,120.00 which is the total of the two invoices.  Neither the letter of credit document nor the two commercial sales invoices show that **BERSAIN GUTIERREZ** had any interest in the 4,236 metric tons of corn, comprising the first two corn shipments.  There has been no evidence produced that anyone other than **MS. VEGA** paid for the first two shipments of corn.

### VIII.

On November 3, 1997, **MS. VEGA** executed an affidavit stating that she was the owner of 4,236 metric tons of corn purchased from **AGI** by a letter of credit.  Exhibit "6", Affidavit of Ownership.  She further stated in her affidavit that her sole instructions were to **AGI** to transport the corn to the Port of Brownsville to store the grain at the elevator.  Id.  She stated in her affidavit that **MR. GUTIERREZ** had no ownership interest in the corn or authority to dispose of it.  Id.  **MR. PUFFELIS,** an authorized representative for **AGI**, concurred by letter dated October 28, 1997 that a total of 4,236 metric tons of corn had been sold to **MS. VEGA** on October 25, 1996 and November 12, 1996 that was paid by letter of credit.  Exhibit "9", Letter from **AGI** Representative.

### IX.

On November 13, 1996, **MS. VEGA** bought an additional quantity of corn from **AGI** in the amount of 688.309 metric tons.  Exhibit

"5", Invoice.  The invoice stated that the corn was sold to "Mrs. Ivonne Soto Vega".  <u>Id</u>.  The invoice or bill of lading further stated that the corn was to be shipped to **MS. VEGA** in Brownsville. <u>Id</u>.  The purchase price was $117,012.53.  She paid for the corn by personal check.  Exhibit "2", Mr. Villarreal's deposition at p. 37.

X.

The undisputed evidence reflects that **MS. VEGA** paid for three shipments of corn (4,924.331 metric tons) in the amount of $837,132.53 that was shipped to **PORT ELEVATOR**.  **MS. VEGA**, by Motion for Partial Summary Judgment filed on March 12, 2002, requests that the trial court find that she is the legal owner of the three shipments.

XI.

The undisputed evidence reflects that three shipments of corn were delivered to **PORT ELEVATOR** on October 31, 1996, November 13, 1996, and November 27, 1996.  Exhibit "1", **MR. ELKINS'** deposition at p. 77 and 78.  The undisputed evidence further reflects that Port Elevator began releasing the corn without **MS. VEGA'S** permission at **MR. GUTIERREZ'** request beginning on November 4, 1996. <u>Id</u>. at p. 88 and 89.  The last release of corn at **BERSAIN GUTIERREZ'** request was October 31, 1997.  <u>Id</u>. at 90.

XII.

In September 1997, **MS. VEGA** found a buyer for her corn, Enrique Villarreal, who was going to pay $150 per metric ton for

the corn. Exhibit "6", Affidavit of Ownership; Exhibit "2", Mr. Villarreal's deposition at p. 23. On September 16, 1997, Mr. Villarreal went to **PORT ELEVATOR** to obtain samples to grade the corn. Id. at 17. The corn was graded as number 2 for human consumption. Id. at 20. Mr. Villarreal wanted to buy the corn from **MS. VEGA**, but **MR. ELKINS, PORT ELEVATOR'S** manager would not release it, claiming **MS. VEGA** did not own it. Id. at 21. Mr. Villarreal said that **MR. ELKINS** asked him to bring the invoices showing the sale of corn to **MS. VEGA,** the letter of credit and to obtain an affidavit from the original seller, **AGI** and he would release the corn, Id. at p. 21 and 22. Mr. Villarreal complied. Id. at p. 24. **MR. ELKINS** then said he wanted to be paid for storage expenses. Id. at p. 21. Mr. Villarreal wrote a check for the amount requested and **MR. ELKINS** said Mr. Villarreal could pick the corn up in the afternoon. Id. at p. 25. The check was made payable to **SOUTHWEST GRAIN** at **MR. ELKINS'** request. Id. at p. 28 and 29. This was November 14 or 15 of 1997. Id. at p. 25. Mr. Villarreal's trucks arrived in the afternoon, but **MR. ELKINS** refused to release the corn, claiming the corn was not **MS. VEGA'S**. Id. at p. 25. **MR. ELKINS** had not disclosed that he had released all but 1,600 metric tons of the corn to **MR. GUTIERREZ**.

