IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED FILED
JUL 3 0 2002
Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| PORT ELEVATOR BROWNSVILLE, L.C. § <br> and SOUTHWEST GRAIN CO., INC. § <br> § <br> PLAINTIFF(S), § <br> § <br> v. § <br> § <br> IVONNE SOTO VEGA, ET AL, § <br> § <br> DEFENDANT(S). § | CIVIL ACTION NO. B-98-23 |

## ORDER

BE IT REMEMBERED that on July 30, 2002, the Court considered Plaintiff in Interpleader's and Cross Defendant's Motion for Summary Judgment and Plaintiff in Interpleader's Motion for Default Judgment [Dkt. No. 95], Defendant Ivonne Soto Vega's Motion for Partial Summary Judgment [Dkt. Nos. 96 and 97], Port Elevator's Response [Dkt. No. 98], Defendant Ivonne Soto Vega's Response and Amended Response [Dkt. Nos. 100 and 101], Defendant Ivonne Soto Vega's Motion to File First Amended Answer and First Amended Counterclaim [Dkt. No. 102], as well as Defendant Ivonne Soto Vega's Supplemental Amended Response and Supplement to Motion for Partial Summary Judgment [Dkt. Nos. 103 and 104]. Initially, the Court **GRANTS** without comment Defendant Ivonne Soto Vega's Motion to File First Amended Answer and First Amended Counterclaim [Dkt. No. 102]. Next, for the reasons that follow, the Court **GRANTS** Plaintiff in Interpleader and Cross Defendant's Motion for Summary Judgment and Plaintiff in Interpleader's Motion for Default Judgment [Dkt. No. 95] and **DENIES** Defendant Ivonne Soto Vega's Motion for Partial Summary Judgment [Dkt. Nos. 96 and 97].

I.  Background and Procedural History

This is a case about a contract for the storage and delivery of a shipment of corn. In three separate purchases on October 25, 1996, November 12, 1996 and

November 13, 1996, Ivonne Soto Vega purchased over 5,000 metric tons of corn from AGI/Akron Group, Inc. ("AGI"). On October 31st, 1996, Port Elevator, a grain elevator in Brownsville, Texas, Bersain Gutierrez ("Gutierrez") of Sysco de Baja S.A. de C.V. ("Sysco") and Walter Puffelis ("Puffelis") of AGI, respectively entered into a "rate and service contract" for unloading the rail cars and subsequent handling and storage of the corn [Id. at 63-64 and 71-72. See also Dkt. No. 95, Ex. D ("rate and service contract")]. Three shipments of corn in excess of 5,000 metric tons were delivered to Port Elevator, by Gutierrez/Sysco and Puffelis/AGI in 1996. Craig Elkins, in his capacity as elevator manager took delivery of the corn for Port Elevator.

During the course of the next year, Port Elevator released in excess of 3,000 metric tons of corn, pursuant to the written instructions of Gutierrez. Less than a year after Port Elevator's receipt of the first trainload of corn, Vega appeared and claimed the corn that was the subject of this contract as her own. Port Elevator declined her order to release any corn to her.

On February 11, 1998 Port Elevator filed its original complaint, alleging that Defendants breached the terms of this contract by failing to meet the minimum corn deposit amount and also interpleading disputed funds. [Dkt. No. 1]. Jurisdiction was invoked based on diversity of the Parties and an amount in controversy over $75,000.00. Id. The appropriate waivers of summons were tendered to Vega and Gutierrez thereafter. After the tender of disputed funds to this Court,[1] Vega and Gutierrez ceased making demands for the proceeds to Port Elevator. Although Gutierrez was served with citation on November 8, 1998, he has never appeared in this action to demand payment. Vega made an appearance after the receipt of the notification of interpleader and the tender of waiver of summons. Port Elevator filed its Second Amended Complaint [Dkt. No. 55] in January, 2001. Also in January, 2001, Vega answered and asserted her counterclaim [Dkt. No. 56]. In her counterclaim, Vega alleged negligence, conversion, fraud and violations of the Texas Deceptive Trade Practice Act. [See Dkt. No. 55 at 10-13].

