United States District Court
Southern District of Texas
FILED

AUG 0 9 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR - BROWNSVILLE, L.C. AND SOUTHWEST GRAIN CO., INC. | § § § § | |
| VS. | § § | CIVIL NO. B-98-23 |
| IVONNE SOTO VEGA, BERSAIN GUTIERREZ, SYSCO DE BAJA, S.A. DE C.V. AND WALTER PUFFELIS, INDIVIDUALLY AND D/B/A AGI AKRON GROUP, INC. | § § § § § § § § | JURY DEMANDED |
| VS. | § § | |
| CRAIG ELKINS, INDIVIDUALLY AND D/B/A PORT ELEVATOR-BROWNSVILLE, L.C., AND SOUTHWEST GRAIN CO. , INC. | § § § § | |

## IVONNE SOTO VEGA'S MOTION FOR NEW TRIAL

TO THE UNITED STATES DISTRICT COURT:

IVONNE SOTO VEGA, Defendant, Counter-Plaintiff and Third-Party Plaintiff (hereinafter **"MS. VEGA"**), moves pursuant to Rule 59 of the Federal Rules of Civil Procedure for a new trial and in support thereof shows:

### I.

Judgment was entered against **MS. VEGA** on July 30, 2002 and for **PORT ELEVATOR-BROWNSVILLE, L.C.** (hereinafter **"PORT ELEVATOR"**) for breach of written contract in the amount of $81,438.04. The Judgment was entered jointly and severally against not only **MS. VEGA** but also against **BERSAIN GUTIERREZ** and **SYSCO DE BAJA S.A. DE**

**C.V. MS. VEGA** would show that there is no evidence or insufficient evidence that she breached any written contract with **PORT ELEVATOR**. **MS. VEGA** requests that the finding of breach of contract be vacated as to her only.

## II.

The trial court found **MS. VEGA** liable under the written contract by holding that **BERSAIN GUTIERREZ** was **MS. VEGA'S** undisclosed agent and that he executed the contract on her behalf.[1] Judgment at p. 6, 7. There is no evidence or insufficient evidence of an undisclosed agency relationship. The trial court's finding is solely based upon a pleading filed on January 22, 2001 and called "Defendant **IVONNE SOTO VEGA'S** Original Answer and Counterclaim" which has been amended. The trial court erred in finding agency strictly on an amended pleading.

## III.

Pleadings are not evidence. There is no evidence or insufficient evidence in the record of an undisclosed agency relationship. The trial court cited no evidence in the record to support agency because there is none.

## IV.

As stated above, there is no evidence or insufficient evidence in the record of an undisclosed agency. There is no written

---

[1]It is undisputed that **MS. VEGA** did not sign the contract.

contract between **MS. VEGA** and **BERSAIN GUTIERREZ**.  There is no power of attorney given by **MS. VEGA** to **MR. GUTIERREZ**.  Further, there is no evidence of an implied contract between **MS. VEGA** and **MR. GUTIERREZ**.  In fact, the evidence of an agency contract or agreement is to the contrary.

### V.

The trial court erred in finding that there was an undisclosed agency as a matter of law because **MS. VEGA** disputed the contention by her Declaration which is in evidence, stating that there was no agency.  All parties requested a jury trial as reflected by the pleadings on file wherein a jury trial was demanded.  The trial court, in making its determination, has acted as a factfinder, which is not allowed under the summary judgment rule.  See Fed. R. Civ. P. 56.  The question of agency is generally one of fact. Horne v. Charter Nat'l Ins. Co., 611 S.W.2d 182, 184 (Tex. Civ. App.--Fort Worth 1981, writ ref'd n.r.e.).  If the facts are uncontroverted or otherwise established, the existence of an agency relationship is a pure question of law. See American Int'l Trading Corp. v. Petroleous Mexicanos, 835 F.2d 536, 539 (5th Cir. 1987) (applying Texas law).  **MS. VEGA'S** Declaration controverted any assertion of agency and the trial court's finding of an undisclosed agency fails[2].

