*119*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 9 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| PORT ELEVATOR – | § | |
| BROWNSVILLE, L.C. AND | § | |
| SOUTHWEST GRAIN CO., INC. | § | |
| | § | |
| VS. | § | CIVIL NO. B-98-23 |
| | § | |
| IVONNE SOTO VEGA, BERSAIN | § | |
| GUTIERREZ, SYSCO DE BAJA, | § | |
| S.A. DE C.V. AND WALTER | § | |
| PUFFELIS, INDIVIDUALLY AND | § | |
| D/B/A AGI AKRON GROUP, INC. | § | |
| | § | |
| VS. | § | |
| | § | |
| CRAIG ELKINS, INDIVIDUALLY | § | |
| AND D/B/A PORT ELEVATOR- | § | |
| BROWNSVILLE, L.C., AND | § | |
| SOUTHWEST GRAIN CO., INC. | § | |

<u>**IVONNE SOTO VEGA'S MOTION FOR AN ACCOUNTING**</u>

TO THE UNITED STATES DISTRICT COURT:

NOW COMES **IVONNE SOTO VEGA**, Defendant, Counter-Plaintiff and Third-Party Plaintiff (hereinafter **"MS. VEGA"**), and files this her Motion for an Accounting, and in support thereof would show as follows:

I.

On December 21, 2000, counsel for **MS. VEGA** was served with a copy of **PORT ELEVATOR'S SECOND AMENDED COMPLAINT**. In the Second Amended Complaint, **PORT ELEVATOR** states that it has deposited money into the registry of the Court and is still holding corn sale proceeds.    See **Exhibit "A"**, Second Amended Complaint.

Specifically, Paragraph 5 of the Second Amended Complaint reads as follows:

> "5. Alternatively, this Complaint is filed pursuant to Rule 22 FRCP. Plaintiff has heretofore tendered to the registry of the Court the total amount of $76,000.00 and is still in possession of cash received from the sale of commodity in excess of said amount. It is estimated by Plaintiff that the total amount in controversy, less reasonable offsets for storage and handling, is in excess of $100,000.00."

## II.

At paragraph 25 of Plaintiff's Second Amended Complaint, Plaintiff specifically requested the following:

> "Plaintiff herein specifically prays that the court adjudicate the ownership of the corn, or the value thereof."

## III.

Additionally, the Court, in its Order dated July 30, 2002, ordered "that **PORT ELEVATOR** recover economic damages for breach of contract in the total amount of $81, 438.04; and that such amount is to be paid by Bersain Gutierrez and Sysco de Baja S.A. de C.V., and **IVONNE SOTO VEGA**, jointly and severally." See **Exhibit "B"**, Order dated July 30, 2002 at p. 11.

## IV.

If **MS. VEGA** is liable for the amount of economic damages awarded by the Court in the Order dated July 30, 2002, then it is necessary to know the amount of funds still in the possession of **PORT ELEVATOR**, so the correct amount still owed to **PORT ELEVATOR** can be assessed and/or credited to the Final Judgment to be

entered.   Even if **MS. VEGA** is not liable for economic damages, the amount held by **PORT ELEVATOR** is still necessary to conclude the matter.

### V.

As of the date of the filing of this Motion for an Accounting, **PORT ELEVATOR** has not filed with this Court an accounting for the sale of the commodity that produced the money deposited with the registry of the court or the money still in its possession, nor has **PORT ELEVATOR** provided full disclosure regarding the amount of funds still in its possession.

### VI.

**MS. VEGA** requests this Court to order **PORT ELEVATOR** to file with the Court a complete accounting of the following:

1.   the total amount of the commodity sold, in metric tons or other unit used by **PORT ELEVATOR** in its sale of the commodity;

2.   the price per unit sold;

3.   the total amount of money that was to be collected from the sale of the commodity;

4.   the total amount of money actually received from the sale of the commodity;

5.   a list of dates for each receipt of money from the sale of the commodity;

6.   the total amount of money yet to be collected from the sale of the commodity;

7.   a list of those who still owe money as a result of the sale of the commodity;

8.   a list of purchasers who acquired all or part of the commodity as a result of its sale;

9.   a list of dates for each and every sale regarding the commodity in question;

10.  a detailed accounting of how the total amount of money collected from the sale of the commodity has been expended and/or held in reserve;

11.  a detailed accounting of how the money yet to be received, if any, is to be expended or allocated; and

12.  a list of any and all bank accounts, identified by name of financial institution, name of account holder, and account number, where part or all of the proceeds of the sale of the commodity in question have been or are currently being held and the amount held in the account(s) pertaining to the corn proceeds.

**FOR THE ABOVE REASONS,** and because **PORT ELEVATOR** has represented to the Court that it is still in possession of funds that are a direct result of the sale of the commodity in question and the corn sales funds have not been accounted for, **MS. VEGA** asks this Court to order **PORT ELEVATOR** to make a full accounting of the sale of the commodity and the proceeds received from the sale of the commodity.

