IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 0 2 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| PORT ELEVATOR - BROWNSVILLE, L.C. AND SOUTHWEST GRAIN CO., INC. | § § § § | |
| VS. | § § | CIVIL NO. B-98-23 |
| IVONNE SOTO VEGA, BERSAIN GUTIERREZ, SYSCO DE BAJA, S.A. DE C.V. AND WALTER PUFFELIS, INDIVIDUALLY AND D/B/A AGI AKRON GROUP, INC. | § § § § § § § | JURY DEMANDED |
| VS. | § § | |
| CRAIG ELKINS, INDIVIDUALLY AND D/B/A PORT ELEVATOR-BROWNSVILLE, L.C., AND SOUTHWEST GRAIN CO. , INC. | § § § § § | |

**IVONNE SOTO VEGA'S MOTION FOR RECONSIDERATION
OF TRIAL COURT'S JULY 30, 2002 ORDER**

TO THE UNITED STATES DISTRICT COURT:

**IVONNE SOTO VEGA**, Defendant, Counter-Plaintiff and Third-Party Plaintiff (hereinafter **"MS. VEGA"**), moves for reconsideration of the trial court's Order dated July 30, 2002 and in support thereof shows:

I.

On July 30, 2002, the trial court entered an Order granting **PORT ELEVATOR-BROWNSVILLE, L.C.**, **SOUTHWEST GRAIN CO., INC.** and **CRAIG ELKINS'** Motion for Summary Judgment and denied **YVONNE SOTO VEGA'S** Motion for Partial Summary Judgment. See **Exhibit "1"**, July 30th Order. On August 9, 2002, **MS. VEGA** filed a Motion for New

Trial. On March 12, 2003, the trial court denied **MS. VEGA'S** Motion for New Trial. See **Exhibit "2"**, March 12th Order. In the March 12th Order, the trial court stated that a Motion for New Trial was not proper because there was no trial in the matter and thus, **MS. VEGA** could not bring her Motion pursuant to Rule 59(a). See **Exhibit "2"**, March 12th Order at p. 1. The trial court then recharacterized **MS. VEGA'S** Motion as a Motion to Alter or Amend Judgment pursuant to Rule 59(e). Id. The trial court concluded that since no judgment was ever entered or docketed that a Rule 59(e) motion was also inappropriate. See **Exhibit "2"**, March 12th Order at p. 2. The trial court stated at the close of its Order that it would enter a Rule 58 judgment closing the case after the attorney's fees issue was resolved. See **Exhibit "2"**, March 12th Order at p. 4.

## II.

By a plain reading of the trial court's March 12, 2003 Order, the trial court did not consider the merits of **MS. VEGA'S** Motion for New Trial since the Motion was denied for procedural reasons. A motion for reconsideration is a proper vehicle for reconsidering a trial court's grant or denial of a party's motion for summary judgment. See <u>School Dist. No. 1J, Multnomah County v. AC and S, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993) (reconsideration is appropriate if the district court committed clear error or the initial decision was manifestly unjust). **MS. VEGA** requests that the trial court reconsider its July 30, 2002 Order granting **PORT**

ELEVATOR-BROWNSVILLE, L.C., **SOUTHWEST GRAIN CO., INC.** and **CRAIG ELKINS'** Motion for Summary Judgment and denying **MS. VEGA'S** Motion for Partial Summary Judgment and vacate the Order to the extent that the Order grants summary judgment for **PORT ELEVATOR-BROWNSVILLE, L.C., SOUTHWEST GRAIN CO., INC.** and **CRAIG ELKINS** and denies partial summary judgment for **YVONNE VEGA.** **MS. VEGA** will show below that the trial court's Order is manifestly unjust and clearly in error.

### III.

The July 30, 2002 Order stated that **MS. VEGA** was liable to **PORT ELEVATOR-BROWNSVILLE, L.C.** (hereinafter "PORT ELEVATOR") for breach of contract in the amount of $81,438.04. The Order said that **MS. VEGA, BERSAIN GUTIERREZ** and **SYSCO DE BAJA S.A. DE C.V.** were jointly and severely liable. **MS. VEGA** would show that there is no evidence that she breached any written contract with **PORT ELEVATOR.**

### IV.

The trial court found **MS. VEGA** liable under the written contract by holding that **BERSAIN GUTIERREZ** was **MS. VEGA'S** undisclosed agent and that he executed the contract on her behalf.[1] See **Exhibit "1"**, July 30th Order at p. 6, 7. There is no evidence of an undisclosed agency relationship. The trial court's finding

---

[1]It is undisputed that **MS. VEGA** did not sign the contract.

is solely based upon a pleading filed on January 22, 2001 and called "Defendant **IVONNE SOTO VEGA'S** Original Answer and Counterclaim" which has been amended.   The trial court clearly erred in finding agency strictly on an <u>amended pleading</u>.

### V.

Pleadings are not evidence.   There is no evidence in the record of an undisclosed agency relationship.   The trial court cited no evidence in the record to support agency because there is none.

### VI.

As stated above, there is no evidence in the record of an undisclosed agency.   There is no written contract between **MS. VEGA** and **BERSAIN GUTIERREZ**.   There is no power of attorney given by **MS. VEGA** to **MR. GUTIERREZ**.   There is no evidence of an implied contract between **MS. VEGA** and **MR. GUTIERREZ**.   In fact, the evidence of an agency contract/agreement is to the contrary.

### VII.

The trial court clearly erred in finding that there was an undisclosed agency as a matter of law because **MS. VEGA** disputed the contention by her Declaration which is in evidence, stating that there was no agency.   See **Exhibit "3"**, additional copy of **MS. VEGA'S** Declaration.   All parties requested a jury trial as reflected by the pleadings on file wherein a jury trial was demanded.   The trial court, in making its determination, has acted

as a factfinder, which is not allowed under the summary judgment rule. See Fed. R. Civ. P. 56. The question of agency is generally one of fact. Horne v. Charter Nat'l Ins. Co., 611 S.W.2d 182, 184 (Tex. Civ. App.--Fort Worth 1981, writ ref'd n.r.e.). If the facts are uncontroverted or otherwise established, the existence of an agency relationship is a pure question of law. See American Int'l Trading Corp. v. Petroleous Mexicanos, 835 F.2d 536, 539 (5th Cir. 1987) (applying Texas law). **MS. VEGA'S** Declaration controverted any assertion of agency and the trial court's finding of an undisclosed agency fails[2]. See **Exhibit "3"**, **MS. VEGA'S** Declaration.

## VIII.

The two cases cited by the trial court, Ross v. Texas One Partnership, 796 S.W.2d 206, 210 (Tex. App.--Dallas 1990), writ denied per curium, 806 S.W.2d 222 (Tex. 1991) and Mercedes-Benz of N. America, Inc. v. Dickenson, 720 S.W.2d 844, 858 (Tex. App.--Fort Worth 1986), support **MS. VEGA'S** position that agency status is generally a fact issue. In Ross, the trial court was able to decide the agency issue only because the facts were not disputed, making the agency issue a pure question of law. Ross, 796 S.W.2d at 211. In Ross, there was a written contract which established an

---

[2]The only evidence in the record is that **MR. GUTIERREZ** was not an undisclosed agent of **MS. VEGA'S**. Thus, as a pure question of law, the trial court should have held there was no agency relationship. If there is some evidence of agency which **MS. VEGA** denies, then the agency issue becomes a question of fact to be decided by a jury. It is apparent that there is some evidence of no agency. i.e. **MS. VEGA'S** Declaration.

independent contractor relationship between Texas One and the security company. Id.  The Dickenson case also involved a pure question of law on the agency issue because the facts were undisputed on the agency issue that determined whether there was indemnity or not. Dickenson, 720 S.W.2d at 858.  The law in Texas is clear that if there are contested facts as to the existence of an agency relationship that the question of agency is one of fact. The trial court misapplied Texas law in making its decision on agency. **MS. VEGA** requests that the trial court reconsider its decision.

IX.

What is the scope of the undisclosed agency that the trial court found?  The trial court does not answer this question, but apparently holds that it was great enough to bind **MS. VEGA** to a contract not signed by her.  Where agency is found as by the trial court in this case, the scope of an agent's authority is frequently a question of fact.  See City Grocery Co. v. Moore Grocery Co., 135 S.W.2d 151 (Tex. Civ. App. 1939); General Shoe Corp. v. Hall, 123 S.W.2d 721 (Tex. Civ. App. 1938).  Because scope is generally a fact question, the trial court erred in deciding the issue and **MS. VEGA** requests that the trial court reconsider its decision.

X.

The trial court apparently found agency based upon a statement in **MS. VEGA'S** Original Answer and Counterclaim which has been

amended.  The statement of the trial court relied upon was that **MS. VEGA** "instructed **BERSAIN GUTIERREZ** to travel to Brownsville, Texas to oversee the transfer of Counter-Plaintiff's corn to **PORT ELEVATOR** for storage".  Even if the statement could be given any weight, where in the statement does **MS. VEGA** say that she was giving **MR. GUTIERREZ** any authority to contract with **PORT ELEVATOR**? Where does the statement say that she is allowing **MR. GUTIERREZ** to bind her to the deposit with **PORT ELEVATOR** of at least 1 million bushels?  Where does the statement say that she authorized **MR. GUTIERREZ** to enter into a special rate and service contract?  The amended statement is not broad enough to support an undisclosed agency finding and the July 30th Order to the extent the Order grants the Motion for Summary Judgment should be vacated.

### XI.

The trial court, to make its agency finding, has ignored the statement in the two paragraphs that follow in the pleading that was amended that reads, "Neither **MR. GUTIERREZ** or **SYSCO DE BAJA, S.A. DE C.V.** had any authority from Counter-Plaintiff to sell Counter-Plaintiff's corn or enter into any contracts concerning storage without Counter-Plaintiff's expressed authority."  This statement should have put the agency issue to rest when considering the totality of the amended pleading.