## XIII.

**PORT ELEVATOR** later auctioned 1,600 metric tons, **MS. VEGA'S**

corn that remained after earlier releases to **MR. GUTIERREZ**. **MR. ELKINS** told Mr. Villarreal that he was going to auction it because he was owed storage fees. Exhibit "2", Mr. Villarreal's deposition at p. 43. The corn was sold through a series of auctions beginning about a month after Mr. Villarreal had pulled up to the elevator with his trucks. Id. at p. 47, 48.

## XIV.

### THERE IS EVIDENCE OF CONVERSION

Conversion is the unauthorized and wrongful assumption and exercise of the dominion and control over the personal property of another, to the exclusion and inconsistent with the owner's rights. Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 446 (Tex. 1971). It is not necessary that the wrongdoer had benefitted by the conversion. Bradley v. MacKenzie, 226 S.W.2d 458, 460, (Tex.Civ.App.-- Eastland, 1950, no writ). Temporary depravation is sufficient, and it does not matter what was done with the converted property. Id. In the present case, **MS. VEGA** has put forth evidence that she was the owner of 4,924.33 metric tons of corn that was stored at **PORT ELEVATOR**. She has put forth evidence that she entered into a contract with Enrique Villarreal to sell the corn to him. She has put forth evidence that Mr. Villarreal went to **PORT ELEVATOR** to receive the corn, but **PORT ELEVATOR** would not release the corn. **MS. VEGA** has put forth evidence that **PORT ELEVATOR** auctioned 1,600 tons of her corn without her permission to

the exclusion of and inconsistent with her rights as the owner of the corn. **MS. VEGA** has put forth evidence that the other approximately 3,325 metrics tons was released to **MR. GUTIERREZ** without her permission. **PORT ELEVATOR** is not entitled to a summary judgment on **MS. VEGA'S** conversion claim based upon the evidence that she has presented.

**XV.**

**THERE IS EVIDENCE OF NEGLIGENCE**

The three essential elements to a negligence cause of action are:

> (1)   A legal duty owed by one person to another;
>
> (2)   A breach of that duty; and
>
> (3)   Damages proximately caused by that breach.

El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1997). **PORT ELEVATOR**, as a warehouseman, had a duty to safeguard **MS. VEGA'S** corn while the corn was in **PORT ELEVATOR'S** warehouse and not release the corn to third parties without her express permission. The evidence produced by **MS. VEGA** reflects that she owned the corn that was in the **PORT ELEVATOR** warehouse and that the corn was released to third parties (**MR. GUTIERREZ** and to others when sold at auction) without her permission. Enrique Villarreal, who had been in the grain business, testified that typically when a warehouseman such as **PORT ELEVATOR** receives an order of grain or corn into their warehouse that the standard business practice within the industry

is to review the documents coming with the corn to establish ownership. Exhibit "2", Mr. Villarreal's deposition at p. 31 and 32. The evidence produced by **MS. VEGA** reflects that **MR. ELKINS** did not follow the standard business practice and released her corn without her permission.

## XVI.

### THERE IS EVIDENCE OF NEGLIGENCE PER SE

Section 14.010(c) of the Texas Agriculture Code provides that a warehouseman is liable for damages for loss of, or injury to a commodity caused by the warehouseman's failure to exercise the care that a reasonably prudent person would exercise with regard to the commodity under similar circumstances. **PORT ELEVATOR** breached the statutory provision by failing to identify the owner of the corn at the time the corn was placed in the warehouse as is the standard business practice in the industry and by releasing said corn when **PORT ELEVATOR** knew or should have known that the corn was owned by **MS. VEGA**. **PORT ELEVATOR** has also violated Section 14.017(a) of the Texas Agriculture Code which provides that the warehouseman shall issue to the person delivering the grain/corn a serially numbered weight certificate in a form approved by the Department of Agriculture. The undisputed evidence reflects that **PORT ELEVATOR** did not issue the ticket as required.

## XVII.

### THERE IS EVIDENCE OF FRAUD

The elements of common law fraud are:

(1)   A material representation was made;

(2)   It was false;

(3)   When it was made, the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion;

(4)   The representation was made with the intention that it should be acted on by the recipient party;

(5)   The recipient party acted in reliance on it; and

(6)   The recipient party suffered injury.