---

[1] This amount totaled $76,000.00.

In its motion for summary judgment, Port Elevator asserts that Sysco was the contracting party in this action, not Vega. Further, Port Elevator asserts that Sysco and Gutierrez have been cited to appear in this action, but have defaulted in all respects. Regarding Vega's claims, Port Elevator argues that there is no competent summary judgment evidence to support any of Vega's claims. Vega's motion for partial summary judgment seeks, among other things, a declaration that she is the true owner of the corn and therefore she is owed the interpleaded funds. The Court will now address these, and any other pending motions, in turn.

II.     Undisputed Facts

In three separate transactions, Vega purchased over 5,000 metric tons of corn from Puffelis a representative of AGI [Dkt. No. 56 at 8; Dkt. No. 96 at 6. See also Dkt. No. 96, Ex. 3, 4, 5 ("invoices")].[2] She instructed AGI to send the corn to Port Elevator in Brownsville, Texas for storage.[3] [Dkt. No. 104, Ex. 16 "Declaration"]. In 1996, this corn was delivered in three shipments to Port Elevator by Gutierrez who does business as Sysco and Puffelis representing AGI. [See Dkt. No. 95, Ex. A ("Elkins Deposition") at 62-64, 77 and 78].[4]

---

[2]     Although there is a factual dispute regarding the notarizing of the first two invoices, this does not raise a material fact issue. [See Dkt. No. 96, Ex. 3 and 4]. The invoices list the seller as AGI and the purchaser as Vega. Below the signature line on each of the three invoices submitted as summary judgment evidence is typewritten: "Mr. Bersain Gutierrez or Mrs. Ivonne Soto Vega." On invoice 0000001, there is a signature on the signature line. Below the signature line is typewritten: "This notarization is to authenticate that the above signature is that of Mr. Bersain Gutierrez." Below this is the date of October 30, 1996, and the signature and seal of a notary public, Maria Gonzalez an employee of Port Elevator. [See Dkt. No. 101, Ex. 11 ("Gonzalez Deposition"). Ms. Gonzalez states that she would not have notarized the invoice if it contained the additional language "or Ivonne Soto Vega." Id. at 74-77. There does not appear to be any dispute, however, that AGI sold the corn to Vega.

[3]     Southwest Grain Co. is the parent company of Port Elevator. [See Dkt. No. 95, Ex. A at 18-21].

[4]     The Elkins Deposition is also offered as an exhibit by Vega to her own motion for summary judgment. [See Dkt. No. 96].

Elkins, on behalf of Port Elevator, entered into a "rate and service contract" for unloading the rail cars and subsequent handling and storage of the corn [Id. at 63-64 and 71-72. See also Dkt. No. 95, Ex. D.] In addition to Elkins acting as the representative of Port Elevator, the other signators to the contract were Gutierrez/, and Puffelis/AGI. [See Dkt. No. 95, Ex. D]. The contract required that the minimum quantity of corn to be deposited with Port Elevator was one million bushels. [See Dkt. No. 95, Ex. D]. In consideration for the storage of this amount of corn, Port Elevator offered a reduced rate on the storage and handling of the corn. [See Elkins Dep. at 66-68]. All deposits were to be made by Puffelis/AGI, and all withdrawals were to be made by Gutierrez/Sysco. Id. All deposits and withdrawals were to occur no later than December 31, 1996.