---

[2]To clarify **MS. VEGA'S** position, the only evidence in the record is that **MR. GUTIERREZ** was not an undisclosed agent of **MS. VEGA'S**.  Thus, as a pure question of law, **MS. VEGA'S** position is that the trial court should have held

## VI.

The two cases cited by the trial court, <u>Ross v. Texas One Partnership</u>, 796 S.W.2d 206, 210 (Tex. App.--Dallas 1990), writ denied per curium, 806 S.W.2d 222 (Tex. 1991) and <u>Mercedes-Benz of N. America, Inc. v. Dickenson</u>, 720 S.W.2d 844, 858 (Tex. App.--Fort Worth 1986), support **MS. VEGA'S** position that agency status is generally a fact issue.  In <u>Ross</u>, the trial court was able to decide the agency issue only because the facts were not disputed, making the agency issue a pure question of law.  <u>Ross</u>, 796 S.W.2d at 211.  In <u>Ross</u>, there was a written contract which established an independent contractor relationship between Texas One and the security company.  <u>Id</u>.  The <u>Dickenson</u> case also involved a pure question of law on the agency issue because the facts were undisputed on the agency issue that determined whether there was indemnity or not.  <u>Dickenson</u>, 720 S.W.2d at 858.  The law in Texas is clear that if there are contested facts as to the existence of an agency relationship that the question of agency is one of fact. The trial court has apparently misapplied Texas law in making its decision on agency.  **MS. VEGA** requests that the trial court reconsider its decision.

## VII.

What is the scope of the undisclosed agency that the trial

---

there was no agency relationship.  If there is some evidence of agency which **MS. VEGA** denies, then the agency issue becomes a question of fact to be decided by a jury.  It is apparent that there is some evidence of no agency, i.e. **MS. VEGA'S** Declaration.

court found?  The trial court does not answer this question, but apparently holds that it was great enough to bind **MS. VEGA** to a contract not signed by her.  Where agency is found as by the trial court in this case, the scope of an agent's authority is frequently a question of fact.  See <u>City Grocery Co. v. Moore Grocery Co.</u>, 135 S.W.2d 151 (Tex. Civ. App. 1939); <u>General Shoe Corp. v. Hall</u>, 123 S.W.2d 721 (Tex. Civ. App. 1938).  Because scope is generally a fact question, the trial court erred in deciding the issue and **MS. VEGA** seeks a new trial.

### VIII.

The trial court apparently found agency based upon a statement in **MS. VEGA'S** Original Answer and Counterclaim which has been amended.  The statement of the trial court relied upon was that **MS. VEGA** "instructed **BERSAIN GUTIERREZ** to travel to Brownsville, Texas to oversee the transfer of Counter-Plaintiff's corn to **PORT ELEVATOR** for storage".  Even if the statement could be given any weight, where in the statement does **MS. VEGA** say that she was giving **MR. GUTIERREZ** any authority to contract with **PORT ELEVATOR**? Where does the statement say that she is allowing **MR. GUTIERREZ** to bind her to the deposit with **PORT ELEVATOR** of at least 1 million bushels?  Where does the statement say that she wanted **MR. GUTIERREZ** to enter into a special rate and service contract?  The amended statement is not broad enough to support an undisclosed

agency finding and the Judgment should be set aside.

### IX.

The trial court, to make its agency finding, apparently ignores the statement in the two paragraphs that follow in the pleading that was amended that reads, "Neither **MR. GUTIERREZ** or **SYSCO DE BAJA, S.A. DE C.V.** had any authority from Counter-Plaintiff to sell Counter-Plaintiff's corn or enter into any contracts concerning storage without Counter-Plaintiff's expressed authority." This statement should have put the agency issue to rest if the totality of the amended pleading is considered.

### X.

The trial court states in footnote 5 of the Judgment that it is disregarding **MS. VEGA'S** attempts "to modify her later pleadings, finding the modifications were made in order to prevent the Court's finding of summary judgment." By making this finding, isn't the trial court picking and choosing what it wants to believe? Isn't this the job of a factfinder? **MS. VEGA** asserts that it is and a new trial is necessary.

### XI.

The trial court's cite to § 2726, p. 448-450 (1998) of <u>Wright, Miller, & Kane</u> to support its finding that it can disregard pleadings modifications is curious because the section seems to discuss a nonmovant in a summary judgment context giving an affidavit that contradicts earlier deposition testimony or a

discovery answer <u>not</u> a nonmovant who amends a pleading.  Pleadings
are not evidence and leave shall be freely given to amend when
justice so requires. See Fed. R. Civ. P. 15(a).  The trial court
granted permission to amend.