Respectfully submitted,

DALE & KLEIN, L.L.P.
6301 N. 10th St.
McAllen, Texas 78504
Tel. No. (956) 687-8700
Fax. No. (956) 687-2416

_Roy S. Dale by Bill Mount_
_with permission_

ROY S. DALE
State Bar No. 05326700
Federal I.D. No. 1184
WILLIAM D. MOUNT, JR.
State Bar No. 14602950
Federal I.D. No. 14992

ATTORNEYS FOR DEFENDANT, COUNTER-
PLAINTIFF AND THIRD-PARTY PLAINTIFF
IVONNE SOTO VEGA

## CERTIFICATE OF CONFERENCE

Movant has conferred with Respondent, and counsel cannot agree about the disposition of the motion.

WILLIAM D. MOUNT, JR.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document has been forwarded to counsel of record, to wit:

John Skaggs
SKAGGS & ASSOCIATES, L.L.P.
710 Laurel
P.O. Drawer 2285
McAllen, Texas 78502-2285

**VIA CERTIFIED MAIL/RRR** on this the 25th day of April, 2003.

WILLIAM D. MOUNT, JR.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PORT ELEVATOR-             §
BROWNSVILLE, L.C.,         §
ET AL                      §
                           §
VS.                        §        CIVIL NO. B-98-23
                           §
IVONNE SOTO VEGA, BERSAIN  §        JURY DEMANDED
GUTIERREZ, SYSCO DE BAJA   §
S.A. DE C.V. AND WALTER    §
PUFFELIS, INDIVIDUALLY AND §
D/B/A AGI/AKRON GROUP, INC. §

### SECOND AMENDED COMPLAINT

1.   This complaint is filed by Port Elevator-Brownsville, L.C.,

joined by Southwest Grain Co., Inc.

2.   Plaintiffs are corporations organized under the laws of the

State of Texas.

3.   Defendants are individuals or corporations who may be served

at the following addresses:

    1.   Ivonne Soto Vega (has been served and appeared)
         Paseo Rio Tijuana No. 1716
         Zona Del Rio, Tijuana B.C. Mexico

    2.   Bersain Gutierrez and
         Sysco De Baja S. A. de C.V.
         1853 Carolyn Drive
         Chula Vista, California 91913

    3.   Walter Puffelis and AGI/AKRON GROUP, INC.
         1330 Orange Avenue Suite 329
         Coronado, California 92118

4.   This Court has jurisdiction pursuant to 28 USC, Sections 1331,

1332, 1335 and 2361.

5.   Alternatively, this Complaint is filed pursuant to Rule 22

FRCP.  Plaintiff has heretofore tendered to the registry of the

Court the total amount of $76,000.00 and is still in possession of



EXHIBIT
"A"

cash received from the sale of commodity in excess of said amount. It is estimated by Plaintiff that the total amount in controversy, less reasonable offsets for storage and handling, is in excess of $100,000.00.

6.   Plaintiff herein further asserts diversity between the stakeholder (Plaintiff) and one or more of the Defendants; and further asserts the existence of diversity as between the named Defendants.

7.   In compliance with the provisions of 28 USC Section 1335, Plaintiff asserts that it is in possession of money or property of value more than $500.00.

8.   Plaintiff is a stakeholder of cash, obtained from the sale of commodity, ownership to which is claimed by Defendants.  The cash is described as follows: cash from the sale of corn in a liquidated amount which is claimed to be owned by multiple Defendants. Certain cash from said sale is currently on deposit at the Plaintiff's Port of Brownsville warehouse facility; less reasonable storage, handling, and other fees deducted or charged by Plaintiff. Plaintiff has tendered checks payable to the "United States District Court Registry" representing certain cash on hand, there to abide to the judgment of the Court.  Plaintiff further asserts its intention to tender or retain cash representing the partial liquidated value of the corn, subject to counterclaims plead herein.

9.   As detailed below, Plaintiff may be exposed to double or multiple liability by reason of competing and inconsistent claims made by Defendants.

10. In the event Plaintiff should receive a counter-claim for breach of contract, conversion, violation of statutory trade practices laws, or a like pleading; in such event Plaintiff would affirmatively show that the commodity in question was specifically stored in the Plaintiff's warehouse pursuant to a contract and referenced tariffs, copies of which are attached hereto and incorporated by reference at this point. Conflicting claims of ownership of the commodity or any cash generated by the sale of said commodity have been asserted by Defendants, and allegations of actionable conduct on the part of Port Elevator have been alleged by one or more of the said Defendants.

11. Plaintiff previously proposed the voluntary tender of the herein referenced cash and commodities to a mutually acceptable neutral third-party, and such proposal was made in writing. The Defendants refused or neglected to respond, and each continued to assert respective superior ownership.

12. Thereafter, Plaintiff proposed the sale of the said commodity, pursuant to contract, so as to mitigate any damages resulting from spoilage or change in market value. Plaintiff received no response from Defendants related thereto.

13. Plaintiff finds itself with no alternative but to tender the corn or the partial value thereof to the Court for adjudication of the identity of the proper owner or owners.

### REQUEST FOR DECLARATORY RELIEF

14. This Request for Relief is made pursuant to 28 U.S.C. §2201.

15. Ivonne Soto Vega has asserted claims against Port Elevator-Brownsville, L.C. which are derived from the contract and

transactions heretofore recited in this pleading. Vega asserts duties and obligations arising as a result of the said contract and the asserted relationship between the parties.