### XII.

The trial court states in footnote 5 of the July 30th Order

that it is disregarding **MS. VEGA'S** attempts "to modify her later pleadings, finding the modifications were made in order to prevent the Court's finding of summary judgment." By making this finding, isn't the trial court picking and choosing what it wants to believe?  Isn't this the job of a factfinder?  **MS. VEGA** asserts that it is and requests that the trial court reconsider its July 30th Order and upon reconsideration, vacate the July 30th Order to the extent the Order grants the Motion for Summary Judgment.

### XIII.

The trial court's cite to § 2726, p. 448-450 (1998) of <u>Wright, Miller, & Kane</u> to support its finding that it can disregard pleadings modifications is curious because the section discusses a nonmovant in a summary judgment context giving an affidavit that contradicts earlier deposition testimony or a discovery answer <u>not</u> a nonmovant who amends a pleading.  Pleadings are not evidence and leave shall be freely given to amend when justice so requires. See Fed. R. Civ. P. 15(a).  The trial court granted permission to amend.

### XIV.

The rationale given by the treatise for allowing in some select instances the trial court to reject the later affidavit and accept only the earlier evidence is that the witness is generally interested and does not have a satisfactory explanation for the change.  **MS. VEGA'S** pleadings were not drafted by her, but by her

lawyers.   The amendments were not done by her, but on her behalf. When the January 22, 2001 pleading was discussed with her in July 2002, she pointed out errors and cleared up some of her lawyers' questions with the result being the amended pleading.  See **Exhibit "4"**, Declaration of William D. Mount, Jr.  The pleading amendment was necessary to conform to the facts of the case and not for ulterior motives.

### XV.

Since **MS. VEGA** has already proven that there was no undisclosed agency relationship and she is not liable for breach of a written contract, her affirmative claims for relief should not have been dismissed.  The trial court agreed with **MS. VEGA** in its Order that there was no dispute that **MS. VEGA** purchased 5,000 metric tons of corn.  July 30th Order at p. 3.  Further, why then are the Counter-Defendants not liable for conversion, fraud, DTPA violations and negligence?

### XVI.

Further, **MR. ELKINS'** purported knowledge on ownership or lack thereof is not an element necessary for **MS. VEGA** to recover on her claims.

### XVII.

There is evidence to support **MS. VEGA'S** claims and the trial court should vacate the July 30th Order to the extent it dismisses her claims.

## XVIII.

The trial court erred in denying **MS. VEGA'S** Motion for Partial Summary Judgment. **MS. VEGA** has proven as a matter of law that she is the owner of the corn. The trial court concurred. See **Exhibit "1"**, July 30th Order at p. 3. She is entitled to the sales proceeds of the corn. The trial court should reconsider its Order to the extent it denies **MS. VEGA'S** Motion for Partial Summary Judgment and grant the Motion.

## XIX.

The trial court erred in finding that **PORT ELEVATOR, CRAIG ELKINS** and **SOUTHWEST GRAIN CO., INC.** (Movants) were entitled to attorney's fees and costs from **MS. VEGA.** See **Exhibit "1"**, July 30th Order at p. 9-11. Because **MS. VEGA** has shown that she is not liable under the written contract and that she is entitled to affirmative relief, **PORT ELEVATOR'S** request for fees and costs is premature.

## XX.

There was no written contract between **MS. VEGA** and **PORT ELEVATOR.** Movants are not entitled to recovery under Section 38.006 of the Texas Civil Practice & Remedies Code. **MS. VEGA** has shown that she has a valid DTPA claim. Movants are not entitled to recovery under Section 17.50(c) of the Texas Business & Commerce Code. **MS. VEGA** has not delayed this case as the trial court

asserts.   It was **PORT ELEVATOR** who failed to properly serve **MS. VEGA**, resulting in the trial court's dismissal of the action without prejudice to refile.  **MS. VEGA** was under no obligation to file a counterclaim any earlier than she did.  **MS. VEGA** did participate in the discovery process.  She answered discovery and sat for deposition (relating to the Motion to Dismiss).  The trial court complains about two other actions filed by **MS. VEGA** in state court.   The case with Cause No. C-723-01-B is a suit on a bond against the bonding company for **PORT ELEVATOR'S** negligence in storing the corn and is not necessarily identical to this case.  The other state court lawsuit was filed to protect **MS. VEGA'S** position in the event that she ultimately prevailed on the dismissal of this suit.  The trial court complains about **MS. VEGA** refusing to take **PORT ELEVATOR'S** settlement offer.    No representation was made at the pretrial conference that **MS. VEGA** had agreed to the settlement.  The representation that was made to the trial court was that a settlement offer had been made and her attorneys would recommend to her that she accept it given the uncertainty of her legal case in Mexico D.F.  **MS. VEGA** elected not to take the settlement.  **PORT ELEVATOR**, through its attorney, was advised of the rejection.  **MS. VEGA** asserts that there is no basis for awarding of attorney's fees under 28 U.S.C. § 1967.

## XXI.

The trial court has failed to identify the "excess costs,

expenses and attorney's fees reasonably incurred" by Movants. Movants could have filed their Motion for Summary Judgment years earlier, thereby saving costs and fees. Also, Movants had **MS. VEGA'S** lawyers fly out to San Diego for the deposition of **BERSAIN GUTIERREZ**. **MR. GUTIERREZ** was a no show. Movants never subpoenaed him. All parties' costs and fees were driven up thousands of dollars due to Movants' conduct.

## XXII.

The trial court states in the July 30th Order that the record is "silent as to what she expected **PORT ELEVATOR** to do with the corn". See **Exhibit "1"**, July 30th Order at p. 7. The record reflects that **MS. VEGA** expected the corn to be stored by the Elevator until she found a buyer. The record reflects that she found a buyer, Enrique Villarreal, and that both **MS. VEGA** and Mr. Villarreal tried to get the corn released beginning in September, 1997 without success.

## XXIII.

The trial court found that **PORT ELEVATOR, CRAIG ELKINS**, and **SOUTHWEST GRAIN** were entitled to attorney's fees from **SYSCO DE BAJA, S.A. DE C.V., BERSAIN GUTIERREZ** and **YVONNE SOTO VEGA**. See **Exhibit "1"**, July 30th Order at p. 11. This finding makes the three earlier-mentioned parties jointly and severely liable for attorney's fees. The trial court clearly erred in not segregating the attorney's fees award. See <u>Stewart Title Guar. Co. v.</u>

Sterling, 822 S.W.2d 1, 10 (Tex. 1991). Fees should be broken down and allocated to each Defendant. The trial court erred in not segregating attorney's fees among Defendants. As an example, **MS. VEGA** would not be liable for the work done by **PORT ELEVATOR** for its research regarding possible claims against **MR. GUTIERREZ** and for service of **MR. GUTIERREZ**. Further, **MS. VEGA** would not be liable for **PORT ELEVATOR'S** work done to obtain a default against **MR. GUTIERREZ**.

### XXIV.

Even if there had been a segregation of attorney's fees, the trial court clearly erred in awarding fees because the determination of reasonable attorney's fees is a question for the trier of fact. See <u>Stewart Title Guar. Co.</u>, 822 S.W.2d at p. 12, citing <u>Gonzalez v. Nielson</u>, 770 S.W.2d 99, 102 (Tex. App. -- Corpus Christi 1989, writ denied); <u>Bocquet v. Herring</u>, 972 S.W.2d 19, 21 (Tex. 1998)(the reasonableness of attorney's fees, the recovery of which is authorized by ...statute, is a question of fact for the jury's determination). Assuming that the trial court's rulings on liability, economic damages and entitlement to fees are correct which **MS. VEGA** expressly denies, the trial court would have been required to hold a jury trial on the attorney's fees issue (amount, reasonableness and necessity) given the issue was contested by **MS. VEGA**.

## XXV.

The trial court clearly erred in determining that **PORT ELEVATOR'S** economic damages for breach of contract were in the total amount of $81,438.04. See **Exhibit "1"**, July 30th Order at p. 11. The only evidence presented on this issue was the conclusory affidavit of **PORT ELEVATOR'S** manager, **CRAIG ELKINS**, who said the **ELEVATOR'S** damages were $81,438.04. The **ELEVATOR** did not produce an invoice or statement itemizing charges, let alone any document showing how the damage figure was calculated. The figure from the interested witness is conclusory and should have not been accepted as fact without documentation or verification. Further, **MR. ELKINS** represented to **MS. VEGA'S** Brownsville counsel, Guillermo Vega, Jr., through an invoice dated November 13, 1997, that storage fees were $19,574.20. See Exhibit "15" to **CRAIG ELKINS'** deposition. How then do the damages become over $80,000.00? When **MR. ELKINS** was asked at his deposition for a figure on damages, he gave a figure of $60,000.00. See **ELKINS'** deposition at p. 215. He gave no support for the figure. _Id_. So was the **ELEVATOR'S** alleged damages $19,574.20, $60,000.00 or $81,438.04? **MS. VEGA** submits that the issue is one for the jury. This issue was contested by **MS. VEGA** and summary judgment was not proper.

## XXVI.

The trial court clearly erred in finding liability as to **SYSCO**

DE BAJA, S.A. DE C.V. for the reason that **SYSCO DE BAJA, S.A. DE C.V.** was not even served with summons in this case.   See **Exhibit "E"** to **PORT ELEVATOR, SOUTHWEST GRAIN** and **CRAIG ELKINS'** Motion for Summary Judgment.   The trial court cannot enter an Order against a party that was not even served with summons.   There was no jurisdiction.