Trenholm v. Ratcliff, 646 S.W.2d 927, 930 (Tex. 1983); DeSantis v. Wackenhut, 793 S.W.2d 670, 688 (Tex. 1990). The evidence presented by **MS. VEGA** shows that **PORT ELEVATOR** represents itself to the public that it is a public warehouse that stores corn or grain and that these commodities will not be released without the express consent of each owner. **MS. VEGA** has produced evidence that she stored her corn in the elevator and expected that it would be released when she sent her buyer to the elevator to pick up the corn. All her corn was not in the elevator at the time the buyer went to pick it up. The elevator later sold her corn without her permission. There is evidence within the record creating a genuine issue of material fact on each of the elements of **MS. VEGA'S** fraud

claim and summary judgment on the claim must be denied.

XVIII.

## THERE IS EVIDENCE OF TEXAS DECEPTIVE TRADE PRACTICES ACT VIOLATIONS

**MS. VEGA** contends that **PORT ELEVATOR** and **SOUTHWEST GRAIN** have violated the Texas Deceptive Trade Practices Act and there is evidence to support her claim.[1] The evidence produced by **MS. VEGA** reflects that **PORT ELEVATOR** holds itself out as a public warehouse that stores corn and that the commodity will not be released without the express consent of the owner. **MS. VEGA'S** corn was released without her permission, resulting in damages.

XIX.

## MOVANTS ARE NOT ENTITLED TO REIMBURSEMENT OF LEGAL EXPENSES

Movants contend that they are entitled to reimbursement for legal expenses, including attorneys' fees, costs and interest. Movants' motion at p. 17 - 24. As authority for attorneys' fees, Movants have cited Section 17.50(c) of the Texas Business and Commerce Code (also known as the Texas Deceptive Trade Practices Act), Section 38.006 of the Texas Civil Practice and Remedies Code and 28 U.S.C. § 1927. To recover attorneys' fees and court costs

---

[1] A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is: (A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and (B) relied on by a consumer to the consumer's detriment; (2) breach of an express or implied warranty; (3) any unconscionable action or course of action by any person; or (4) the use or employment by any person of an act or practice in violation of Article 21.21, Insurance Code. Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon 1999).

under Section 17.50 of the Texas Deceptive Trade Practices Act (DTPA), Movants must show that **MS. VEGA'S** DTPA claim "was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment". As the evidence produced by **MS. VEGA** reflects, **MS. VEGA** has a valid claim under the DTPA and Movants' request for attorneys' fees under the DTPA should be denied. It is important to note that Section 17.50(b) of the Texas Deceptive Trade Practices Act states that each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees.

## XX.

**PORT ELEVATOR** is not entitled to attorneys' fees under Section 38 of the Texas Civil Practice and Remedies Code. To recover attorneys' fees under Section 38.001, a party must prevail on a cause of action for which attorneys' fees are recoverable, and recover damages. <u>Green Int.'l v. Solis</u>, 951 S.W.2d 384, 390 (Tex. 1997)(because plaintiff failed to recover damages on its breach of contract claim, plaintiff was not entitled to recover attorneys' fees under Section 38.001). **PORT ELEVATOR** has not proven that the company is entitled to damages and its claim for attorneys' fees must fail.

## XXI.

Movants have asserted that they are entitled to attorneys' fees. The only evidence offered is the affidavit of their attorney, John Skaggs. Movants' motion at Exhibit "B". Mr.

Skaggs' affidavit does not differentiate between fees incurred on claims allegedly where attorneys' fees are available versus claims and defenses where attorneys' fees are not available. Segregation of fees is required. See Stewart Title v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997) (a party seeking attorneys' fees is ordinarily required to segregate fees incurred on claims allowing recovery of fees from those that do not). Further, Mr. Skaggs' affidavit has failed to show how the fees requested are reasonable. Factors that a fact finder should consider when determining the reasonableness of a fee include:

(1) the time and labor required, the novelty and the difficulty of the questions involved, and the skill required to perform the legal skills properly;

(2) the likelihood ... that the acceptance of the particular employment will prevent other employment by the lawyer;

(3) the fee customarily charged and the locality for the similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

## XXII.

**MS. VEGA** offers the affidavit of her attorney, William D. Mount, Jr., in support of her position that Movants' attorney fee request is unreasonable. See Exhibit "12", Mr. Mount's affidavit. Mr. Mount's affidavit creates a fact issue on reasonableness.