Based on representations made by Puffelis and Gutierrez prior to and contemporaneous with the signing of the contract, Elkins learned that the corn had been sold by Loren Walters of CSC, a subdivision of Pillsbury, to Puffelis/AGI who then sold the corn to Gutierrez/Sysco. [See Elkins Dep. at 82-84 and 92-94]. The terms of the contract specified that delivery of the corn was to be done only upon the written instructions of "Sysco de Baja S.A. de C.V. and signed by Bersain Gutierrez." [See Dkt. No. 95, Ex. D]. Over the course of the next year, Port Elevator released in excess of 3,000 metric tons of corn pursuant to the written instructions of Gutierrez. [See Elkins Dep. at 86-106]. The last release of corn at Gutierrez' request was October 31, 1997. Id. at 90. At no time during the period of the contract were one million bushels of corn deposited with Port Elevator and further, Gutierrez failed to pay the amounts owed under the contract. [See Elkins Dep. at 108-113]. The Defendants' failure to deposit and withdraw one million bushels of corn within the contract period caused Port Elevator to incur actual damages from the higher costs of unloading, storage, fumigation, turning, aeration, cracking, and loading out of the corn in the amount of $81,438.04 plus interest. [See Dkt. No. 55 at 5].

Less than a year after the receipt of the first trainload of corn, Vega made her first appearance at Port Elevator and claimed this corn as her own [Dkt. No. 95 at 7 and Dkt. No. 101 at 9-10]. Port Elevator declined Vega's order to release the corn to a

buyer with whom she had contracted. [See Dkt. No. 95 at 7 and Dkt. No. 101 at 10]. Gutierrez subsequently contested Vega's claim both orally and in writing to Port Elevator. [See Dkt. No. 95 at 7, Ex. C, as well as Elkins Dep. at 160-161].

Unable to resolve the conflicting claims of ownership in the corn, Port Elevator advised the claimants that it would release the corn to them jointly or sell the remaining corn at market prices and tender the sales proceeds to Vega and Gutierrez jointly. [See Dkt. No. 95, Ex. C].

III.    Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings and discovery documents which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir. 1999). If the moving party meets this burden, the non-movant then must designate specific facts showing there is a genuine issue for trial to survive summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

IV.    Evidence of Agency Relationship and Breach of Contract

It is uncontroverted that Vega purchased corn from AGI and then instructed AGI to send the corn to Port Elevator for storage. [See Dkt. No. 104, Ex. 16 ]. Craig Elkins signed a "rate and service contract" in his capacity as a representative of Port Elevator, and not in his individual capacity. The uncontroverted evidence is that a contract was entered into between Port Elevator, Gutierrez and Puffelis who were acting on behalf of

Sysco and AGI, respectively. Further, it is uncontroverted that Sysco and Gutierrez held themselves out to Elkins as exercising custody of the corn as owners. [See Elkins Dep. at 84-88. See also Dkt. No. 95, Ex. D]. In her pleadings, Vega states that Gutierrez did not have any ownership interest in the corn nor did she give him authority to enter into a contract for the corn with Port Elevator. [See Dkt. No. 104, Ex. 16 ]. However, in her Declaration, she further states that she gave instructions to AGI to send the corn to Port Elevator for storage. Id.

Vega claims that Port Elevator was put on notice that she was the owner when the invoice number 0000001 was notarized by Maria Gonzalez, an employee of Port Elevator and Elkins' secretary. [See Dkt. No. 100. at 7] However, it is uncontroverted that Elkins had no personal knowledge of Vega's name being on any of the invoices which are in the summary judgment record. Elkins denies ever seeing the bills of lading and also notes that his secretary provided notary services which were not in connection with her employment with Port Elevator. [See Elkins Dep. at 183-87]. Vega's claim of notice is merely a conclusory allegation and as such is not competent summary judgment evidence. See Anderson, 477 U.S. at 249-50. If in fact and in law, Vega was the owner of the corn or had entered into an agency relationship with Gutierrez and/or Puffelis, there is no competent evidence to show that Elkins in his capacity as manager for Port Elevator knew of it at the time the contract was formed. As it cannot be shown that Elkins had any knowledge of Vega's claims, it is also the case that Port Elevator had no knowledge of Vega's purported ownership of the corn prior to or at the time that a contract was formed as between Elkins, as representative of Port Elevator, Puffelis and Gutierrez.