### XII.

The rationale given by the treatise for allowing in some
select instances the trial court to reject the later affidavit and
accept only the earlier evidence is that the witness is generally
interested and does not have a satisfactory explanation for the
change.  **MS. VEGA'S** pleadings were not drafted by her, but by her
lawyers.  The amendments were not done by her, but on her behalf.
When the January 22, 2001 pleading was discussed with her in July
2002, she pointed out errors and cleared up some of her lawyers'
questions with the result being the amended pleading.  See **Exhibit
"A"**, Declaration of William D. Mount, Jr.  The pleading amendment
was necessary to conform to the facts of the case and not for
ulterior motives.

### XIII.

Since **MS. VEGA** has already proven that there was no
undisclosed agency relationship and she is not liable for breach of
a written contract, her affirmative claims for relief should not
have been dismissed.  The trial court admitted in the Judgment that
there was no dispute that **MS .VEGA** purchased 5,000 metric tons of
corn.  Judgment at p. 3.  Further, why then are the Counter-

Defendants not liable for conversion, fraud, DTPA violations and negligence? The trial court finds that because **MR. ELKINS** had "no knowledge" of **MS. VEGA'S** claim to the corn that the Counter-Defendants are exonerated. Ignorance is no excuse, but the trial court holds otherwise. **MS. VEGA** would suggest that the trial court examine Enrique Villarreal's deposition testimony. He held himself out as an expert in commodity brokerage matters and had opinions on liability.

## XIV.

Further, **MR. ELKINS'** purported knowledge on ownership or lack thereof is not an element necessary for **MS. VEGA** to recover on her claims.

## XV.

There is evidence to support **MS. VEGA'S** claims and the trial court should set aside its dismissal of the claims.

## XVI.

The trial court erred in denying **MS. VEGA'S** Motion for Partial Summary Judgment. **MS. VEGA** has proven as a matter of law that she owns the corn. The trial court has admitted as much. Judgment at p. 3. She is entitled to the sales proceeds of the corn.

## XVII.

The trial court erred in finding that **PORT ELEVATOR, CRAIG ELKINS** and **SOUTHWEST GRAIN CO., INC.** (Movants) were entitled to

attorney's fees and costs from **MS. VEGA.** Judgment at p. 9, 10, 11. Because **MS. VEGA** has shown that she is not liable under the written contract and that she is entitled to affirmative relief, **PORT ELEVATOR'S** request for fees and costs is premature at this point and should be set aside.

### XVIII.

There was no written contract between **MS. VEGA** and **PORT ELEVATOR.** Movants are not entitled to recovery under Section 38.006 of the Texas Civil Practice & Remedies Code. **MS. VEGA** has shown that she has a valid DTPA claim. Movants are not entitled to recovery under Section 17.50(c) of the Texas Business & Commerce Code. **MS. VEGA** has not delayed this case as the trial court asserts. It was **PORT ELEVATOR** who failed to properly serve **MS. VEGA,** resulting in the trial court's dismissal of the action without prejudice to refile. **MS. VEGA** was under no obligation to file a counterclaim any earlier than she did. **MS. VEGA** did participate in the discovery process. She answered discovery and sat for deposition (relating to the Motion to Dismiss). The trial court complains about two other actions filed by **MS. VEGA** in state court. The case with Cause No. C-723-01-B is a suit on a bond against the bonding company for **PORT ELEVATOR'S** negligence in storing the corn and is not necessarily identical to this case. The other state court lawsuit was filed to protect **MS. VEGA'S**

position in the event that she ultimately prevailed on the dismissal of this suit. The trial court complains about **MS. VEGA** refusing to take **PORT ELEVATOR'S** settlement offer. No representation was made at the pretrial conference that **MS. VEGA** had agreed to the settlement. The representation that was made to the trial court was that a settlement offer had been made and her attorneys would recommend to her that she accept it given the uncertainty of her legal case in Mexico D.F. **MS. VEGA** elected not to take the settlement. **PORT ELEVATOR,** through its attorney, was advised of the rejection. **MS. VEGA** asserts that there is no basis for awarding of attorney's fees under 28 U.S.C. § 1967.

### XIX.

The trial court has failed to identify the "excess costs, expenses and attorney's fees reasonably incurred" by Movants. Movants could have filed their Motion for Summary Judgment years earlier, thereby saving costs and fees. Also, Movants had **MS. VEGA'S** lawyers fly out to San Diego for the deposition of **BERSAIN GUTIERREZ. MR. GUTIERREZ** was a no show. Movants never subpoenaed him. All parties' costs and fees were driven up thousands of dollars due to Movants' conduct.