16. Vega has asserted such allegations in a suit which was filed later in time and filed in State District Court in Hidalgo County, Texas. On the 22nd day of May, 2000, the State District Court ordered Vega's claims abated based on Port Elevator's assertions of the pendency of this prior filed action in the United States District Court.

17. A copy of Vega's pleadings in connection with her State Court suit are attached hereto and incorporated at this point by reference, as evidence of Ms. Vega's assertion of rights pursuant to the contract which is the subject of this pleading.

18. Port Elevator-Brownsville, L.C. now seeks a declaration of the rights, duties, legal relations and obligations of any interested party arising out of the said contract, and arising out of the assertions contained in Vega's aforementioned pleading which is attached hereto. Port Elevator-Brownsville, L.C. seeks a determination of the relative liabilities, and any fault as asserted in connection with the aforementioned State Court action, which has been abated in deference to this action pending in the Federal Court.

19. In this connection, Port Elevator-Brownsville, L.C. would further assert that at all material times related hereto, it was acting through its authorized agent, servant, or employee Craig Elkins. Port Elevator-Brownsville, L.C. would further assert that Craig Elkins is a salaried employee of Southwest Grain Co., Inc.

To the extent of any involvement by the said Craig Elkins and Southwest Grain Co., Inc. Port Elevator-Brownsville, L.C. would further request a determination of the relevant duties, faults and liabilities of said entities. To the extent necessary, the said Southwest Grain Co., Inc. hereby appears in this action for all purposes consistent with this pleading.

<u>BREACH OF CONTRACT</u>

20. Plaintiff, through its agent, Craig Elkins, entered into a contract with Bersain Gutierrez, as representative for Sysco de Baja and Walter Puffelis, as representative for Akron Group, Inc., in October 1996. The above mentioned contract is attached hereto and incorporated herein by reference. Pursuant to this contract, the minimum quantity of corn to be deposited with Port Elevator was one million bushels.

21. In consideration for the movement of a large volume of corn over a short period of time, Plaintiff gave Bersain Gutierrez and Walter Puffelis a special contract with lower receiving and delivering charges. All deposits were to be made by Walter Puffelis of AGI/Akron Group, Inc., and withdrawals were to be made by Bersain Gutierrez of Sysco de Baja S.A. de C.V.. All deposits and withdrawals were to occur no later than December 31, 1996.

22. At no time during the term of the contract were one million bushels of corn deposited with Port Elevator. Defendants' failure to deposit and withdraw one million bushels of corn within the contract period, caused higher sums of money to accrue for the unloading, storage, fumigation, turning, aereation, cracking, and loading out in the amount of $81,438.04 plus interest.

23.  Ivonne Soto Vega has asserted she was a party to the above referenced contract by her own statement.  Ms. Vega filed her petition in the 92nd Judicial District Court in Hidalgo County, Texas, Cause No. C-2969-99-A.  On page seven, paragraph "c", of Ms. Vega's state court pleading, Ms. Vega alleged that she "entered into a contract" with Plaintiff to "store corn at their facility in Brownsville, Texas" in the fall of 1996.  Although Plaintiff denies Defendant Vega was a contracting party as herein described; in the event contractual privity status should be determined or adjudicated by the court, then Plaintiff asserts such contract has in fact also been breached individually by Defendant Vega.

24.  All Defendants in this cause of action breached the contract entered into with Plaintiff in October 1996 and are liable for the damages proximately caused by this breach.

25.  Plaintiff herein specifically prays that the court adjudicate the ownership of the corn, or the value thereof; that the Court determine that Plaintiff is without fault in the circumstances related to the contracting, storage, and disposal of the corn, and money which is the subject of this action.  Plaintiff further prays that the Court discharge Plaintiff from further liability herewith.

26.  Plaintiff further prays for an award of reasonable attorneys' fees, the award of which is within the equitable powers of this Court.

27.  Port Elevator-Brownsville, L.C., Craig Elkins, and Southwest Grain Co., Inc. further seek a declaration from the Court regarding the duties and liabilities connected with the transactions addressed herein; and further seek a declaration of no fault or

liability related thereto. Moreover, Plaintiff prays that the court find Defendants have breached the contract entered into between the parties. Plaintiff further requests an award of actual damages related to the prosecution or defense of this action, for costs of Court, for pre-judgment interest, and post-judgment interest; and further for award of attorneys' fees arising out of the prosecution or defense of this action.