### XXVII.

The document that **MR. GUTIERREZ** was allegedly served with was the Complaint in Interpleader filed with the trial court on February 11, 1998.  **MR. GUTIERREZ** was allegedly not served until November 8, 1998 with the document.   See **Exhibit "E"** to **PORT ELEVATOR, SOUTHWEST GRAIN** and **CRAIG ELKINS'** Motion for Summary Judgment.   The record reflects that **MR. GUTIERREZ** was not served with any subsequent complaints.   The Complaint in Interpleader solely requested interpleader relief.   There was no cause of action alleged for breach of contract against **MR. GUTIERREZ** or any other party.  **PORT ELEVATOR** specifically prayed that the trial court "adjudicate the ownership of the corn, or the value thereof; and if raised by Defendants that the court determine that Plaintiff is without fault in the circumstances related to the contracting, storage and disposal of the corn, and money which is the subject of this action."   The trial court cannot hold **BERSAIN GUTIERREZ** and **SYSCO DE BAJA, S.A. DE C.V.** liable for breach of contract damages in the amount of $81,438.04 for a claim not plead.   The July 30th

Order to the extent it grants summary judgment must be vacated.

### XXVIII.

The trial court clearly erred in directing that the clerk of the trial court pay **PORT ELEVATOR** all the funds which are currently in the registry of the court "in partial satisfaction of the Judgment rendered". See **Exhibit "1"**, July 30th Order at p. 11. **PORT ELEVATOR** admitted in its Second Amended Complaint which was served upon **MS. VEGA'S** counsel on December 21, 2000 that **PORT ELEVATOR** is still holding money from the sale of the commodity. Specifically at paragraph V, **PORT ELEVATOR** states that $76,000.00 has been tendered to the registry of the trial court and that **PORT ELEVATOR** "is still in possession of cash received from the sale of commodity in excess of said amount". **PORT ELEVATOR'S** own admission is that it is holding proceeds from the sale of the corn that it did not deposit into the registry of the trial court and there must be an accounting of these funds. The trial court's ruling not only allows **PORT ELEVATOR** to keep money from the proceeds of the sale that it is currently holding but also the funds currently on deposit with the registry of the court. Clearly, this is a double recovery, the trial court erred and the order to pay the funds in registry to **PORT ELEVATOR** should be set aside.

### XXIX.

The trial court clearly erred in finding that **MS. VEGA** was an

undisclosed agent because **PORT ELEVATOR**, **SOUTHWEST GRAIN** and **CRAIG ELKINS** failed to plead this theory of liability. See **Exhibit "1"**, July 30th Order at p. 6; Second Amended Complaint.

### XXX.

The trial court finds that **MR. ELKINS** had "no knowledge" of **MS. VEGA'S** claim to the corn and therefore, the **ELEVATOR** is not liable. In **MR. ELKINS'** affidavit, he claims to not have known about **MS. VEGA**. However, **MS. VEGA** produced as summary judgment evidence a letter from an **AGI** representative who **MR. ELKINS** claimed signed the special rate and service contract that said he sold 4,236 metric tons of the approximate 5,000 metric tons of corn to **MS. VEGA**. See Exhibit "9" to **MS. VEGA'S** Amended Response to Motion for Summary Judgment. This letter certainly calls into question the authenticity of the special rate and service contract and what the **AGI** representative told **MR. ELKINS** about ownership. Further, **MS. VEGA** provided as summary judgment evidence Mr. Villarreal's deposition. See Exhibit "2" to **MS. VEGA'S** Amended Response to Motion for Summary Judgment. He at p. 31 and 32 testified that **MR. ELKINS** should have reviewed the invoices and the certificates of origin, weight and phyto sanitary analysis at the times the corn were delivered to the **ELEVATOR**. At p. 32, this expert on the commodity business testified this was the standard practice in the industry for an elevator that was receiving corn. At p. 31, he

testified that the corn could not be moved without invoices.  The
invoices showed **MS. VEGA** owned the corn.  Given the evidence
presented by **MS. VEGA**, there was certainly a disputed issue as to
what **MR. ELKINS** knew or didn't know about who owned the corn.  The
truthfulness of his affidavit is in question.

### XXXI.

There are a number of cases that say that ignorance will not
let a defendant off the hook.  See <u>San Antonio & A.P. Ry. Co. v.
Sehorn</u>, 127 S.W.2d 246, 247 (Tex. Civ. App. 1910) ("means of
knowledge, with the duty of using them, are deemed equivalent to
knowledge itself, and passive good faith will not serve to excuse
willful ignorance"); <u>Walker v. Caviness</u>, 256 S.W.2d 880, 883 (Tex.
Civ. App.--Texarkana 1953, no writ) ("As a general rule, a factor
or commission merchant who receives property from his principal,
sells it under the latter's instructions, and pays him the proceeds
of the sale is guilty of a conversion if his principal has no title
thereto or right to sell the property; and the factor may not
escape liability to the true owner for the value of the property by
claiming that he acted in good faith and in ignorance of his
principal's want of title"); <u>St. Louis Southwestern Ry. Co. of
Texas v. Freles</u>, 166 S.W. 91 (Tex. Civ. App.--Austin 1914, writ
ref'd) (ignorance of probable danger from an act or omission is not
necessarily an excuse).

## XXXII.

Also noteworthy is Section 14.010(c) of the Texas Agriculture Code which states that a warehouseman is liable for damages for loss of a commodity caused by the warehouseman's failure to exercise the care that a reasonably prudent person would exercise in regard to the commodity under similar circumstances.  As the evidence produced by **MS. VEGA** establishes, a reasonably prudent warehouseman could have established ownership at the outset.  The invoices, letter of credit and the **AGI** representative all establish the same conclusion which is **MS. VEGA** owned the corn.  The **ELEVATOR** had a duty under the Texas Agriculture Code not to release it to third parties.

## XXXIII.

The trial court erred in determining that **MS. VEGA** was not cooperative as far as sitting for a deposition.  A number of deposition dates were provided, but opposing counsel elected not to utilize them.  See **Exhibit "5"**, Declaration of William D. Mount, Jr.

For the above reasons, **MS. VEGA** requests that the trial court reconsider its Order of July 30, 2002, vacate the portion of the Order Granting Movant's Motion for Summary Judgment, deny Movant's Motion for Summary Judgment, vacate the portion of the Order denying **MS. VEGA'S** Motion for Partial Summary Judgment and grant **MS. VEGA'S** Motion for Partial Summary Judgment and grant such other

and further relief which **MS. VEGA** may justly be entitled.

> Respectfully submitted,
>
> DALE & KLEIN, L.L.P.
> 6301 N. 10th St.
> McAllen, Texas 78504
> Tel. No. (956) 687-8700
> Fax. No. (956) 687-2416
>
> *Roy Dale by Bill Mount with permission*
>
> ROY S. DALE
> State Bar No. 05326700
> Federal I.D. No. 1184
> WILLIAM D. MOUNT, JR.
> State Bar No. 14602950
> Federal I.D. No. 14992
> ATTORNEYS FOR DEFENDANT, COUNTER-
> PLAINTIFF AND THIRD-PARTY PLAINTIFF
> IVONNE SOTO VEGA

### CERTIFICATE OF CONSULTATION

Attorney for Movant has conferred with attorney for Respondents and Respondents' attorney has represented that she is opposed to the motion.

WILLIAM D. MOUNT, JR.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the above and foregoing document has been forwarded to counsel of record, to wit:

John Skaggs
Lynse Larance
SKAGGS & GONZALEZ, L.L.P.
710 Laurel
P.O. Drawer 2285
McAllen, Texas 78502-2285

**VIA CERTIFIED MAIL/RRR** on this the 30TH day of January, 2004.

WILLIAM D. MOUNT, JR.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUL 3 0 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

PORT ELEVATOR BROWNSVILLE, L.C.  §
and SOUTHWEST GRAIN CO., INC.    §
                                 §
PLAINTIFF(S),                    §
                                 §
v.                               §    CIVIL ACTION NO. B-98-23
                                 §
IVONNE SOTO VEGA, ET AL,         §
                                 §
        DEFENDANT(S).            §

## ORDER

BE IT REMEMBERED that on July 30, 2002, the Court considered Plaintiff in Interpleader's and Cross Defendant's Motion for Summary Judgment and Plaintiff in Interpleader's Motion for Default Judgment [Dkt. No. 95], Defendant Ivonne Soto Vega's Motion for Partial Summary Judgment [Dkt. Nos. 96 and 97], Port Elevator's Response [Dkt. No. 98], Defendant Ivonne Soto Vega's Response and Amended Response [Dkt. Nos. 100 and 101], Defendant Ivonne Soto Vega's Motion to File First Amended Answer and First Amended Counterclaim [Dkt. No. 102], as well as Defendant Ivonne Soto Vega's Supplemental Amended Response and Supplement to Motion for Partial Summary Judgment [Dkt. Nos. 103 and 104]. Initially, the Court **GRANTS** without comment Defendant Ivonne Soto Vega's Motion to File First Amended Answer and First Amended Counterclaim [Dkt. No. 102]. Next, for the reasons that follow, the Court **GRANTS** Plaintiff in Interpleader and Cross Defendant's Motion for Summary Judgment and Plaintiff in Interpleader's Motion for Default Judgment [Dkt. No. 95] and **DENIES** Defendant Ivonne Soto Vega's Motion for Partial Summary Judgment [Dkt. Nos. 96 and 97].