## XXIII.

Section 38.002 of the Texas Civil Practice and Remedies Code requires for attorneys' fees to be recovered under the chapter that the claimant present the claim to the opposing party or to a duly authorized agent of the opposing party and payment for the just amount owed must have not been tendered before the expiration of the thirtieth day that the claim is presented. There is no evidence that the claim was presented to **MS. VEGA** or a duly authorized agent by Movants. Movants have not satisfied a prerequisite to recovery of fees under Chapter 38. See Great Am. Ins. v. North Austin MUD, 908 S.W.2d 415, 427 n. 10 (Tex. 1995)(the satisfaction of the prerequisites under Section 38.002 of the Texas Civil Practice and Remedies Code is necessary for recovery under Section 38.001 of attorneys' fees).

## XXIV.

Movants assert that they are entitled to attorneys' fees

pursuant to 28 USC § 1927. Section 1927 provides that any attorney or other person admitted to conduct cases in any court of the United States who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct. 28 USC § 1927. Movants have wholly failed to show how **MS. VEGA** or her attorneys have "unreasonably and vexatiously" multiplied the proceedings. Movants' complain about other lawsuits filed by **MS. VEGA**. Section 1927 speaks to the case pending in federal court, not other lawsuits and Movants would not be entitled to recover fees in this court for other lawsuits, even assuming the other lawsuits were frivolous which **MS. VEGA** denies. Second, Movants have not identified what the "excess costs, expenses and attorneys' fees reasonably incurred" were in order for the court to make a determination as to whether they were excessive or not or for this party to respond.

## XXV.

**MS. VEGA** would show that Movants have not taken a single deposition in this case and had not moved for dispositive relief until March 11, 2002. The Complaint in Interpleader was filed on February 11, 1998, which is over four years ago. Movants have shown no diligence in pursuing "relief". Movants have complained that **MS. VEGA** would not sit for deposition. On May 31, 2001, by

letter from **MS. VEGA'S** counsel, the dates of July 6, 2001, July 7, 2001, July 12, 2001, July 13, 2001, and July 14, 2001 were provided as dates **MS. VEGA** could sit for a deposition.  Exhibits "17", "18", and "19".  Movants declined to take the deposition.

### XXVI.

### THE EVIDENCE DOES NOT SUPPORT MOVANT'S REQUEST FOR DECLARATORY JUDGMENT RELIEF

**PORT ELEVATOR**, **SOUTHWEST GRAIN** and **MR. ELKINS** have requested entry of a declaratory judgment on the issue of ownership of the corn or its value and which determines that they are without fault related to the "contracting, storage, and disposal of the corn, and the money which is the subject of this action".  Movants' motion at p. 15.  As the evidence produced herein by **MS. VEGA** shows, she was the owner of the corn at issue.  Movants are not entitled to a judgment that they are without fault related to the corn at issue.  Movants' request under Section 37.001 of the Texas Civil Practice and Remedies Code and 28 U.S.C. § 22.01 for declaratory judgment relief must be denied.

### XXVII.

### THE EVIDENCE DOES NOT SUPPORT MOVANT'S REQUEST FOR ECONOMIC DAMAGES

There is controverting evidence on what **PORT ELEVATOR'S** economic damages, if any, related to storage of the corn are.  **MR. ELKINS** states in his affidavit that **PORT ELEVATOR'S** economic damages are in the amount of $81,438.04.  Movants' motion at

Exhibit "A".  However, Mr. Villarreal has given testimony in this case that as of November 1997, storage fees as represented by **MR. ELKINS** were about $15,000.00 to $19,000.00.  Exhibit "2", Mr. Villarreal's deposition at p. 25.  On November 14, 1997, **MS. VEGA**, through her attorney, Guillermo Vega, Jr., tendered a check in the amount of $19,574.20 for storage fees pursuant to the invoice of November 13, 1997, but **MR. ELKINS** refused to accept it.  Exhibit "1", **MR. ELKINS'** deposition at Exhibit "15".  Further, there has been no representation by **PORT ELEVATOR** that they have paid all corn proceeds into the registry of the court and not withheld proceeds for storage costs and attorneys' fees.  **MS. VEGA** would further show that **MR. ELKINS** has wholly failed to set out his calculations for the alleged economic damages and as such, the number presented is arbitrary and conclusionary.