Further, the Court finds that Vega was in an undisclosed agency relationship with Gutierrez/Sysco. She states in her Original Answer and Counterclaim [Dkt. No. 56 also attached as Ex. G to Dkt. No. 95] that she "instructed Bersain Gutierrez to travel to Brownsville, Texas to oversee the transfer of Counter-Plaintiff's corn to Port Elevator for storage." Id. at 9. Despite this, Vega later states that she did not direct any "agent,

employee or representative [to] enter into a written contract with the elevator on my behalf." [Dkt. No. 103, Ex. 21].[5]

An agency relationship does not depend upon the express appointment or assent by the principal; rather, it may be implied from the conduct of the parties. Orozco v. Sander, 824 S.W.2d 555, 556 (Tex.1992). Whether a principal-agent relationship exists under established facts may be determined as a matter of law, based on the agreement between the parties, their words, and their conduct. Ross v. Texas One Partnership, 796 S.W.2d 206, 210 (Tex.App.--Dallas 1990), writ denied per curium, 806 S.W.2d 222 (Tex.1991); Mercedes-Benz of N. Amer., Inc. v. Dickenson, 720 S.W.2d 844, 858 (Tex.App.--Fort Worth 1986).

Regardless of what Vega did, or did not instruct Gutierrez and Puffelis to do vis-a- vis Port Elevator, the uncontroverted evidence is that Gutierrez and Puffelis held themselves out as owners of the corn when they entered into the contract with Port Elevator. "Where an agency agreement is undisclosed, a contract negotiated by the agent in the agent's own name but within the scope of the agent's authority is generally treated as a contract of principal. Therefore, the principal is ordinarily liable on the agreement to the third person with whom the agent has contracted." Agency, Section 213, Tx. Jur.3rd (2001). As discussed *supra,* the Court finds no competent evidence to support Vega's contention that her purported ownership interest was apparent to Port Elevator. However, even assuming her ownership interest was partially disclosed she would still be liable under the contract as, "[a] partially disclosed principal is also generally liable to the third-party with whom the authorized agent has contracted." Agency, Section 213, Tx. Jur.3rd (2001).

In her pleadings and in her Declaration, Vega states that she instructed AGI to send the corn to Port Elevator [See Dkt. No. 104, Ex. 16]. The record is silent as to what she expected Port Elevator to do with the corn. The uncontroverted evidence, however, is that Puffelis and Gutierrez did enter into a contract for storage of the corn.

---

[5] The Court disregards Vega's attempts to modify her later pleadings, finding the mofications were made in order to prevent the Court's finding of summary judgment. See 10A Wright, Miller & Kane, Federal Practice and Procedure § 2726 p. 448-450 (1998).

Further, the uncontroverted evidence is that Port Elevator was unaware of any ownership interest Vega may have had in the corn at the time this contract was formed. In summary, the Court finds that there is no material issue of fact on the formation and existence of the contract, and that Port Elevator has performed, and further that the contract has been breached by Defendants Gutierrez and Puffelis. Therefore the Court **GRANTS** Port Elevator's Motion for Summary Judgment.

As the Court finds a valid contract agreement as between Port Elevator and Defendants' Puffelis of AGI and Gutierrez of Sysco, and as the Court has also found that Elkins, as representative of Port Elevator, had no knowledge of Vega's purported interest in the corn either before or contemporaneous to the signing of the contract, the allegations in Vega's counterclaim are quickly disposed of. In her counterclaim, Vega alleges conversion, negligence, fraud and violations of the Texas Deceptive Trade Practices Act. [Dkt. No. 102 at 8-14]. Vega was a stranger to the contract. Port Elevator's contractual relationship and duty was with Puffelis and Gutierrez, not Vega. Further, because Port Elevator had no knowledge of any claim on the corn by Vega there is no evidence of conversion, fraud or violations of the Texas Deceptive Trade Practices Act.