### XX.

The trial court states in the Judgment that the record is "silent as to what she expected **PORT ELEVATOR** to do with the corn". Judgment at p. 7. The record reflects that **MS. VEGA** expected the

corn to be stored by the Elevator until she found a buyer.  The record reflects that she found a buyer, Enrique Villarreal, and that both **MS. VEGA** and Mr. Villarreal, tried to get the corn released beginning in September, 1997 without success.

For the above reasons, **MS. VEGA** requests that the trial court grant her Motion for New Trial, set aside the July 30, 2002 Judgment, and grant such other and further relief which **MS. VEGA** may justly be entitled.

Respectfully submitted,

DALE & KLEIN, L.L.P.
6301 N. 10th St.
McAllen, Texas 78504
Tel. No. (956) 687-8700
Fax. No. (956) 687-2416

ROY S. DALE
State Bar No. 05326700
Federal I.D. No. 1184
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
Federal I.D. No. 14992

ATTORNEYS FOR DEFENDANT, COUNTER-PLAINTIFF AND THIRD-PARTY PLAINTIFF IVONNE SOTO VEGA

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document has been forwarded to counsel of record, to wit:

John Skaggs
SKAGGS & GARZA, L.L.P.
710 Laurel
P.O. Drawer 2285
McAllen, Texas 78502-2285

**VIA CERTIFIED MAIL/RRR** on this the 9TH day of August, 2002.


_William D. Mount, Jr. by Kathryn M. Dlug with permission_
WILLIAM D. MOUNT, JR.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR - | § | |
| BROWNSVILLE, L.C. AND | § | |
| SOUTHWEST GRAIN CO., INC. | § | |
| | § | |
| VS. | § | CIVIL NO. B-98-23 |
| | § | |
| IVONNE SOTO VEGA, BERSAIN | § | JURY DEMANDED |
| GUTIERREZ, SYSCO DE BAJA, | § | |
| S.A. DE C.V. AND WALTER | § | |
| PUFFELIS, INDIVIDUALLY AND | § | |
| D/B/A AGI AKRON GROUP, INC. | § | |
| | § | |
| VS. | § | |
| | § | |
| CRAIG ELKINS, INDIVIDUALLY | § | |
| AND D/B/A PORT ELEVATOR- | § | |
| BROWNSVILLE, L.C., AND | § | |
| SOUTHWEST GRAIN CO. , INC. | § | |

<u>DECLARATION OF WILLIAM D. MOUNT, JR.</u>
<u>IN SUPPORT OF IVONNE SOTO VEGA'S MOTION FOR NEW TRIAL</u>

I, **WILLIAM D. MOUNT, JR.,** declare that:

1.    I make this statement based on my personal knowledge. I am prepared and competent to testify to the matters set forth in this Declaration.

2.    I am a partner and attorney with the law firm of Dale & Klein, L.L.P. located at 6301 North 10th Street, McAllen, Texas 78504.

3.    I prepared Ms. Vega's Original Answer and Counterclaim in this matter which was filed on January 22, 2001.

4.    At the time the aforementioned document was prepared, Ms. Vega was a non-resident of Texas. She lived in either Tijuana,



B.C. Mexico or in Southern California.  Her residency has been an issue in this case.  I had met with her once in McAllen, Texas about the case prior to filing her Original Answer and Counterclaim.

5.   In July 2002, Roy Dale, Ms. Vega's lead counsel, and I traveled to San Diego, California after Port Elevator-Brownsville, L.C.'s counsel noticed Bersain Gutierrez for deposition.  At that time, I went over the pleading that had been filed on her behalf with her and she pointed out some errors.  After meeting with her, Ms. Vega's First Amended Answer and First Amended Counterclaim was prepared.  Ms. Vega gave to me at the meeting much more information about her claim than previously given.  The information given clarified a number of issues and concerns that I had.

6.   Ms. Vega's pleadings were amended to conform to the information given to me by Ms. Vega.

7.   I declare under penalty of perjury that the foregoing is true and correct.

Executed in Colorado Springs, Colorado on the 9th day of August, 2002.

William D. Mount

WILLIAM D. MOUNT, JR.

H:\p\98-3843\Declaration of WDM