28.  A jury is demanded in connection with this Complaint.

                              Respectfully submitted,

                              John Skaggs
                              P.O. Drawer 2285
                              McAllen, Texas 78502-2285
                              Phone (956) 687-8203
                              Fax (956) 630-6570

                              JOHN SKAGGS
                              State Bar No. 18452500
                              Fed I.D. No. 1225
                              ATTORNEY FOR PLAINTIFF

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel on this the ___21___ day of _December_ 2000:

Roy Dale
6301 N. 10th St.
McAllen, Texas 78504

                              JOHN SKAGGS

EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUL 3 0 2002

Michael N. Milby, ____ of Court
By Deputy Clerk ____

| | | |
|---|---|---|
| PORT ELEVATOR BROWNSVILLE, L.C. | § | |
| and SOUTHWEST GRAIN CO., INC. | § | |
| | § | |
| PLAINTIFF(S), | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-98-23 |
| | § | |
| IVONNE SOTO VEGA, ET AL, | § | |
| | § | |
| DEFENDANT(S). | § | |

## ORDER

BE IT REMEMBERED that on July 30, 2002, the Court considered Plaintiff in Interpleader's and Cross Defendant's Motion for Summary Judgment and Plaintiff in Interpleader's Motion for Default Judgment [Dkt. No. 95], Defendant Ivonne Soto Vega's Motion for Partial Summary Judgment [Dkt. Nos. 96 and 97], Port Elevator's Response [Dkt. No. 98], Defendant Ivonne Soto Vega's Response and Amended Response [Dkt. Nos. 100 and 101], Defendant Ivonne Soto Vega's Motion to File First Amended Answer and First Amended Counterclaim [Dkt. No. 102], as well as Defendant Ivonne Soto Vega's Supplemental Amended Response and Supplement to Motion for Partial Summary Judgment [Dkt. Nos. 103 and 104]. Initially, the Court **GRANTS** without comment Defendant Ivonne Soto Vega's Motion to File First Amended Answer and First Amended Counterclaim [Dkt. No. 102]. Next, for the reasons that follow, the Court **GRANTS** Plaintiff in Interpleader and Cross Defendant's Motion for Summary Judgment and Plaintiff in Interpleader's Motion for Default Judgment [Dkt. No. 95] and **DENIES** Defendant Ivonne Soto Vega's Motion for Partial Summary Judgment [Dkt. Nos. 96 and 97].

I.    Background and Procedural History

This is a case about a contract for the storage and delivery of a shipment of corn. In three separate purchases on October 25, 1996, November 12, 1996 and

November 13, 1996, Ivonne Soto Vega purchased over 5,000 metric tons of corn from AGI/Akron Group, Inc. ("AGI"). On October 31st, 1996, Port Elevator, a grain elevator in Brownsville, Texas, Bersain Gutierrez ("Gutierrez") of Sysco de Baja S.A. de C.V. (Sysco") and Walter Puffelis ("Puffelis") of AGI, respectively entered into a "rate and service contract" for unloading the rail cars and subsequent handling and storage of the corn [Id. at 63-64 and 71-72. See also Dkt. No. 95, Ex. D ("rate and service contract")]. Three shipments of corn in excess of 5,000 metric tons were delivered to Port Elevator, by Gutierrez/Sysco and Puffelis/AGI in 1996. Craig Elkins, in his capacity as elevator manager took delivery of the corn for Port Elevator.

During the course of the next year, Port Elevator released in excess of 3,000 metric tons of corn, pursuant to the written instructions of Gutierrez. Less than a year after Port Elevator's receipt of the first trainload of corn, Vega appeared and claimed the corn that was the subject of this contract as her own. Port Elevator declined her order to release any corn to her.

On February 11, 1998 Port Elevator filed its original complaint, alleging that Defendants breached the terms of this contract by failing to meet the minimum corn deposit amount and also interpleading disputed funds. [Dkt. No. 1]. Jurisdiction was invoked based on diversity of the Parties and an amount in controversy over $75,000.00. Id. The appropriate waivers of summons were tendered to Vega and Gutierrez thereafter. After the tender of disputed funds to this Court,[1] Vega and Gutierrez ceased making demands for the proceeds to Port Elevator. Although Gutierrez was served with citation on November 8, 1998, he has never appeared in this action to demand payment. Vega made an appearance after the receipt of the notification of interpleader and the tender of waiver of summons. Port Elevator filed its Second Amended Complaint [Dkt. No. 55] in January, 2001. Also in January, 2001, Vega answered and asserted her counterclaim [Dkt. No. 56]. In her counterclaim, Vega alleged negligence, conversion, fraud and violations of the Texas Deceptive Trade Practice Act. [See Dkt. No. 55 at 10-13].

---

[1]    This amount totaled $76,000.00.

In its motion for summary judgment, Port Elevator asserts that Sysco was the contracting party in this action, not Vega. Further, Port Elevator asserts that Sysco and Gutierrez have been cited to appear in this action, but have defaulted in all respects. Regarding Vega's claims, Port Elevator argues that there is no competent summary judgment evidence to support any of Vega's claims. Vega's motion for partial summary judgment seeks, among other things, a declaration that she is the true owner of the corn and therefore she is owed the interpleaded funds. The Court will now address these, and any other pending motions, in turn.