I.    Background and Procedural History

This is a case about a contract for the storage and delivery of a shipment of corn. In three separate purchases on October 25, 1996, November 12, 1996 and



EXHIBIT

November 13, 1996, Ivonne Soto Vega purchased over 5,000 metric tons of corn from AGI/Akron Group, Inc. ("AGI"). On October 31st, 1996, Port Elevator, a grain elevator in Brownsville, Texas, Bersain Gutierrez ("Gutierrez") of Sysco de Baja S.A. de C.V. (Sysco") and Walter Puffelis ("Puffelis") of AGI, respectively entered into a "rate and service contract" for unloading the rail cars and subsequent handling and storage of the corn [Id. at 63-64 and 71-72. See also Dkt. No. 95, Ex. D ("rate and service contract")]. Three shipments of corn in excess of 5,000 metric tons were delivered to Port Elevator, by Gutierrez/Sysco and Puffelis/AGI in 1996. Craig Elkins, in his capacity as elevator manager took delivery of the corn for Port Elevator.

During the course of the next year, Port Elevator released in excess of 3,000 metric tons of corn, pursuant to the written instructions of Gutierrez. Less than a year after Port Elevator's receipt of the first trainload of corn, Vega appeared and claimed the corn that was the subject of this contract as her own. Port Elevator declined her order to release any corn to her.

On February 11, 1998 Port Elevator filed its original complaint, alleging that Defendants breached the terms of this contract by failing to meet the minimum corn deposit amount and also interpleading disputed funds. [Dkt. No. 1]. Jurisdiction was invoked based on diversity of the Parties and an amount in controversy over $75,000.00. Id. The appropriate waivers of summons were tendered to Vega and Gutierrez thereafter. After the tender of disputed funds to this Court,[1] Vega and Gutierrez ceased making demands for the proceeds to Port Elevator. Although Gutierrez was served with citation on November 8, 1998, he has never appeared in this action to demand payment. Vega made an appearance after the receipt of the notification of interpleader and the tender of waiver of summons. Port Elevator filed its Second Amended Complaint [Dkt. No. 55] in January, 2001. Also in January, 2001, Vega answered and asserted her counterclaim [Dkt. No. 56]. In her counterclaim, Vega alleged negligence, conversion, fraud and violations of the Texas Deceptive Trade Practice Act. [See Dkt. No. 55 at 10-13].

---

[1]     This amount totaled $76,000.00.

-2-

In its motion for summary judgment, Port Elevator asserts that Sysco was the contracting party in this action, not Vega. Further, Port Elevator asserts that Sysco and Gutierrez have been cited to appear in this action, but have defaulted in all respects. Regarding Vega's claims, Port Elevator argues that there is no competent summary judgment evidence to support any of Vega's claims. Vega's motion for partial summary judgment seeks, among other things, a declaration that she is the true owner of the corn and therefore she is owed the interpleaded funds. The Court will now address these, and any other pending motions, in turn.

II.   Undisputed Facts

In three separate transactions, Vega purchased over 5,000 metric tons of corn from Puffelis a representative of AGI [Dkt. No. 56 at 8; Dkt. No. 96 at 6. See also Dkt. No. 96, Ex. 3, 4, 5 ("invoices")].[2] She instructed AGI to send the corn to Port Elevator in Brownsville, Texas for storage.[3] [Dkt. No. 104, Ex. 16 "Declaration"]. In 1996, this corn was delivered in three shipments to Port Elevator by Gutierrez who does business as Sysco and Puffelis representing AGI. [See Dkt. No. 95, Ex. A ("Elkins Deposition") at 62-64, 77 and 78].[4]

---

[2]   Although there is a factual dispute regarding the notarizing of the first two invoices, this does not raise a material fact issue. [See Dkt. No. 96, Ex. 3 and 4]. The invoices list the seller as AGI and the purchaser as Vega. Below the signature line on each of the three invoices submitted as summary judgment evidence is typewritten: "Mr. Bersain Gutierrez or Mrs. Ivonne Soto Vega." On invoice 0000001, there is a signature on the signature line. Below the signature line is typewritten: "This notarization is to authenticate that the above signature is that of Mr. Bersain Gutierrez." Below this is the date of October 30, 1996, and the signature and seal of a notary public, Maria Gonzalez an employee of Port Elevator. [See Dkt. No. 101, Ex. 11 ("Gonzalez Deposition"). Ms. Gonzalez states that she would not have notarized the invoice if it contained the additional language "or Ivonne Soto Vega." Id. at 74-77. There does not appear to be any dispute, however, that AGI sold the corn to Vega.

[3]   Southwest Grain Co. is the parent company of Port Elevator. [See Dkt. No. 95, Ex. A at 18-21].

[4]   The Elkins Deposition is also offered as an exhibit by Vega to her own motion for summary judgment. [See Dkt. No. 96].

-3-

Elkins, on behalf of Port Elevator, entered into a "rate and service contract" for unloading the rail cars and subsequent handling and storage of the corn [Id. at 63-64 and 71-72. See also Dkt. No. 95, Ex. D.] In addition to Elkins acting as the representative of Port Elevator, the other signators to the contract were Gutierrez/, and Puffelis/AGI. [See Dkt. No. 95, Ex. D]. The contract required that the minimum quantity of corn to be deposited with Port Elevator was one million bushels. [See Dkt. No. 95, Ex. D]. In consideration for the storage of this amount of corn, Port Elevator offered a reduced rate on the storage and handling of the corn. [See Elkins Dep. at 66-68]. All deposits were to be made by Puffelis/AGI, and all withdrawals were to be made by Gutierrez/Sysco. Id. All deposits and withdrawals were to occur no later than December 31, 1996.

Based on representations made by Puffelis and Gutierrez prior to and contemporaneous with the signing of the contract, Elkins learned that the corn had been sold by Loren Walters of CSC, a subdivision of Pillsbury, to Puffelis/AGI who then sold the corn to Gutierrez/Sysco. [See Elkins Dep. at 82-84 and 92-94]. The terms of the contract specified that delivery of the corn was to be done only upon the written instructions of "Sysco de Baja S.A. de C.V. and signed by Bersain Gutierrez." [See Dkt. No. 95, Ex. D]. Over the course of the next year, Port Elevator released in excess of 3,000 metric tons of corn pursuant to the written instructions of Gutierrez. [See Elkins Dep. at 86-106]. The last release of corn at Gutierrez' request was October 31, 1997. Id. at 90. At no time during the period of the contract were one million bushels of corn deposited with Port Elevator and further, Gutierrez failed to pay the amounts owed under the contract. [See Elkins Dep. at 108-113]. The Defendants' failure to deposit and withdraw one million bushels of corn within the contract period caused Port Elevator to incur actual damages from the higher costs of unloading, storage, fumigation, turning, aeration, cracking, and loading out of the corn in the amount of $81,438.04 plus interest. [See Dkt. No. 55 at 5].

Less than a year after the receipt of the first trainload of corn, Vega made her first appearance at Port Elevator and claimed this corn as her own [Dkt. No. 95 at 7 and Dkt. No. 101 at 9-10]. Port Elevator declined Vega's order to release the corn to a

buyer with whom she had contracted. [See Dkt. No. 95 at 7 and Dkt. No. 101 at 10].
Gutierrez subsequently contested Vega's claim both orally and in writing to Port
Elevator. [See Dkt. No. 95 at 7, Ex. C, as well as Elkins Dep. at 160-161].

Unable to resolve the conflicting claims of ownership in the corn, Port Elevator
advised the claimants that it would release the corn to them jointly or sell the remaining
corn at market prices and tender the sales proceeds to Vega and Gutierrez jointly. [See
Dkt. No. 95, Ex. C].

III.    Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable
inferences in the light most favorable to the non-moving party, "the pleadings,
depositions, answers to interrogatories, and admissions on file, together with the
Affidavits, if any, show that there is no genuine issue of material fact and that the
moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See
Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The party making a summary judgment
motion has the initial burden of informing the court of the basis for their motion and
identifying those portions of the pleadings and discovery documents which demonstrate
the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir. 1999). If the moving
party meets this burden, the non-movant then must designate specific facts showing
there is a genuine issue for trial to survive summary judgment. See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 252 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th
Cir. 1994).

IV.    Evidence of Agency Relationship and Breach of Contract

It is uncontroverted that Vega purchased corn from AGI and then instructed AGI
to send the corn to Port Elevator for storage. [See Dkt. No. 104, Ex. 16 ]. Craig Elkins
signed a "rate and service contract" in his capacity as a representative of Port Elevator,
and not in his individual capacity. The uncontroverted evidence is that a contract was
entered into between Port Elevator, Gutierrez and Puffelis who were acting on behalf of

-5-

Sysco and AGI, respectively. Further, it is uncontroverted that Sysco and Gutierrez held themselves out to Elkins as exercising custody of the corn as owners. [See Elkins Dep. at 84-88. See also Dkt. No. 95, Ex. D]. In her pleadings, Vega states that Gutierrez did not have any ownership interest in the corn nor did she give him authority to enter into a contract for the corn with Port Elevator. [See Dkt. No. 104, Ex. 16 ]. However, in her Declaration, she further states that she gave instructions to AGI to send the corn to Port Elevator for storage. Id.

Vega claims that Port Elevator was put on notice that she was the owner when the invoice number 0000001 was notarized by Maria Gonzalez, an employee of Port Elevator and Elkins' secretary. [See Dkt. No. 100. at 7] However, it is uncontroverted that Elkins had no personal knowledge of Vega's name being on any of the invoices which are in the summary judgment record. Elkins denies ever seeing the bills of lading and also notes that his secretary provided notary services which were not in connection with her employment with Port Elevator. [See Elkins Dep. at 183-87]. Vega's claim of notice is merely a conclusory allegation and as such is not competent summary judgment evidence. See Anderson, 477 U.S. at 249-50. If in fact and in law, Vega was the owner of the corn or had entered into an agency relationship with Gutierrez and/or Puffelis, there is no competent evidence to show that Elkins in his capacity as manager for Port Elevator knew of it at the time the contract was formed. As it cannot be shown that Elkins had any knowledge of Vega's claims, it is also the case that Port Elevator had no knowledge of Vega's purported ownership of the corn prior to or at the time that a contract was formed as between Elkins, as representative of Port Elevator, Puffelis and Gutierrez.