### XXVIII.

### THERE IS EVIDENCE THAT PORT ELEVATOR AND SOUTHWEST GRAIN ARE INTERTWINED

**MR. ELKINS** testified at his deposition that he was a paid employee for **SOUTHWEST GRAIN** from 1996 or 1997 to present.  Exhibit "1", **MR. ELKINS'** deposition at p. 16, 21, 22.  His 1996-1998 W-2's reflect that he is a paid employee of **SOUTHWEST GRAIN**.  Exhibit "20", Mr. Crutcher's deposition at Exhibits "10" and "12".  However, **MR. ELKINS** admitted that the grain was being stored at **PORT ELEVATOR**.  Mr. Villarreal was told by **MR. ELKINS** that to get

MS. VEGA'S corn out of the elevator that the check for storage fees was to be made payable to SOUTHWEST GRAIN. Exhibit "2", Mr. Villarreal's deposition at p. 28 and 29. This evidence supports MS. VEGA'S assertions that there was a joint business arrangement, joint venture, or other arrangement between the two companies.

## XXIX.

### THERE IS NO EVIDENCE OF A CONTRACT BETWEEN MS. VEGA AND PORT ELEVATOR OR SOUTHWEST GRAIN

PORT ELEVATOR and SOUTHWEST GRAIN offered no evidence that MS. VEGA was a party to the contract entered in 1996 titled, "Port Elevator-Brownsville, L.C. Rate and Service Contract". The contract was attached as Exhibit "D" to the Motions for Summary Judgment. The contracting parties were SYSCO DE BAJA, S.A. DE C.V. and PORT ELEVATOR. Exhibit "1", MR. ELKINS' deposition at p. 70 and 71. The contract does not mention MS. VEGA or the corn at issue.

## XXX.

PORT ELEVATOR and SOUTHWEST GRAIN assert that BERSAIN GUTIERREZ was MS. VEGA'S agent at the time the contract was entered. The two companies have produced no evidence to support this allegation. Even if this assertion were true which MS. VEGA denies (see Exhibit "6", Affidavit of Ownership), there is no evidence that MR. GUTIERREZ was acting within the scope of his authority at the time the contract was entered or at the time PORT

**ELEVATOR** released the corn to him.

**XXXI.**

**OBJECTIONS TO CRAIG ELKINS' AFFIDAVIT**

**MS. VEGA** has objections to **CRAIG ELKINS'** affidavit attached as Exhibit "A" to the Motions for Summary Judgment and Default Judgment. Portions of the affidavit are inadmissible and should be struck and not considered by the trial court. Paragraph one of number eight of the affidavit is inadmissible hearsay that does not fall within a hearsay exception. See Fed. R. Evid. 802. **MS. VEGA** requests that her objection be sustained as to paragraph one of number eight. **MS. VEGA** objects to paragraph one of number nine of the affidavit on the basis of hearsay and requests that the trial court sustain her objection. See Fed. R. Evid. 802. **MS. VEGA** further objects to paragraph three at number fifteen wherein **MR. ELKINS** recites the deposition testimony of **MARIA GONZALEZ**. **MS. VEGA'S** objection is hearsay. See Fed. R. Evid. 802. **MS. VEGA** objects to paragraph four of number fifteen on the basis of speculation and requests that the trial court sustain her objection. **MS. VEGA** objects to the last sentence of the first paragraph at number twenty wherein **MR. ELKINS** states what the amount of damages is under the contract for the reason that he fails to produce his calculations to show how this number was determined. It is a speculative or conclusory number. **MS. VEGA** requests that this court sustain her objections to the number

provided by him as the purported damages under the contract.

### XXXII.

### <u>OBJECTIONS TO JOHN SKAGGS' AFFIDAVIT</u>

**PORT ELEVATOR, SOUTHWEST GRAIN** and **CRAIG ELKINS** have tendered their attorney, John Skaggs' affidavit in support of their Motions for Summary Judgment and Default Judgment at Exhibit "B". **MS. VEGA** objects to portions of the affidavit and requests that this court sustain her objections. **MS. VEGA** objects to number three of the affidavit wherein Mr. Skaggs states a billing rate for the reason that there is no explanation as to why it is reasonable and therefore, it is conclusory. **MS. VEGA** further objects to this paragraph wherein **MR. SKAGGS** states that he has expended a certain number of hours of time on the basis of that he has failed to identify what work was done and state the grounds why the time was reasonable and therefore, the number is conclusory. **MS. VEGA** further objects to this paragraph on the basis that **MR. SKAGGS** provides a fee that he believes is owed which is conclusory, speculative, and not based on a proper foundation. **MS. VEGA** objects to number four of Mr. Skaggs' affidavit wherein he states that the "factual statements" in his client's Motions for Summary Judgment and Default Judgment are "true". Mr. Skaggs has interjected himself into this case as a witness. Mr. Skaggs has failed to show how he would have personal knowledge of the underlying facts in this case and therefore, his testimony by affidavit is speculative

and conclusory.