As the Court has granted summary judgment on the issue of contracual liability against Port Elevator and Defendants Puffelis of AGI and Gutierrez of Sysco, Vega's counterclaim and motion for partial summary judgment are **DENIED**.[6]

V.   Default Judgment is Appropriate Against Gutierrez and Sysco

Bersain Gutierrez was served on November 8, 1998. Gutierrez has never made an appearance in this action. The original summons and the return of service are on file with the Court and are also attached as exhibit "F" to Dkt. No. 95. Pursuant to Federal Rules of Civil Procedure 55 and 56, the Court **GRANTS** Default Judgment against Gutierrez and Sysco.

---

[6] Vega may well have a cause of action against Puffelis /AGI and Gutierrez/Sysco, but there is no evidence in the record that supports her counterclaim against Port Elevator.

VI.     Port Elevator is Entitled to Reimbursement for Actual Damages

It is undisputed that contrary to the express terms of the contract, at no time during the period of the contract were one million bushels of corn deposited with Port Elevator. The Court therefore finds that the failure of Defendants' Puffelis and Gutierrez to deposit and withdraw one million bushels of corn within the contract period breached the contract and caused actual damages from the higher costs of unloading, storage, fumigation, turning, aeration, cracking, and loading out of the corn in the amount of $81,438.04 plus interest. [See Dkt. No. 55 at 5], and therefore the Court **GRANTS** Port Elevator's claim in the amount of $81,438.04 plus interest.

VII.    Port Elevator is Entitled to Reimbursement of Legal Expenses

As the Court has found that Vega's claims were groundless in fact and law, the Court **GRANTS** Port Elevator's request for reasonable and necessary attorneys' fees and court costs pursuant to the Texas Business and Commerce Code, Section 17.50(c) (Vernon 2001).[7] The Court also **GRANTS** interest pursuant to 28 U.S.C. § 1962.

Finally, the Court also finds that costs and fees are appropriate pursuant to 28 U.S.C. § 1967 as Vega has "multiplied the proceedings in (this) case unreasonably and vexatiously." In support of this conclusion, the Court first notes that it has found as a matter of law and fact that there is no basis for Vega's counterclaims.

Further the Court takes notice of the pattern of delay by Vega. First, Vega allowed thirteen months before first making an appearance in this action. Second, Vega waited almost three years after this action was filed before filing a counterclaim. Third, Vega has repeatedly failed to participate in discovery and has been unavailable to give deposition testimony. Fourth, notwithstanding the present action, Vega has filed

---

[7]    "On a finding by the Court that an action under this section was groundless in fact or law or brought in bad faith or for the purpose of harassment, the Court shall award to the Defendant reasonable and necessary attorney's fees and court costs." Texas Business and Commerce Code, Section 17.50(c), Vernon 2001. The Court also accepts Port Elevator's separate ground for attorney's fees: "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of claim and costs, if the claim is for: (1) rendered services; (2) performed labor; . . . (8) an oral or written contract." Texas Civil Practice and Remedies Code, Section 38.006, Vernon 2001.

two other actions in the State District Courts of Hidalgo County, Texas.[8] Fifth, it was represented to the Court at the January pretrial conference that settlement was imminent and simply required Vega's signature. The subsequent failure of Vega or her attorneys to notify Port Elevator of the status of the settlement required Port Elevator to prepare and file its Motion for Summary Judgment under the (mis)apprehension that no response would be forthcoming. As a result, the Court finds that Port Elevator is entitled to "excess costs, expenses and attorneys' fees reasonably incurred" as a result of the conduct of Vega. See 28 U.S.C. § 1967.