II.    Undisputed Facts

In three separate transactions, Vega purchased over 5,000 metric tons of corn from Puffelis a representative of AGI [Dkt. No. 56 at 8; Dkt. No. 96 at 6. See also Dkt. No. 96, Ex. 3, 4, 5 ("invoices")].[2] She instructed AGI to send the corn to Port Elevator in Brownsville, Texas for storage.[3] [Dkt. No. 104, Ex. 16 "Declaration"]. In 1996, this corn was delivered in three shipments to Port Elevator by Gutierrez who does business as Sysco and Puffelis representing AGI. [See Dkt. No. 95, Ex. A ("Elkins Deposition") at 62-64, 77 and 78].[4]

_____

[2]    Although there is a factual dispute regarding the notarizing of the first two invoices, this does not raise a material fact issue. [See Dkt. No. 96, Ex. 3 and 4]. The invoices list the seller as AGI and the purchaser as Vega. Below the signature line on each of the three invoices submitted as summary judgment evidence is typewritten: "Mr. Bersain Gutierrez or Mrs. Ivonne Soto Vega." On invoice 0000001, there is a signature on the signature line. Below the signature line is typewritten: "This notarization is to authenticate that the above signature is that of Mr. Bersain Gutierrez." Below this is the date of October 30, 1996, and the signature and seal of a notary public, Maria Gonzalez an employee of Port Elevator. [See Dkt. No. 101, Ex. 11 ("Gonzalez Deposition"). Ms. Gonzalez states that she would not have notarized the invoice if it contained the additional language "or Ivonne Soto Vega." Id. at 74-77. There does not appear to be any dispute, however, that AGI sold the corn to Vega.

[3]    Southwest Grain Co. is the parent company of Port Elevator. [See Dkt. No. 95, Ex. A at 18-21].

[4]    The Elkins Deposition is also offered as an exhibit by Vega to her own motion for summary judgment. [See Dkt. No. 96].

-3-

Elkins, on behalf of Port Elevator, entered into a "rate and service contract" for unloading the rail cars and subsequent handling and storage of the corn [Id. at 63-64 and 71-72. See also Dkt. No. 95, Ex. D.] In addition to Elkins acting as the representative of Port Elevator, the other signators to the contract were Gutierrez/, and Puffelis/AGI. [See Dkt. No. 95, Ex. D]. The contract required that the minimum quantity of corn to be deposited with Port Elevator was one million bushels. [See Dkt. No. 95, Ex. D]. In consideration for the storage of this amount of corn, Port Elevator offered a reduced rate on the storage and handling of the corn. [See Elkins Dep. at 66-68]. All deposits were to be made by Puffelis/AGI, and all withdrawals were to be made by Gutierrez/Sysco. Id. All deposits and withdrawals were to occur no later than December 31, 1996.

Based on representations made by Puffelis and Gutierrez prior to and contemporaneous with the signing of the contract, Elkins learned that the corn had been sold by Loren Walters of CSC, a subdivision of Pillsbury, to Puffelis/AGI who then sold the corn to Gutierrez/Sysco. [See Elkins Dep. at 82-84 and 92-94]. The terms of the contract specified that delivery of the corn was to be done only upon the written instructions of "Sysco de Baja S.A. de C.V. and signed by Bersain Gutierrez." [See Dkt. No. 95, Ex. D]. Over the course of the next year, Port Elevator released in excess of 3,000 metric tons of corn pursuant to the written instructions of Gutierrez. [See Elkins Dep. at 86-106]. The last release of corn at Gutierrez' request was October 31, 1997. Id. at 90. At no time during the period of the contract were one million bushels of corn deposited with Port Elevator and further, Gutierrez failed to pay the amounts owed under the contract. [See Elkins Dep. at 108-113]. The Defendants' failure to deposit and withdraw one million bushels of corn within the contract period caused Port Elevator to incur actual damages from the higher costs of unloading, storage, fumigation, turning, aeration, cracking, and loading out of the corn in the amount of $81,438.04 plus interest. [See Dkt. No. 55 at 5].

Less than a year after the receipt of the first trainload of corn, Vega made her first appearance at Port Elevator and claimed this corn as her own [Dkt. No. 95 at 7 and Dkt. No. 101 at 9-10]. Port Elevator declined Vega's order to release the corn to a

-4-

buyer with whom she had contracted. [See Dkt. No. 95 at 7 and Dkt. No. 101 at 10].
Gutierrez subsequently contested Vega's claim both orally and in writing to Port
Elevator. [See Dkt. No. 95 at 7, Ex. C, as well as Elkins Dep. at 160-161].

Unable to resolve the conflicting claims of ownership in the corn, Port Elevator
advised the claimants that it would release the corn to them jointly or sell the remaining
corn at market prices and tender the sales proceeds to Vega and Gutierrez jointly. [See
Dkt. No. 95, Ex. C].

III.    Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable
inferences in the light most favorable to the non-moving party, "the pleadings,
depositions, answers to interrogatories, and admissions on file, together with the
Affidavits, if any, show that there is no genuine issue of material fact and that the
moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See
Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The party making a summary judgment
motion has the initial burden of informing the court of the basis for their motion and
identifying those portions of the pleadings and discovery documents which demonstrate
the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir. 1999). If the moving
party meets this burden, the non-movant then must designate specific facts showing
there is a genuine issue for trial to survive summary judgment. See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 252 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th
Cir. 1994).