Further, the Court finds that Vega was in an undisclosed agency relationship with Gutierrez/Sysco. She states in her Original Answer and Counterclaim [Dkt. No. 56 also attached as Ex. G to Dkt. No. 95] that she "instructed Bersain Gutierrez to travel to Brownsville, Texas to oversee the transfer of Counter-Plaintiff's corn to Port Elevator for storage." Id. at 9. Despite this, Vega later states that she did not direct any "agent,

employee or representative [to] enter into a written contract with the elevator on my behalf." [Dkt. No. 103, Ex. 21].[5]

An agency relationship does not depend upon the express appointment or assent by the principal; rather, it may be implied from the conduct of the parties. Orozco v. Sander, 824 S.W.2d 555, 556 (Tex.1992). Whether a principal-agent relationship exists under established facts may be determined as a matter of law, based on the agreement between the parties, their words, and their conduct. Ross v. Texas One Partnership, 796 S.W.2d 206, 210 (Tex.App.--Dallas 1990), writ denied per curium, 806 S.W.2d 222 (Tex.1991); Mercedes-Benz of N. Amer., Inc. v. Dickenson, 720 S.W.2d 844, 858 (Tex.App.--Fort Worth 1986).

Regardless of what Vega did, or did not instruct Gutierrez and Puffelis to do vis-a- vis Port Elevator, the uncontroverted evidence is that Gutierrez and Puffelis held themselves out as owners of the corn when they entered into the contract with Port Elevator. "Where an agency agreement is undisclosed, a contract negotiated by the agent in the agent's own name but within the scope of the agent's authority is generally treated as a contract of principal. Therefore, the principal is ordinarily liable on the

agreement to the third person with whom the agent has contracted." Agency, Section 213, Tx. Jur.3rd (2001). As discussed *supra*, the Court finds no competent evidence to support Vega's contention that her purported ownership interest was apparent to Port Elevator. However, even assuming her ownership interest was partially disclosed she would still be liable under the contract as, "[a] partially disclosed principal is also generally liable to the third-party with whom the authorized agent has contracted." Agency, Section 213, Tx. Jur.3rd (2001).

In her pleadings and in her Declaration, Vega states that she instructed AGI to send the corn to Port Elevator [See Dkt. No. 104, Ex. 16]. The record is silent as to what she expected Port Elevator to do with the corn. The uncontroverted evidence,

Further, the uncontroverted evidence is that Port Elevator was unaware of any ownership interest Vega may have had in the corn at the time this contract was formed. In summary, the Court finds that there is no material issue of fact on the formation and existence of the contract, and that Port Elevator has performed, and further that the contract has been breached by Defendants Gutierrez and Puffelis.  Therefore the Court **GRANTS** Port Elevator's Motion for Summary Judgment.

As the Court finds a valid contract agreement as between Port Elevator and Defendants' Puffelis of AGI and Gutierrez of Sysco, and as the Court has also found that Elkins, as representative of Port Elevator, had no knowledge of Vega's purported interest in the corn either before or contemporaneous to the signing of the contract, the allegations in Vega's counterclaim are quickly disposed of.  In her counterclaim, Vega alleges conversion, negligence, fraud and violations of the Texas Deceptive Trade Practices Act.  [Dkt. No. 102 at 8-14].  Vega was a stranger to the contract.  Port Elevator's contractual relationship and duty was with Puffelis and Gutierrez, not Vega. Further, because Port Elevator had no knowledge of any claim on the corn by Vega there is no evidence of conversion, fraud or violations of the Texas Deceptive Trade Practices Act.

As the Court has granted summary judgment on the issue of contracual liability against Port Elevator and Defendants Puffelis of AGI and Gutierrez of Sysco, Vega's counterclaim and motion for partial summary judgment are **DENIED**.[6]

V.    Default Judgment is Appropriate Against Gutierrez and Sysco

Bersain Gutierrez was served on November 8, 1998.  Gutierrez has never made an appearance in this action.  The original summons and the return of service are on file with the Court and are also attached as exhibit "F" to Dkt. No. 95.  Pursuant to Federal Rules of Civil Procedure 55 and 56, the Court **GRANTS** Default Judgment against Gutierrez and Sysco.

---

[6]    Vega may well have a cause of action against Puffelis /AGI and Gutierrez/Sysco, but there is no evidence in the record that supports her counterclaim against Port Elevator.

-8-

**VI.    Port Elevator is Entitled to Reimbursement for Actual Damages**

It is undisputed that contrary to the express terms of the contract, at no time during the period of the contract were one million bushels of corn deposited with Port Elevator. The Court therefore finds that the failure of Defendants' Puffelis and Gutierrez to deposit and withdraw one million bushels of corn within the contract period breached the contract and caused actual damages from the higher costs of unloading, storage, fumigation, turning, aeration, cracking, and loading out of the corn in the amount of $81,438.04 plus interest. [See Dkt. No. 55 at 5], and therefore the Court **GRANTS** Port Elevator's claim in the amount of $81,438.04 plus interest.

**VII.    Port Elevator is Entitled to Reimbursement of Legal Expenses**

As the Court has found that Vega's claims were groundless in fact and law, the Court **GRANTS** Port Elevator's request for reasonable and necessary attorneys' fees and court costs pursuant to the Texas Business and Commerce Code, Section 17.50(c) (Vernon 2001).[7]  The Court also **GRANTS** interest pursuant to 28 U.S.C. § 1962.

Finally, the Court also finds that costs and fees are appropriate pursuant to 28 U.S.C. § 1967 as Vega has "multiplied the proceedings in (this) case unreasonably and vexatiously." In support of this conclusion, the Court first notes that it has found as a matter of law and fact that there is no basis for Vega's counterclaims.

Further the Court takes notice of the pattern of delay by Vega. First, Vega allowed thirteen months before first making an appearance in this action. Second, Vega waited almost three years after this action was filed before filing a counterclaim. Third, Vega has repeatedly failed to participate in discovery and has been unavailable to give deposition testimony. Fourth, notwithstanding the present action, Vega has filed

---

[7]    "On a finding by the Court that an action under this section was groundless in fact or law or brought in bad faith or for the purpose of harassment, the Court shall award to the Defendant reasonable and necessary attorney's fees and court costs." Texas Business and Commerce Code, Section 17.50(c), Vernon 2001. The Court also accepts Port Elevator's separate ground for attorney's fees: "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of claim and costs, if the claim is for: (1) rendered services; (2) performed labor; . . . (8) an oral or written contract." Texas Civil Practice and Remedies Code, Section 38.006, Vernon 2001.

-9-

two other actions in the State District Courts of Hidalgo County, Texas.[8] Fifth, it was represented to the Court at the January pretrial conference that settlement was imminent and simply required Vega's signature. The subsequent failure of Vega or her attorneys to notify Port Elevator of the status of the settlement required Port Elevator to prepare and file its Motion for Summary Judgment under the (mis)apprehension that no response would be forthcoming. As a result, the Court finds that Port Elevator is entitled to "excess costs, expenses and attorneys' fees reasonably incurred" as a result of the conduct of Vega. See 28 U.S.C. § 1967.

The Court is not persuaded that a fact issue on attorneys' fees is raised by the conclusory statements in the affidavit [Dkt. No. 101, Ex. 12] executed by William D. Mount, Jr., attorney for Vega, that the attorneys' fees are not reasonable. However, the Court does not find that the explanation of costs and fees incurred by Port Elevator in John Skaggs' Affidavit [see Dkt. No. 95, Ex. B] is sufficient. The Court therefore **ORDERS** Port Elevator to submit evidence that specifically details and explains the costs and attorneys' fees incurred on the prosecution of the breach of contract and in defense of the tort and the Texas Deceptive Trade Practices Act actions.

## VIII.    Conclusion

In summary, Port Elevator's Motion for Summary Judgment [Dkt. No. 95] is hereby **GRANTED** and Vega's Motion for Partial Summary Judgment [Dkt. No. 96] is **DENIED.** Further, any other pending motions are **MOOT** as a result of this Order. It is therefore

**ORDERED, ADJUDGED and DECREED** that Ivonne Soto Vega take nothing by reason of her actions against Port Elevator, Craig Elkins, and Southwest Grain. It is further

---

[8]        See Cause No. C-2969-99-A; "Ivonne Soto Vega v. Port Elevator-Brownsville, L.C., Inc., AGI/Akron Group Inc., Sysco de Baja, Walter Puffelis, Galvan, III, Individually and d/b/a/ Port Elevator-Brownsville, L.C. and Southwest Grain Co. Inc., Bersain Gutierrez Zenteno, Individually and d/b/a Sysco de Baja"; 92nd District Court, Hidalgo County, Texas; and Cause No. C-723-01-B; "Ivonne Soto Vega v. Universal Surety of America, Port Elevator-Brownsville, L.C. and Southwest Grain Co., Inc.; 93rd District Court, Hidalgo County, Texas.

-10-

**ORDERED, ADJUDGED and DECREED** that Port Elevator recover economic damages for breach of contract in the total amount of $81, 438.04; and that such amount is to be paid by Bersain Gutierrez and Sysco de Baja S.A. de C.V., and Ivonne Soto Vega, jointly and severally. It is further

**ORDERED, ADJUDGED and DECREED** that Port Elevator, Craig Elkins, and Southwest Grain have judgment against Sysco de Baja S.A. de C.V., Bersain Gutierrez, and Ivonne Soto Vega for attorneys' fees. The Court does not find that the explanation of costs and fees incurred by Port Elevator in John Skaggs' Affidavit [see Dkt. No. 95, Ex. B] is sufficient. It is therefore

**ORDERED** that Port Elevator to submit an affidavit that specifically details and explains the costs and fees incurred. It is further

**ORDERED** that the sum recited above bears interest from the date of entry of this judgment at the statutory rate as provided by 28 U.S.C. § 1961.