**PRAYER**

For the above reasons, **IVONNE SOTO VEGA**, respectfully requests

that this honorable court deny **PORT ELEVATOR, SOUTHWEST GRAIN** and

**CRAIG ELKINS'** Motions for Summary Judgment and Default Judgment and

grant such other and further relief which this party may justly be

entitled.

Respectfully submitted,

*Roy Dale by Bill Mount with permission*

ROY S. DALE
State Bar No. 05326700
Federal I.D. No. 1184
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
Federal I.D. No. 14992
DALE & KLEIN, L.L.P.
6301 N. 10th St.
McAllen, Texas 78504
Tel. No. (956) 687-8700
Fax. No. (956) 687-2416

ATTORNEYS FOR DEFENDANT, COUNTER-
PLAINTIFF AND THIRD-PARTY PLAINTIFF
IVONNE SOTO VEGA

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document has been forwarded to counsel of record, to wit:

John Skaggs
SKAGGS & GARZA, L.L.P.
710 Laurel
P.O. Drawer 2285
McAllen, Texas 78502-2285

**VIA CERTIFIED MAIL/RRR** on this the 3rd day of April, 2002.

_____
WILLIAM D. MOUNT, JR.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PORT ELEVATOR -              §
BROWNSVILLE, L.C. AND        §
SOUTHWEST GRAIN CO., INC.    §
                             §
VS.                          §        CIVIL NO. B-98-23
                             §
IVONNE SOTO VEGA, BERSAIN    §        JURY DEMANDED
GUTIERREZ, SYSCO DE BAJA,    §
S.A. DE C.V. AND WALTER      §
PUFFELIS, INDIVIDUALLY AND   §
D/B/A AGI AKRON GROUP, INC.  §
                             §
VS.                          §
                             §
CRAIG ELKINS, INDIVIDUALLY   §
AND D/B/A PORT ELEVATOR-     §
BROWNSVILLE, L.C., AND       §
SOUTHWEST GRAIN CO. , INC.   §

<u>ORDER DENYING PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN
CO., INC. AND CRAIG ELKINS' MOTIONS FOR SUMMARY JUDGMENT AS TO
YVONNE SOTO VEGA</u>

On the _____ day of _____, 2002, came on to be heard **PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC. AND CRAIG ELKINS' MOTIONS FOR SUMMARY JUDGMENT AS TO YVONNE SOTO VEGA.** The Court having heard the arguments of counsel and considered same, and being of the opinion that the motion is not well-taken, it is therefore,

**ORDERED** that said Motion be, and is hereby **DENIED.**

**SIGNED** on this _____ day of _____, 2002.

_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR - | § | |
| BROWNSVILLE, L.C. AND | § | |
| SOUTHWEST GRAIN CO., INC. | § | |
| | § | |
| VS. | § | CIVIL NO. B-98-23 |
| | § | |
| IVONNE SOTO VEGA, BERSAIN | § | JURY DEMANDED |
| GUTIERREZ, SYSCO DE BAJA, | § | |
| S.A. DE C.V. AND WALTER | § | |
| PUFFELIS, INDIVIDUALLY AND | § | |
| D/B/A AGI AKRON GROUP, INC. | § | |
| | § | |
| VS. | § | |
| | § | |
| CRAIG ELKINS, INDIVIDUALLY | § | |
| AND D/B/A PORT ELEVATOR- | § | |
| BROWNSVILLE, L.C., AND | § | |
| SOUTHWEST GRAIN CO. , INC. | § | |

**ORDER DENYING PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC. AND CRAIG ELKINS' MOTION FOR DEFAULT JUDGMENT AS TO YVONNE SOTO VEGA**

On the _____ day of _____, 2002, came on to be heard **PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC. AND CRAIG ELKINS' MOTION FOR DEFAULT JUDGMENT AS TO YVONNE SOTO VEGA.** The Court having heard the arguments of counsel and considered same, and being of the opinion that the motion is not well-taken, it is therefore,

ORDERED that said Motion be, and is hereby **DENIED.**

**SIGNED** on this _____ day of _____, 2002.

_____
UNITED STATES DISTRICT JUDGE