The Court is not persuaded that a fact issue on attorneys' fees is raised by the conclusory statements in the affidavit [Dkt. No. 101, Ex. 12] executed by William D. Mount, Jr., attorney for Vega, that the attorneys' fees are not reasonable. However, the Court does not find that the explanation of costs and fees incurred by Port Elevator in John Skaggs' Affidavit [see Dkt. No. 95, Ex. B] is sufficient. The Court therefore **ORDERS** Port Elevator to submit evidence that specifically details and explains the costs and attorneys' fees incurred on the prosecution of the breach of contract and in defense of the tort and the Texas Deceptive Trade Practices Act actions.

## VIII.   Conclusion

In summary, Port Elevator's Motion for Summary Judgment [Dkt. No. 95] is hereby **GRANTED** and Vega's Motion for Partial Summary Judgment [Dkt. No. 96] is **DENIED**. Further, any other pending motions are **MOOT** as a result of this Order. It is therefore

**ORDERED, ADJUDGED and DECREED** that Ivonne Soto Vega take nothing by reason of her actions against Port Elevator, Craig Elkins, and Southwest Grain. It is further

---

[8]   See Cause No. C-2969-99-A; "Ivonne Soto Vega v. Port Elevator-Brownsville, L.C., Inc., AGI/Akron Group Inc., Sysco de Baja, Walter Puffelis, Galvan, III, Individually and d/b/a/ Port Elevator-Brownsville, L.C. and Southwest Grain Co. Inc., Bersain Gutierrez Zenteno, Individually and d/b/a Sysco de Baja"; 92nd District Court, Hidalgo County, Texas; and Cause No. C-723-01-B; "Ivonne Soto Vega v. Universal Surety of America, Port Elevator-Brownsville, L.C. and Southwest Grain Co., Inc.; 93rd District Court, Hidalgo County, Texas.

**ORDERED, ADJUDGED and DECREED** that Port Elevator recover economic damages for breach of contract in the total amount of $81, 438.04; and that such amount is to be paid by Bersain Gutierrez and Sysco de Baja S.A. de C.V., and Ivonne Soto Vega, jointly and severally. It is further

**ORDERED, ADJUDGED and DECREED** that Port Elevator, Craig Elkins, and Southwest Grain have judgment against Sysco de Baja S.A. de C.V., Bersain Gutierrez, and Ivonne Soto Vega for attorneys' fees. The Court does not find that the explanation of costs and fees incurred by Port Elevator in John Skaggs' Affidavit [see Dkt. No. 95, Ex. B] is sufficient. It is therefore

**ORDERED** that Port Elevator to submit an affidavit that specifically details and explains the costs and fees incurred. It is further

**ORDERED** that the sum recited above bears interest from the date of entry of this judgment at the statutory rate as provided by 28 U.S.C. § 1961.

The Clerk of the Court is directed to pay to Port Elevator all of those funds which are currently in the registry of this Court in partial satisfaction of the judgment rendered herein. It is further

**ORDERED** that Sysco de Baja S.A. de C.V., Bersain Gutierrez, and Ivonne Soto Vega are jointly and severally liable for any amounts not satisfied by the payment of the money in the registry of the Court to Port Elevator. Execution may issue on any such excess amount as provided by law.

Except as provided for in this Order, each of the Parties is discharged from any further obligation or liability as between or among themselves. The Court specifically rules that Port Elevator, Craig Elkins, and Southwest Grain are without fault in the circumstances relating to the contracting, storage, and disposal of the corn and money which are the subject of this action.

Further, this Court enters a permanent injunction restraining Sysco de Baja S.A. se C.V., Bersain Gutierrez, and Ivonne Soto Vega from instituting or prosecuting any proceeding in any state or federal district court affecting the property, instrument, or obligation involved in this interpleader action pursuant to 28 U.S.C. § 2361.

DONE at Brownsville, Texas, this 30th day of July 2002.

Hilda G. Tagle
United States District Judge