IV.    Evidence of Agency Relationship and Breach of Contract

It is uncontroverted that Vega purchased corn from AGI and then instructed AGI
to send the corn to Port Elevator for storage. [See Dkt. No. 104, Ex. 16 ]. Craig Elkins
signed a "rate and service contract" in his capacity as a representative of Port Elevator,
and not in his individual capacity. The uncontroverted evidence is that a contract was
entered into between Port Elevator, Gutierrez and Puffelis who were acting on behalf of

-5-

Sysco and AGI, respectively. Further, it is uncontroverted that Sysco and Gutierrez held themselves out to Elkins as exercising custody of the corn as owners. [See Elkins Dep. at 84-88. See also Dkt. No. 95, Ex. D]. In her pleadings, Vega states that Gutierrez did not have any ownership interest in the corn nor did she give him authority to enter into a contract for the corn with Port Elevator. [See Dkt. No. 104, Ex. 16 ]. However, in her Declaration, she further states that she gave instructions to AGI to send the corn to Port Elevator for storage. Id.

Vega claims that Port Elevator was put on notice that she was the owner when the invoice number 0000001 was notarized by Maria Gonzalez, an employee of Port Elevator and Elkins' secretary. [See Dkt. No. 100. at 7] However, it is uncontroverted that Elkins had no personal knowledge of Vega's name being on any of the invoices which are in the summary judgment record. Elkins denies ever seeing the bills of lading and also notes that his secretary provided notary services which were not in connection with her employment with Port Elevator. [See Elkins Dep. at 183-87]. Vega's claim of notice is merely a conclusory allegation and as such is not competent summary judgment evidence. See Anderson, 477 U.S. at 249-50. If in fact and in law, Vega was the owner of the corn or had entered into an agency relationship with Gutierrez and/or Puffelis, there is no competent evidence to show that Elkins in his capacity as manager for Port Elevator knew of it at the time the contract was formed. As it cannot be shown that Elkins had any knowledge of Vega's claims, it is also the case that Port Elevator had no knowledge of Vega's purported ownership of the corn prior to or at the time that a contract was formed as between Elkins, as representative of Port Elevator, Puffelis and Gutierrez.

Further, the Court finds that Vega was in an undisclosed agency relationship with Gutierrez/Sysco. She states in her Original Answer and Counterclaim [Dkt. No. 56 also attached as Ex. G to Dkt. No. 95] that she "instructed Bersain Gutierrez to travel to Brownsville, Texas to oversee the transfer of Counter-Plaintiff's corn to Port Elevator for storage." Id. at 9. Despite this, Vega later states that she did not direct any "agent,

-6-

employee or representative [to] enter into a written contract with the elevator on my behalf." [Dkt. No. 103, Ex. 21].[5]

An agency relationship does not depend upon the express appointment or assent by the principal; rather, it may be implied from the conduct of the parties. Orozco v. Sander, 824 S.W.2d 555, 556 (Tex.1992). Whether a principal-agent relationship exists under established facts may be determined as a matter of law, based on the agreement between the parties, their words, and their conduct. Ross v. Texas One Partnership, 796 S.W.2d 206, 210 (Tex.App.–Dallas 1990), writ denied per curium, 806 S.W.2d 222 (Tex.1991); Mercedes-Benz of N. Amer., Inc. v. Dickenson, 720 S.W.2d 844, 858 (Tex.App.–Fort Worth 1986).

Regardless of what Vega did, or did not instruct Gutierrez and Puffelis to do vis-a- vis Port Elevator, the uncontroverted evidence is that Gutierrez and Puffelis held themselves out as owners of the corn when they entered into the contract with Port Elevator. "Where an agency agreement is undisclosed, a contract negotiated by the agent in the agent's own name but within the scope of the agent's authority is generally treated as a contract of principal. Therefore, the principal is ordinarily liable on the agreement to the third person with whom the agent has contracted." Agency, Section 213, Tx. Jur.3rd (2001). As discussed *supra*, the Court finds no competent evidence to support Vega's contention that her purported ownership interest was apparent to Port Elevator. However, even assuming her ownership interest was partially disclosed she would still be liable under the contract as, "[a] partially disclosed principal is also generally liable to the third-party with whom the authorized agent has contracted." Agency, Section 213, Tx. Jur.3rd (2001).

In her pleadings and in her Declaration, Vega states that she instructed AGI to send the corn to Port Elevator [See Dkt. No. 104, Ex. 16]. The record is silent as to what she expected Port Elevator to do with the corn. The uncontroverted evidence, however, is that Puffelis and Gutierrez did enter into a contract for storage of the corn.

---

[5]     The Court disregards Vega's attempts to modify her later pleadings, finding the moficiations were made in order to prevent the Court's finding of summary judgment. See 10A Wright, Miller & Kane, Federal Practice and Procedure § 2726 p. 448-450 (1998).

-7-

Further, the uncontroverted evidence is that Port Elevator was unaware of any ownership interest Vega may have had in the corn at the time this contract was formed. In summary, the Court finds that there is no material issue of fact on the formation and existence of the contract, and that Port Elevator has performed, and further that the contract has been breached by Defendants Gutierrez and Puffelis. Therefore the Court **GRANTS** Port Elevator's Motion for Summary Judgment.