The Clerk of the Court is directed to pay to Port Elevator all of those funds which are currently in the registry of this Court in partial satisfaction of the judgment rendered herein. It is further

**ORDERED** that Sysco de Baja S.A. de C.V., Bersain Gutierrez, and Ivonne Soto Vega are jointly and severally liable for any amounts not satisfied by the payment of the money in the registry of the Court to Port Elevator. Execution may issue on any such excess amount as provided by law.

Except as provided for in this Order, each of the Parties is discharged from any further obligation or liability as between or among themselves. The Court specifically rules that Port Elevator, Craig Elkins, and Southwest Grain are without fault in the circumstances relating to the contracting, storage, and disposal of the corn and money which are the subject of this action.

-11-

Further, this Court enters a permanent injunction restraining Sysco de Baja S.A. se C.V., Bersain Gutierrez, and Ivonne Soto Vega from instituting or prosecuting any proceeding in any state or federal district court affecting the property, instrument, or obligation involved in this interpleader action pursuant to 28 U.S.C. § 2361.

DONE at Brownsville, Texas, this 30th day of July 2002.

Hilda G. Tagle
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAR 1 4 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

PORT ELEVATOR BROWNSVILLE, L.C.    §
and SOUTHWEST GRAIN CO., INC.      §
                                   §
PLAINTIFF(S),                      §
                                   §
v.                                 §    CIVIL ACTION NO. B-98-23
                                   §
IVONNE SOTO VEGA, ET AL,           §
                                   §
        DEFENDANT(S).              §

## ORDER

BE IT REMEMBERED that on March 12, 2003, the Court considered all pending motions in this case. Defendant Ivonne Soto Vega's Motion For New Trial [Dkt. No. 108] and Defendant Ivonne Soto Vega's Supplemental Motion For New Trial [Dkt. No. 109] are **DENIED**. Plaintiff Port Elevator-Brownsville, L.C.'s Unopposed Motion For Leave To File Response To Ivonne Soto Vega's Motion For New Trial, Including Reference To Authorities (Including Certificate Of Conference) [Dkt. No. 112] is **GRANTED**. Defendant Ivonne Soto Vega's Unopposed Motion For Leave To File Affidavit Controverting Supplemental Affidavit of John Skaggs [Dkt. No. 114] is **GRANTED**.

### I.    Motion For New Trial

Defendant filed her motion for new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. There was no trial in this matter; therefore, Defendant cannot bring her motion pursuant to Rule 59(a). The Court thus concludes that Defendant intended to bring her motion under Rule 59(e) which provides: "(e) Motion to Alter or Amend Judgment. Any motion to alter or amend a judgment shall be served no later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(e). "Rule 59(e) covers a broad range of motions, and the only real limitation on the type of the motion permitted is that it must request a substantive alteration of the judgment . . . ." 11 CHARLES ALAN WRIGHT,

1



115

ET AL., FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995).

It is axiomatic that a motion to alter or amend a judgment requires the entry of a judgment. Rule 58 dictates both what constitutes a judgment and how a judgment is entered. "Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)." *See* Fed. R. Civ. P. 58. The notation of a judgment in the docket as described in Rule 79(a) constitutes entry of the judgment. *See* 9 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 236.02 (2d ed. 1983). An order, even a lengthy summary judgment opinion and order, does not constitute a judgment for purposes of Rule 58. *See Baker v. Mercedes Benz of North America*, 114 F.3d 57, (5th Cir. 1997) (holding that there was no final judgment from which to take an appeal because "an extensive written opinion concluding with the sentence: 'This is a final judgment.'" did not satisfy the Rule 58 requirement that a judgment be set forth on a separate document). In the absence of a Rule 58 judgment, a motion to reconsider, amend, or alter a judgment is not appropriate under Rule 59 in general and Rule 59(e) in particular. *See Moodie v. Fed. Reserve Bank of N.Y.*, 835 F. Supp. 751, 752 (S.D.N.Y. 1993) (holding that a motion for reconsideration was inappropriate because no judgment was entered on which the motion to alter or amend could be based).

In this case, no judgment was ever entered or docketed. Therefore, like in *Moodie*, a Rule 59(e) motion is an inappropriate vehicle for reconsideration of the Court's order granting summary judgment in favor of Plaintiff Port Elevator. Defendant's Motion For New Trial, therefore, is hereby **DENIED**.

## II.  Attorneys' Fees

In the order granting summary judgment in favor of Plaintiff Port Elevator, the Court also granted Port Elevator's request for reasonable and necessary attorneys' fees and court costs. [Dkt. 106, at 9]. The Court, however, was not satisfied with Mr. John Skaggs' Affidavit [Dkt. No. 95, at Ex. B] explaining costs and fees, and the Court ordered Port Elevator to submit evidence that specifically detailed and explained the costs and attorneys' fees incurred. Plaintiff Port Elevator filed a document captioned Filing Of Supplemental Affidavit Of John Skaggs, Pursuant To The Court's Order. [Dkt.

No. 111].

In response, Defendant Ivonne Soto Vega filed an Unopposed Motion For Leave To File An Affidavit Controverting Supplemental Affidavit Of John Skaggs [Dkt. No. 114] which the Court **GRANTS** today. Defendant Ivonne Soto Vega complains that (1) John Skaggs' Supplemental Affidavit is conclusory, (2) the stated fees are neither reasonable or necessary, (3) John Skaggs has not produced a firm ledger or billing statements to his client, (4) the statement includes 18 hours of work for a deposition that did not take place because John Skaggs did not subpoena the deponent, (5) the statement includes fees for preparing a response to a motion Soto Vega filed and won in state court, and (6) the statement does not segregate the fees and expenses among the three Defendants.

The Court finds Mr. Skaggs' Supplemental Affidavit incomplete. Mr. Skaggs will file an affidavit detailing (1) the attorneys from his firm who worked on this matter, (2) the billing rate for each attorney who worked on this matter, (3) which attorney worked on a particular assignment, and (4) how many hours that attorney worked on that assignment.

Mr. Skaggs shall file his fee application on or before March 31, 2003. Defendant Ivonne Soto Vega may renew her objections on or before April 14, 2003. The Court will thereafter enter an order regarding a final fee award and, also, enter a Rule 58 judgment closing this matter.

III.    **Conclusion**

Defendant Ivonne Soto Vega's Motion For New Trial [Dkt. No. 108] and Defendant Ivonne Soto Vega's Supplemental Motion For New Trial [Dkt. No. 109] are **DENIED**. Plaintiff Port Elevator-Brownsville, L.C.'s Unopposed Motion For Leave To File Response To Ivonne Soto Vega's Motion For New Trial, Including Reference To Authorities (Including Certificate Of Conference) [Dkt. No. 112] is **GRANTED**. Defendant Ivonne Soto Vega's Unopposed Motion For Leave To File Affidavit Controverting Supplemental Affidavit of John Skaggs [Dkt. No. 114] is **GRANTED**.

Moreover, the Court **ORDERS** Mr. Skaggs to file his fee application and supporting affidavit on or before March 31, 2003. Defendant Ivonne Soto Vega may

renew her objections on or before April 14, 2003.

The Court will thereafter enter an order regarding a final fee award and, also, enter a Rule 58 judgment closing this matter.

DONE at Brownsville, Texas, this 12th day of March 2003.

Hilda G. Tagle
United States District Judge

4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

PORT ELEVATOR –                    §
BROWNSVILLE, L.C. AND              §
SOUTHWEST GRAIN CO., INC.          §
                                   §
VS.                                §         CIVIL NO. B-98-23
                                   §
IVONNE SOTO VEGA, BERSAIN          §
GUTIERREZ, SYSCO DE BAJA,          §
S.A. DE C.V. AND WALTER            §
PUFFELIS, INDIVIDUALLY AND         §
D/B/A AGI AKRON GROUP, INC.        §
                                   §
VS.                                §
                                   §
CRAIG ELKINS, INDIVIDUALLY         §
AND D/B/A PORT ELEVATOR-           §
BROWNSVILLE, L.C., AND             §
SOUTHWEST GRAIN CO. , INC.         §

28 U.S.C § 1746 DECLARATION OF YVONNE SOTO VEGA

"I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I am the Defendant, Counter-Plaintiff and Third-Party Plaintiff in the above-styled lawsuit. I am presently a party in legal proceedings currently pending in the country of Mexico, D.F. and have been detained in Mexico City by the authorities for the purpose of completing these proceedings since the summer of 2001. It is not known at this time when these proceedings will be completed. Since my detention, I have been unable to effectively communicate with my attorneys in this matter, Roy S. Dale, William D. Mount, Jr. and Guillermo Vega. My communications with them have been limited. My son, Ricardo Gomez, visits periodically and is able to deliver messages back and forth. He has translated this declaration from English to Spanish for me.

The purpose of this affidavit is to let the trial court and all other parties to this lawsuit know that I purchased approximately 4,924 metric tons of corn from AGI Akron Group, Inc. (AGI) in October and November of 1996. My corn was delivered to Port Elevator-Brownsville, L.C. which is located at the Port of Brownsville, near Brownsville, Texas in October and November of 1996.



I paid AGI for 4,236 metric tons of corn that was purchased by me on October 25, 1996 and on November 12, 1996 by a letter of credit issued in the amount of $720,120.00. The letter of credit was from my funds only.

On November 13, 1996, I bought an additional quantity of corn from AGI in the amount of 688 metric tons of corn. I gave instructions to AGI to send the corn to Port Elevator-Brownsville, L.C. for storage. My own funds solely were used to pay for this shipment of corn.