As the Court finds a valid contract agreement as between Port Elevator and Defendants' Puffelis of AGI and Gutierrez of Sysco, and as the Court has also found that Elkins, as representative of Port Elevator, had no knowledge of Vega's purported interest in the corn either before or contemporaneous to the signing of the contract, the allegations in Vega's counterclaim are quickly disposed of. In her counterclaim, Vega alleges conversion, negligence, fraud and violations of the Texas Deceptive Trade Practices Act. [Dkt. No. 102 at 8-14]. Vega was a stranger to the contract. Port Elevator's contractual relationship and duty was with Puffelis and Gutierrez, not Vega. Further, because Port Elevator had no knowledge of any claim on the corn by Vega there is no evidence of conversion, fraud or violations of the Texas Deceptive Trade Practices Act.

As the Court has granted summary judgment on the issue of contracual liability against Port Elevator and Defendants Puffelis of AGI and Gutierrez of Sysco, Vega's counterclaim and motion for partial summary judgment are **DENIED**.[6]

## V.   Default Judgment is Appropriate Against Gutierrez and Sysco

Bersain Gutierrez was served on November 8, 1998. Gutierrez has never made an appearance in this action. The original summons and the return of service are on file with the Court and are also attached as exhibit "F" to Dkt. No. 95. Pursuant to Federal Rules of Civil Procedure 55 and 56, the Court **GRANTS** Default Judgment against Gutierrez and Sysco.

---

[6]    Vega may well have a cause of action against Puffelis /AGI and Gutierrez/Sysco, but there is no evidence in the record that supports her counterclaim against Port Elevator.

VI.   Port Elevator is Entitled to Reimbursement for Actual Damages

It is undisputed that contrary to the express terms of the contract, at no time during the period of the contract were one million bushels of corn deposited with Port Elevator. The Court therefore finds that the failure of Defendants' Puffelis and Gutierrez to deposit and withdraw one million bushels of corn within the contract period breached the contract and caused actual damages from the higher costs of unloading, storage, fumigation, turning, aeration, cracking, and loading out of the corn in the amount of $81,438.04 plus interest. [See Dkt. No. 55 at 5], and therefore the Court **GRANTS** Port Elevator's claim in the amount of $81,438.04 plus interest.

VII.   Port Elevator is Entitled to Reimbursement of Legal Expenses

As the Court has found that Vega's claims were groundless in fact and law, the Court **GRANTS** Port Elevator's request for reasonable and necessary attorneys' fees and court costs pursuant to the Texas Business and Commerce Code, Section 17.50(c) (Vernon 2001).[7] The Court also **GRANTS** interest pursuant to 28 U.S.C. § 1962.

Finally, the Court also finds that costs and fees are appropriate pursuant to 28 U.S.C. § 1967 as Vega has "multiplied the proceedings in (this) case unreasonably and vexatiously." In support of this conclusion, the Court first notes that it has found as a matter of law and fact that there is no basis for Vega's counterclaims.

Further the Court takes notice of the pattern of delay by Vega. First, Vega allowed thirteen months before first making an appearance in this action. Second, Vega waited almost three years after this action was filed before filing a counterclaim. Third, Vega has repeatedly failed to participate in discovery and has been unavailable to give deposition testimony. Fourth, notwithstanding the present action, Vega has filed

---

[7]   "On a finding by the Court that an action under this section was groundless in fact or law or brought in bad faith or for the purpose of harassment, the Court shall award to the Defendant reasonable and necessary attorney's fees and court costs." Texas Business and Commerce Code, Section 17.50(c), Vernon 2001. The Court also accepts Port Elevator's separate ground for attorney's fees: "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of claim and costs, if the claim is for: (1) rendered services; (2) performed labor; . . . (8) an oral or written contract." Texas Civil Practice and Remedies Code, Section 38.006, Vernon 2001.

two other actions in the State District Courts of Hidalgo County, Texas.[8]  Fifth, it was represented to the Court at the January pretrial conference that settlement was imminent and simply required Vega's signature.  The subsequent failure of Vega or her attorneys to notify Port Elevator of the status of the settlement required Port Elevator to prepare and file its Motion for Summary Judgment under the (mis)apprehension that no response would be forthcoming.  As a result, the Court finds that Port Elevator is entitled to "excess costs, expenses and attorneys' fees reasonably incurred" as a result of the conduct of Vega.  See 28 U.S.C. § 1967.

The Court is not persuaded that a fact issue on attorneys' fees is raised by the conclusory statements in the affidavit [Dkt. No. 101, Ex. 12] executed by William D. Mount, Jr., attorney for Vega, that the attorneys' fees are not reasonable.  However, the Court does not find that the explanation of costs and fees incurred by Port Elevator in John Skaggs' Affidavit [see Dkt. No. 95, Ex. B] is sufficient.  The Court therefore **ORDERS** Port Elevator to submit evidence that specifically details and explains the costs and attorneys' fees incurred on the prosecution of the breach of contract and in defense of the tort and the Texas Deceptive Trade Practices Act actions.