I did not have any agreement with Bersain Gutierrez wherein he would participate as an owner of the corn. Mr. Gutierrez had no authority from me to enter into any contract with Port Elevator-Brownsville, L.C., concerning my corn. Mr. Gutierrez had no interest in my corn.

I did not enter into any written contract with Port Elevator-Brownsville, L.C. concerning the approximately 4,924 metric tons of corn that I had shipped to the elevator. I had no agent, employee or representative enter into a written contract with the elevator on my behalf.

Port Elevator-Brownsville, L.C. held itself out as a public warehouse that stores corn and such corn is not to be released without the express consent of the owner. I relied upon these representations to my detriment. Port Elevator-Brownsville, L.C. has released my corn to Bersain Gutierrez and sold my corn at a series of auctions without my permission.

I had a buyer for the corn. His name is Enrique Villarreal. The contract between me and Mr. Villarreal is attached to my Declaration as Exhibit "A". My signature appears on Exhibit "A". I am able to identify Mr. Villarreal's signature. His signature appears on Exhibit "A". Exhibit "A" is the agreement between me and Mr. Villarreal. This document is a business record of mine. The sales price was $150 per metric ton. If the contract could have been completed, I stood to receive approximately $738,600 (4,924 metric tons x $150 per metric ton). The contract could not be completed because Craig Elkins of Port Elevator-Brownsville, L.C. and Southwest Grain Co. would not release the corn to Mr. Villarreal.

I am aware that storage fees were owed on the corn. Through my attorney, Guillermo Vega, Jr., I tendered what Port Elevator-Brownsville, L.C. said was owed. The amount was $19,574.20. A copy of the cashier's check is attached as Exhibit "B". This check is a business record of mine. They refused to accept it. I have

stood ready to pay the storage fees.  Port Elevator-Brownsville, L.C. has consistently refused to release my corn.

The money in the registry of the court is from the sale of my corn and I request that the trial court release the money to my attorneys immediately.

Executed on this _25_ day of May, 2002.

YVONNE SOTO VEGA".

## SALES CONTRACT

**SELLER:**    IVONNE SOTO VEGA

**BUYER:**    ENRIQUE VILLARREAL

This contract confirms our agreement to sell you the following described goods on the terms and provisions herein set forth:

**Number of Units:**    5,000 metric tons of corn

**Ship to:**    Owner, Ivonne Soto Vega, will sell the corn to buyer, Enrique Villarreal, in store at the sprout (FOB - the elevator) at the Port of Brownsville, Texas.

**Ship by:**    The owner, Yvonne Soto Vega, will sell to the buyer, Enrique Villarreal, the corn in store at the sprout (FOB - the elevator) at the Port of Brownsville, Texas. The buyer, Enrique Villarreal, will pay the loading fee by cashier check prior to the trucks crossing into Mexico.

**Delivery Date:**    November 1, 1997

**Price terms:**    To be paid on date of delivery

**Special terms;**    The owner, Ivonne Soto Vega, shall pay the storage fees on or before date of purchase. The buyer, Enrique Villarreal, shall pay the transporting permits which shall include the USDA PHYTO SANITARY CERTIFICATES, loading of trucks permits, cracking of corn permits, grade certificates, aflatoxin certificates, certificates of origin, and shipper - export certificates which shall become the responsibility of the buyer on the date of purchase.

Accepted on the ___03___ day of ___NOVEMBER___, 1997.

_Ivonnes Soto_
Seller - Ivonne Soto Vega

Buyer - Enrique Villarreal

EXHIBIT
A
FALCON-DALLAS, TX



**NATIONAL ASSOCIATION**

★ Texas Commerce Bank

BROWNSVILLE, TEXAS 78521
Member FDIC

REMITTER

IVONNE SOTO VEGA

PAY TO THE
ORDER OF

PORT OF BROWNSVILLE AND
SOUTHWEST GRAIN ELEVATOR COMPANY

**CASHIER'S CHECK**

THE FACE OF THIS DOCUMENT HAS A MULTICOLORED
BACKGROUND, NOT A WHITE BACKGROUND.
THE BACK OF THIS DOCUMENT CONTAINS AN ARTIFICIAL
WATERMARK — HOLD AT AN ANGLE TO VIEW.

A 030009760

32-115
1110

TEXAS
COMMERCE BANK

DATE    11/14/97
$19,574.20

19,574 dols 20 cts

AUTHORIZED SIGNATURE

A 90 day waiting period and
an indemnifying Bond is re-
quired to replace this check.

TST/0030

⑈030009760⑈ ⑆⑈⑈⑈001⑈⑈⑈⑈50⑆ ⑈00⑈0⑈99974⑈⑈



EXHIBIT
B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR - | § | |
| BROWNSVILLE, L.C. AND | § | |
| SOUTHWEST GRAIN CO., INC. | § | |
| | § | |
| VS. | § | CIVIL NO. B-98-23 |
| | § | |
| IVONNE SOTO VEGA, BERSAIN | § | JURY DEMANDED |
| GUTIERREZ, SYSCO DE BAJA, | § | |
| S.A. DE C.V. AND WALTER | § | |
| PUFFELIS, INDIVIDUALLY AND | § | |
| D/B/A AGI AKRON GROUP, INC. | § | |
| | § | |
| VS. | § | |
| | § | |
| CRAIG ELKINS, INDIVIDUALLY | § | |
| AND D/B/A PORT ELEVATOR- | § | |
| BROWNSVILLE, L.C., AND | § | |
| SOUTHWEST GRAIN CO. , INC. | § | |

**DECLARATION OF WILLIAM D. MOUNT, JR.
IN SUPPORT OF IVONNE SOTO VEGA'S MOTION FOR NEW TRIAL**

I, **WILLIAM D. MOUNT, JR.**, declare that:

1.    I make this statement based on my personal knowledge.  I am prepared and competent to testify to the matters set forth in this Declaration.

2.    I am a partner and attorney with the law firm of Dale & Klein, L.L.P. located at 6301 North 10th Street, McAllen, Texas 78504.

3.    I prepared Ms. Vega's Original Answer and Counterclaim in this matter which was filed on January 22, 2001.

4.    At the time the aforementioned document was prepared, Ms. Vega was a non-resident of Texas.  She lived in either Tijuana,

H:\p\99-3843\Declaration of WDM



1

B.C. Mexico or in Southern California.  Her residency has been an issue in this case.  I had met with her once in McAllen, Texas about the case prior to filing her Original Answer and Counterclaim.

5.   In July 2002, Roy Dale, Ms. Vega's lead counsel, and I traveled to San Diego, California after Port Elevator-Brownsville, L.C.'s counsel noticed Bersain Gutierrez for deposition.  At that time, I went over the pleading that had been filed on her behalf with her and she pointed out some errors.  After meeting with her, Ms. Vega's First Amended Answer and First Amended Counterclaim was prepared.  Ms. Vega gave to me at the meeting much more information about her claim than previously given.  The information given clarified a number of issues and concerns that I had.

6.   Ms. Vega's pleadings were amended to conform to the information given to me by Ms. Vega.

7.   I declare under penalty of perjury that the foregoing is true and correct.

Executed in Colorado Springs, Colorado on the 9th day of August, 2002.

*William D. Mount*

WILLIAM D. MOUNT, JR.

H:\p\99-3943\Declaration of MDM

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR - BROWNSVILLE, L.C. AND SOUTHWEST GRAIN CO., INC. | § § § § | |
| VS. | § § | CIVIL NO. B-98-23 |
| IVONNE SOTO VEGA, BERSAIN GUTIERREZ, SYSCO DE BAJA, S.A. DE C.V. AND WALTER PUFFELIS, INDIVIDUALLY AND D/B/A AGI AKRON GROUP, INC. | § § § § § § § | JURY DEMANDED |
| VS. | § § | |
| CRAIG ELKINS, INDIVIDUALLY AND D/B/A PORT ELEVATOR- BROWNSVILLE, L.C., AND SOUTHWEST GRAIN CO. , INC. | § § § § § | |

### DECLARATION OF WILLIAM D. MOUNT, JR.
### IN SUPPORT OF IVONNE SOTO VEGA'S MOTION FOR NEW TRIAL

I, **WILLIAM D. MOUNT, JR.,** declare that:

1.    I make this statement based on my personal knowledge.  I am prepared and competent to testify to the matters set forth in this Declaration.

2.    I am a partner and attorney with the law firm of Dale & Klein, L.L.P. located at 6301 North 10th Street, McAllen, Texas 78504.

3.    Exhibit "A-1" attached to this Declaration is a true and correct unsigned copy of a document that was signed and forwarded to John Skaggs by facsimile and regular mail on May 31, 2001.

4.    Exhibits "A-2" through "A-5" are true and correct copies

EXHIBIT

tabbies

5

of correspondence from either John Skaggs to Bill Mount or vice versa.

5.    Exhibits "A-1" through "A-5" are Dale & Klein, L.L.P. business records.

6.    I declare under penalty of perjury that the foregoing is true and correct.

Executed in McAllen, Hidalgo County, Texas on the 13th day of August, 2002.