## VIII.  Conclusion

In summary, Port Elevator's Motion for Summary Judgment [Dkt. No. 95] is hereby **GRANTED** and Vega's Motion for Partial Summary Judgment [Dkt. No. 96] is **DENIED.**  Further, any other pending motions are **MOOT** as a result of this Order.  It is therefore

**ORDERED, ADJUDGED and DECREED** that Ivonne Soto Vega take nothing by reason of her actions against Port Elevator, Craig Elkins, and Southwest Grain.  It is further

---

[8]    See Cause No. C-2969-99-A; "Ivonne Soto Vega v. Port Elevator-Brownsville, L.C., Inc., AGI/Akron Group Inc., Sysco de Baja, Walter Puffelis, Galvan, III, Individually and d/b/a/ Port Elevator-Brownsville, L.C. and Southwest Grain Co. Inc., Bersain Gutierrez Zenteno, Individually and d/b/a Sysco de Baja"; 92nd District Court, Hidalgo County, Texas; and Cause No. C-723-01-B; "Ivonne Soto Vega v. Universal Surety of America, Port Elevator-Brownsville, L.C. and Southwest Grain Co., Inc.; 93rd District Court, Hidalgo County, Texas.

**ORDERED, ADJUDGED and DECREED** that Port Elevator recover economic damages for breach of contract in the total amount of $81, 438.04; and that such amount is to be paid by Bersain Gutierrez and Sysco de Baja S.A. de C.V., and Ivonne Soto Vega, jointly and severally. It is further

**ORDERED, ADJUDGED and DECREED** that Port Elevator, Craig Elkins, and Southwest Grain have judgment against Sysco de Baja S.A. de C.V., Bersain Gutierrez, and Ivonne Soto Vega for attorneys' fees. The Court does not find that the explanation of costs and fees incurred by Port Elevator in John Skaggs' Affidavit [see Dkt. No. 95, Ex. B] is sufficient. It is therefore

**ORDERED** that Port Elevator to submit an affidavit that specifically details and explains the costs and fees incurred. It is further

**ORDERED** that the sum recited above bears interest from the date of entry of this judgment at the statutory rate as provided by 28 U.S.C. § 1961.

The Clerk of the Court is directed to pay to Port Elevator all of those funds which are currently in the registry of this Court in partial satisfaction of the judgment rendered herein. It is further

**ORDERED** that Sysco de Baja S.A. de C.V., Bersain Gutierrez, and Ivonne Soto Vega are jointly and severally liable for any amounts not satisfied by the payment of the money in the registry of the Court to Port Elevator. Execution may issue on any such excess amount as provided by law.

Except as provided for in this Order, each of the Parties is discharged from any further obligation or liability as between or among themselves. The Court specifically rules that Port Elevator, Craig Elkins, and Southwest Grain are without fault in the circumstances relating to the contracting, storage, and disposal of the corn and money which are the subject of this action.

-11-

Further, this Court enters a permanent injunction restraining Sysco de Baja S.A. se C.V., Bersain Gutierrez, and Ivonne Soto Vega from instituting or prosecuting any proceeding in any state or federal district court affecting the property, instrument, or obligation involved in this interpleader action pursuant to 28 U.S.C. § 2361.

DONE at Brownsville, Texas, this 30th day of July 2002.

Hilda G. Tagle
United States District Judge

-12-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| PORT ELEVATOR - <br> BROWNSVILLE, L.C. AND <br> SOUTHWEST GRAIN CO., INC. <br><br> VS. <br><br> IVONNE SOTO VEGA, BERSAIN <br> GUTIERREZ, SYSCO DE BAJA, <br> S.A. DE C.V. AND WALTER <br> PUFFELIS, INDIVIDUALLY AND <br> D/B/A AGI AKRON GROUP, INC. <br><br> VS. <br><br> CRAIG ELKINS, INDIVIDUALLY <br> AND D/B/A PORT ELEVATOR- <br> BROWNSVILLE, L.C., AND <br> SOUTHWEST GRAIN CO. , INC. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> §      CIVIL NO. B-98-23 |

## ORDER GRANTING IVONNE SOTO VEGA'S MOTION FOR AN ACCOUNTING

On the _____ day of _____, 2003, came on to be heard **IVONNE SOTO VEGA'S** Motion for an Accounting.  The Court having heard the arguments of counsel and considered same, and being of the opinion that said Motion should be Granted, it is therefore,

**ORDERED** that **IVONNE SOTO VEGA'S** Motion for an Accounting be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that **PORT ELEVATOR** make a full accounting regarding the commodity sold as follows:

1.    the total amount of the commodity sold, in metric tons or other unit used by **PORT ELEVATOR** in its sale of the commodity;

2.    the price per unit sold;

3.  the total amount of money that was to be collected from the sale of the commodity;

4.  the total amount of money actually received from the sale of the commodity;

5.  a list of dates for each receipt of money from the sale of the commodity;

6.  the total amount of money yet to be collected from the sale of the commodity;

7.  a list of those who still owe money as a result of the sale of the commodity;

8.  a list of purchasers who acquired all or part of the commodity as a result of its sale;

9.  a list of dates for each and every sale regarding the commodity in question;

10. a detailed accounting of how the total amount of money collected from the sale of the commodity has been expended and/or held in reserve;

11. a detailed accounting of how the money yet to be received, if any, is to be expended or allocated; and

12. a list of any and all bank accounts, identified by name of financial institution, name of account holder, and account number, where part or all of the proceeds of the sale of the commodity in question have been or are currently being held and the amount held in the account(s) pertaining to the corn proceeds.

**SIGNED FOR ENTRY** on this _____ day of _____, 2003.


_____
J U D G E   P R E S I D I N G