WILLIAM D. MOUNT, JR.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PORT ELEVATOR – BROWNSVILLE, L.C. AND SOUTHWEST GRAIN CO., INC. | § § § § | |
| VS. | § § | CIVIL NO. B-98-23 |
| IVONNE SOTO VEGA, BERSAIN GUTIERREZ, SYSCO DE BAJA, S.A. DE C.V. AND WALTER PUFFELIS, INDIVIDUALLY AND D/B/A AGI AKRON GROUP, INC. | § § § § § § | JURY DEMANDED |
| VS. | § § | |
| CRAIG ELKINS, INDIVIDUALLY AND D/B/A PORT ELEVATOR- BROWNSVILLE, L.C., AND SOUTHWEST GRAIN CO. , INC. | § § § § | |

## ORDER GRANTING IVONNE SOTO VEGA'S MOTION FOR NEW TRIAL

On the _____ day of _____, 2002, came on for consideration **IVONNE SOTO VEGA'S** Motion for New Trial. The Court having heard the arguments of counsel and considered same, and being of the opinion that said Motion is well-taken, it is therefore,

ORDERED that **IVONNE SOTO VEGA'S** Motion for New Trial be, and is hereby **GRANTED.**

**SIGNED** on this _____ day of _____, 2002, Brownsville Division.

_____
UNITED STATES DISTRICT JUDGE

May 31, 2001


John Skaggs                                    <u>**VIA FAX (956) 630-6570**</u>
SKAGGS & ASSOCIATES, L.L.P.                     <u>**AND REGULAR MAIL**</u>
710 Laurel
P.O. Drawer 2285
McAllen, Texas 78502-2285

     RE:  Civil Action B-98-23; Port Elevator-Brownsville, L.C. vs.
          Ivonne Soto Vega, et al.; In the U.S. District Court for
          the Southern District of Texas, Brownsville Division
          Our File No. 99-3843

Dear Mr. Skaggs:

    This letter serves to acknowledge our telephone conversation
this morning wherein you stated that you wanted to take my client's
deposition next Thursday or Friday in San Diego, California. I was
somewhat surprised by your request given that this case has been
pending since February, 1998 and her deposition on the merits has
not been taken. In any event, I have been informed that Ms. Vega
is currently on her way to Europe and will not be back until about
July 1, 2001. I can make her available for deposition in Tijuana
on Friday, July 6, 2001, Saturday, July 7, 2001, Thursday, July 12,
2001, Friday, July 13, 2001, or Saturday, July 14, 2001. Please
contact me about what date is convenient for you. I would like to
lock in a cheap airfare, if possible. As discussed, I will make
every effort to cooperate with you concerning discovery matters and
to get this case in a position to be tried.

    Should you have any questions, please do not hesitate to
contact me.

                  Very truly yours,


                  WILLIAM D. MOUNT, JR.

WDM:es
h:\p\99-3843\ltrs\Skaggs 23





# d&k
## dale & klein, l.l.p.
## attorneys at law

Roy S. Dale, P.C.
Katie Pearson Klein, P.C.*
* Board Certified Texas Board of Legal Specialization
Family Law and Civil Trial Law
Martin E. Morris
William D. Mount, Jr.

A. Peter Thaddeus, Jr.
Kathryn M. Flagg
Marina Garcia

June 4, 2001

John Skaggs                                      **VIA FAX (956) 630-6570**
SKAGGS & ASSOCIATES, L.L.P.                      **AND REGULAR MAIL**
710 Laurel
P.O. Drawer 2285
McAllen, Texas 78502-2285

  RE: Civil Action B-98-23; Port Elevator-Brownsville, L.C. vs.
    Ivonne Soto Vega, et al.; In the U.S. District Court for
    the Southern District of Texas, Brownsville Division
    Our File No. 99-3843

Dear Mr. Skaggs:

  This letter serves as a follow-up to my correspondence
addressed to you dated May 31, 2001. When you do depose Ms. Vega
in Tijuana, I would also like to depose Walter Puffelis Galvan, III
immediately following or immediately prior to Ms. Vega's
deposition. It is my understanding that you will be trying to
arrange the deposition of Bersain Gutierrez to take place during
the trip to Tijuana.

  Should you have any questions, please do not hesitate to
contact me.

      Very truly yours,

      WILLIAM D. MOUNT, JR.

WDM:es
h:\p\99-3843\ltrs\Skaggs 24

**EXHIBIT**
A2

6301 North Tenth Street McAllen, Texas 78504
Telephone 956.687.8700  Fax 956.687.2416
Brownsville Office
815 Ridgewood Brownsville, Texas 78520
Telephone 956 546 5100

# d & k

## dale & klein, l.l.p.
### attorneys at law

Roy S. Dale, P.C.
Katie Pearson Klein, P.C.*
* Board Certified Texas Board of Legal Specialization
Family Law and Civil Trial Law
Martin E. Morris
William D. Mount, Jr.

A. Peter Thaddeus, Jr.
Kathryn M. Flagg
Marina Garcia

June 27, 2001

**VIA FAX (956) 630-6570**
John Skaggs
SKAGGS & ASSOCIATES, L.L.P.
710 Laurel
P.O. Drawer 2285
McAllen, Texas 78502-2285

RE:  Civil Action B-98-23; Port Elevator-Brownsville, L.C., et al. vs. Ivonne Soto Vega, et al.; In the U.S. District Court for the Southern District of Texas, Brownsville Division; Our File No. 99-3843

Dear Mr. Skaggs:

This letter is in reference to a deposition notice received June 26, 2001 by facsimile from your office for Bersain Gutierrez. The deposition was noticed by your office to take place in San Diego, California on July 10, 2001.

We are not available on July 10, 2001 for Mr. Gutierrez' deposition. As I had stated to you in prior correspondence, I had listed the dates that we were available. July 10th was not one of those dates. Also, please be advised that we are no longer available on July 13 or 14. I will be out of town July 14 through July 21st on a planned vacation.

As I have stated in other letters, we will work with you as far as getting the discovery done that you need done. Please coordinate with me an alternate date. Also, as I have communicated to you in the past, we ought to do all the Southern California witnesses at the same time to avoid multiple trips to California and to avoid unnecessary expense.

Please contact Mr. Gutierrez and obtain other available dates for his deposition. If I do not hear from you by Friday, June 29, 2001, I will assume that you are unwilling to coordinate an alternate date and I will file a Motion to Quash the deposition on Monday, July 2, 2001.



6301 North Tenth Street          as 78504
Telephone 956.68          7.2416
Brown
815 Ridgewood Brownsville, Texas 78520
Telephone 956 546 5100

John Skaggs
Port Elevator-Brownsville, L.C.
     vs. Ivonne Soto Vega, et al.
June 27, 2001
Page 2


        Should you have any questions, please do not hesitate to
contact me.

                              Very truly yours,


                              WILLIAM D. MOUNT, JR.


WDM:es
h:\p\99-3843\ltrs\Skaggs 29

# SKAGGS & ASSOCIATES

### ATTORNEYS AT LAW
710 LAUREL
P.O. DRAWER 2285

McALLEN, TEXAS 78502-2285

JOHN SKAGGS
MICHELE N. GONZALES

**June 28, 2001**

PHONE: (956) 687-8203
PHONE: (956) 687-8216
FAX: (956) 630-6570

Mr. William Mount - VIA FAX NO. 687-2416
6301 North Tenth Street
McAllen, Texas 78504

     Re:  Civil No. B-98-23; Port Elevator-
           Brownsville, L.C. v. Ivonne Soto Vega, et al

Dear Bill:

    I have expressed the need to take Ivonne Vega's deposition.
You have provided me with dates.

    Based on our discussions regarding prior conflicts, including
family vacations, I believe we've concluded that the proposed dates
are unrealistic.

    We already know we will have to be in San Diego on July 10th
to take Bersain Gutierrez' deposition. Though I understand this
date is not convenient for Ms. Vega, I have expressed my
willingness to take her deposition on the same day.

    Notwithstanding the above, I have agreed to refrain from
noticing Ms. Vega's deposition until after you return from your
vacation in mid-July. Bill, in making this agreement, I have
relied on your assurance that you will agree to extend the
discovery deadline, and will not object to the taking of Ms. Vega's
deposition based on any discovery deadlines.

    If I am incorrect about the discovery extension, you should
advise me in writing immediately so I can arrange to send
appropriate notices.

                 Very truly yours,

                 SKAGGS & ASSOCIATES

                 John Skaggs

JS/cmo
cc: Mr. Craig Elkins - VIA FAX NO. 831-3181



EXHIBIT
A-4



# d&k

### dale & klein, l.l.p.
### attorneys at law

Roy S. Dale, P.C.
Katie Pearson Klein, P.C.*
* Board Certified Texas Board of Legal Specialization
Family Law and Civil Trial Law
Martin E. Morris
William D. Mount, Jr.

A. Peter Thaddeus, Jr.
Kathryn M. Flagg

August 16, 2001

**VIA FAX (956) 630-6570**
John Skaggs
SKAGGS & ASSOCIATES, L.L.P.
710 Laurel
P.O. Drawer 2285
McAllen, Texas 78502-2285

> RE: Civil Action B-98-23; Port Elevator-Brownsville, L.C. vs.
> Ivonne Soto Vega, et al.; In the U.S. District Court for
> the Southern District of Texas, Brownsville Division
> Our File No. 99-3843

Dear Mr. Skaggs:

This letter serves as a follow up to our conversation of August 14, 2001. I related our conversation to Roy Dale. He has instructed me to inform you that if you file your proposed Motion for Costs and/or Motion for Sanctions that a Counter-Motion for Sanctions will be filed. As you recall, you never noticed Ms. Vega for deposition for the time period that you, Roy and I were in San Diego, California for Mr. Gutierrez' nonappearance. Secondly, any request by you for an instanter deposition while the parties were in San Diego was obviously not feasible given the fact that she was not noticed for deposition, had not been prepared for a deposition and was not even required to be at the nonappearance of Gutierrez.

Please review Rules 13 and 30 of the Federal Rules of Civil Procedure.

Very truly yours,

WILLIAM D. MOUNT, JR.

WDM:es
h:\p\99-3843\ltrs\Skaggs 036

EXHIBIT
A-5

6301 North Tenth Street, Texas 78504
Telephone 956 687 8700  Fax 956.687.2416
Brownsville Office
815 Ridgewood Brownsville, Texas 78520
Telephone 956 546 5100