United States District Court
Southern District of Texas
FILED

SEP 26 2006

Michael N. Milby
Clerk of Court

United States Court of Appeals
Fifth Circuit

F I L E D

August 8, 2006

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 04-40638

PORT ELEVATOR BROWNSVILLE, L.C.; SOUTHWEST GRAIN CO., INC.,

Plaintiffs-Counter Defendants-Appellees,

versus

BERSAIN GUTIERREZ; Et Al.,

Defendants,

IVONNE SOTO VEGA,

Defendant-Counter Claimant-Third Party Plaintiff-Appellant,

versus

CRAIG ELKINS, Individually and dba Port Elevator-Brownsville L.C.
and Southwest Grain Co., Inc.,

Third Party Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
(1:98-CV-23)

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Ivonne Soto Vega appeals the summary judgment awarded Port Elevator Brownsville, L.C.; Craig Elkins; and Southwest Grain Co., Inc., as well as the concomitant denial of her summary-judgment

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

motion, holding she take nothing on her state-law claims. This extremely protracted litigation arises from Vega's purchase of corn and Port Elevator's handling and disposition of it. **VACATED IN PART; AFFIRMED IN PART; AND REMANDED.**

I.

In 1996, Vega, a Mexican citizen, bought approximately 5,000 metric tons of corn from AGI/Akron Group, Inc. (AGI), for $837,000 and directed it be sent to Port Elevator, a grain elevator in Brownsville, Texas. Vega's appellate brief asserts she told Bersain Gutierrez "to see that the corn arrived at Port Elevator-Brownsville, L.C.". (As discussed *infra*, however, it is unclear whether Vega made any such statement.)

On 31 October 1996, Port Elevator signed a rate and service contract with Gutierrez of Sysco de Baja S.A. de C.V. and Walter Puffelis of AGI for unloading corn from rail cars and for its handling and storage. The contract required a minimum of one million bushels of corn (25,401 metric tons) be deposited with Port Elevator; and, in consideration for storing that amount, Port Elevator offered a reduced storage rate. Under that contract, Port Elevator could release the corn only upon Gutierrez' written instructions.

Three shipments of corn, in excess of 5,000 metric tons, were delivered by Gutierrez/Sysco and Puffelis/AGI to Port Elevator in 1996; the contractually-required amount of one million bushels was

never delivered. Elevator manager Craig Elkins took delivery for Port Elevator. It subsequently released more than 3,000 metric tons of corn for Gutierrez, pursuant to his written instructions (as required by the contract), although he failed to pay the amount owed under the contract.

Based on the summary-judgment record, it does not appear that Vega participated in the transactions by which Port Elevator released corn for Gutierrez. In October 1997, Vega went to Port Elevator to claim the corn, asserting she had found a buyer. Port Elevator contested Vega's ownership, and therefore, refused to release corn to her.

Instead, in February 1998, for determining the corn's ownership, Port Elevator filed a complaint in interpleader against Vega and Gutierrez, asserting diversity jurisdiction and invoking Federal Rule of Civil Procedure 22 (allowing joinder of defendants having claims against plaintiff so plaintiff can avoid double liability). In conjunction with that complaint, Port Elevator sold the contested corn, depositing the proceeds in the court's registry.

In March 1999, Vega moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1)-(6), claiming, *inter alia*: diversity jurisdiction did not exist because all defendants were citizens and residents of Mexico; and the court lacked personal jurisdiction over Vega. This motion was granted that October.

Port Elevator filed an amended interpleader complaint that November (1999), asserting diversity jurisdiction and adding Sysco as a defendant. In January 2001, Port Elevator filed its second amended complaint, adding Southwest Grain as a plaintiff and seeking: (1) "a declaration of the rights, duties, legal relations and obligations of any interested party arising out of the [applicable] contract"; (2) breach-of-contract damages of $81,438.04, plus interest, based on the defendants' failure to deposit one million bushels of corn with Port Elevator; and (3) attorney's fees.

That same month, Vega answered and counterclaimed for negligence, conversion, fraud, and violations of the Texas Deceptive Trade Practices Act (DTPA), alleging Port Elevator and Southwest Grain were jointly liable for her losses. That February, Vega filed a third-party complaint against Elkins (the earlier-mentioned elevator manager), claiming he was liable for the improper disposition of her corn.

In March 2002, Port Elevator and Vega moved for summary judgment. Port Elevator claimed Vega was liable for contractual damages and attorney's fees; it sought a declaration of the parties' rights and liabilities, asserting Vega had produced no evidence supporting her various claims. Vega sought to hold Port Elevator liable for releasing her corn.

On 30 July 2002, the district court: awarded Port Elevator summary judgment; and denied it for Vega, ordering she take nothing on her claims. (Because neither Sysco nor Gutierrez appeared, default judgment was entered against them in that order.) The court also awarded Port Elevator attorney's fees, to be later determined, including under 28 U.S.C. § 1927 and pursuant to Texas law, as discussed below.

In August 2002, Vega moved for new trial; that same month, she filed a supplemental new-trial motion. On 14 March 2003, those motions were denied because they were filed before entry of a final judgment. In February 2004, Vega filed a motion to reconsider that denial, which was also denied.

Final judgment was not entered until 30 March 2004. That same day, an order was entered setting Port Elevator's awarded attorney's fees at $58,200.

II.

Vega claims the district court erred in granting summary judgment for Port Elevator and denying it for her. She maintains the court erred by: (1) holding her liable for breach of contract regarding the corn storage; (2) awarding Port Elevator $81,438.04 in damages; (3) denying her summary judgment and ordering she take nothing on her state-law claims; and (4) awarding attorney's fees, including under § 1927 (attorney who unreasonably multiplies proceedings liable for the cost and attorney's fees his conduct

causes) and pursuant to Texas law. The parties agree Texas law applies in this diversity action.

We review *de novo* a summary judgment under Federal Rule of Civil Procedure 56, using the same standard as the district court. *E.g.*, **U.E. Tex. One-Barrington, Ltd. v. Gen. Star Indem. Co.**, 332 F.3d 274, 276 (5th Cir. 2003). Such judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c). The evidence must be construed in the light most favorable to the non-movant. *E.g.*, **Kee v. City of Rowlett**, 247 F.3d 206, 210 (5th Cir.), *cert. denied*, 534 U.S. 892 (2001). A party opposing summary judgment may not rest on the pleadings; instead, it must, *inter alia*, provide specific facts showing the existence of a genuine issue for trial. *E.g.*, **Ragas v. Tenn. Gas Pipeline Co.**, 136 F.3d 455, 458 (5th Cir. 1998).

### A.

The district court held Vega liable as an undisclosed principal for the corn-storage and handling contract signed by Gutierrez and Elkins, ruling that Gutierrez signed in his capacity as Vega's agent. Vega contends the court improperly granted Port Elevator summary judgment on its breach-of-contract claim because the existence and scope of an agency relationship are questions of fact

for the jury; and that the summary-judgment evidence shows she did *not* enter an agency relationship with Gutierrez. In addition, she claims that, even if summary judgment was proper, the district court erred in awarding the requested damages and attorney's fees.

1.

Agency is the consensual relationship between parties where the agent acts on the principal's behalf and is subject to the principal's control. **Edwards v. State**, 97 S.W.3d 279, 289 (Tex. App. 2003). Moreover,

> [f]or an agency relationship to exist there must be a meeting of the minds between the parties to establish the relationship, and there must be some act constituting the appointment of one as the agent. The consent may be express or implied; the intention of the parties may be ascertained by their conduct.

**Lone Star Partners v. Nationsbank Corp.**, 893 S.W.2d 593, 599-600 (Tex. App. 1994) (internal citation omitted).

Under our precedent, the existence of an agency relationship in Texas is a mixed question of law and fact. **Am. Int'l Trading Corp. v. Petroleos Mexicanos**, 835 F.2d 536, 539 (5th Cir. 1987). The factfinder determines the parties' factual relationship; the court determines whether, under the established facts, an agency relationship exists as a matter of law. *Id.* On the other hand, it appears Texas cases differ on whether the existence of such a relationship is a factual or legal question. Some treat it as a factual question. *E.g.*, **Jorgensen v. Stuart Place Water Supply**

*Corp.*, 676 S.W.2d 191, 194 (Tex. App. 1984). Others allow the court to make that determination. *E.g.*, **Mercedes-Benz of N. Am., Inc. v. Dickenson**, 720 S.W.2d 844, 858 (Tex. App. 1986). In any event, it is undisputed that, if the facts are *not* at issue, the court may make an agency determination. See **Norton v. Martin**, 703 S.W.2d 267, 272 (Tex. App. 1985). This, of course, is consistent with Rule 56, allowing summary judgment when there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law.

Evidence of an agency relationship may be direct or circumstantial. **Id.** The principal in an undisclosed agency relationship is liable for a contract signed by the agent in the agent's name *if* the agent was acting within the scope of his authority. See **Latch v. Gratty, Inc.**, 107 S.W.3d 543, 546 (Tex. 2003). Generally, a principal is not liable for a contract when an agent, who has authority to execute a contract on a principal's behalf, exceeds that authority. **Cecil v. Zivley**, 683 S.W.2d 853, 856 (Tex. App. 1984). Pursuant to Texas law, an agent's actions "are not presumed to be within the scope of his authority". **Charles E. Beard, Inc. v. Cameronics Tech. Corp.**, 729 F. Supp. 528, 531 (E.D. Tex. 1989), *aff'd*, 939 F.2d 280 (5th Cir. 1991).

As noted, the district court held Vega liable as an undisclosed principal for the contract signed by Gutierrez on the ground that he signed it in his capacity as Vega's agent. In her January 2001

Original Answer and Counterclaim, Vega alleged she had "instructed **BERSAIN GUTIERREZ** to travel to Brownsville, Texas to oversee the transfer of [Vega's] corn to **PORT ELEVATOR** for storage". (Emphasis in original.)

Based largely on that allegation, the district court ruled Gutierrez was Vega's agent. The court erred by considering that pleading allegation as summary-judgment evidence, especially in the light of her below-discussed 25 May 2002 declaration. *Cf.* ***Geiserman v. MacDonald***, 893 F.2d 787, 793 (5th Cir. 1990) (stating pleadings cannot be used to create issue of material fact). In any event, that statement does *not* demonstrate, for summary-judgment purposes, that Gutierrez had authority to execute the contract as Vega's agent.

In opposition to Port Elevator's summary-judgment motion, Vega submitted her above-referenced declaration (pursuant to 28 U.S.C. § 1746) "under penalty of perjury", stating she never authorized Gutierrez to act as her agent regarding the corn. *See* ***DIRECTV, Inc. v. Budden***, 420 F.3d 521, 530-31 (5th Cir. 2005) (stating 28 U.S.C. § 1746 creates exception to the rule that unsworn affidavits may not be used to create a genuine issue of material fact precluding summary judgment). In that declaration, Vega stated she instructed AGI to send the corn to Port Elevator, but insisted she never authorized an agent to enter into any agreement with Port Elevator.

9

The record does contain *some* evidence establishing some form of relationship between Vega and Gutierrez; for example, Gutierrez signed the "RECEIVED BY" line on invoices for some of the corn Vega purchased. Viewing the evidence in the requisite light most favorable to Vega, however, it does not establish, for summary-judgment purposes, that she authorized Gutierrez to enter into the contract. (In addition, other genuine issues of material fact exist, including whether Vega's name appeared on the corn contract when it was signed and notarized.) Therefore, the summary judgment regarding Vega's liability on the contract was improper.

2.

Because we vacate the summary judgment awarded Port Elevator, we do not reach whether the district court erred in awarding it approximately $81,000 and attorney's fees, including as awarded under § 1927 and pursuant to Texas Civil Practice & Remedies Code Annotated § 38.001. On remand, the district court should reconsider the § 1927 award, including the limited persons to whom § 1927 may be applied. It should also consider whether all the conditions for awarding fees pursuant to § 38.001(8), including presentment of the claim to the opposing party, were satisfied. *See* TEX. CIV. PRAC. & REM. CODE § 38.002(1) (requiring claimant to present claim to opposing party before recovering attorney's fees); *see also* **Jim Howe Homes, Inc. v. Rogers**, 818 S.W.2d 901, 904 (Tex. App. 1991) (holding allegations in pleading do not constitute presentment).

B.

Vega also contends the district court erred in denying her summary judgment and holding she take nothing on her negligence, conversion, fraud, and DTPA claims.  Summary judgment against those claims was proper.  (Port Elevator's brief, also filed on behalf of Elkins and Southwest Grain, contends there is no evidence either that Elkins acted in his individual capacity or that Southwest Grain controlled Port Elevator.  This issue is minimally briefed.  In any event, because we affirm the dismissal of Vega's claims, we need not address this issue.)

1.

Under Texas law, a negligence claim has three elements:  (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) damages were proximately caused by that breach.  **D. Houston, Inc. v. Love**, 92 S.W.3d 450, 454 (Tex. 2002).  Whether a duty exists under a given set of facts is a threshold question of law in any negligence action.  **Mission Petroleum Carriers, Inc. v. Solomon**, 106 S.W.3d 705, 710 (Tex. 2003).  In determining whether a duty exists, courts "consider various factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant".  **Id.** (internal quotation omitted).

Although she denies having the above-discussed written contract with Port Elevator, Vega claims Port Elevator, as a warehouseman, owed her a duty to safeguard her corn and not release it without her authorization. Essentially, she claims Port Elevator breached a bailment agreement. Such an agreement requires either an express or implied contract. **Sisters of Charity of the Incarnate Word v. Meaux**, 122 S.W.3d 428, 431 (Tex. App. 2003). Vega repeatedly denies, however, being a party to *any* contract with Port Elevator. Because Vega does not assert the existence of a contract, her negligence claim fails. (Vega also raises two statutory provisions to suggest Port Elevator was negligent. She raised neither in her summary-judgment motion. We will not consider them for the first time on appeal.)

2.

To prove conversion under Texas law, a plaintiff must establish: (1) she owned, possessed, or had the right to immediate possession of the personal property at issue; (2) the defendant wrongfully exercised dominion or control over the property; and (3) the defendant refused the plaintiff's request to return the property. **Apple Imps. v. Koole**, 945 S.W.2d 895, 899 (Tex. App. 1997). Further, to recover for conversion, the plaintiff must have suffered damages. **United Mobile Networks, L.P. v. Deaton**, 939 S.W.2d 146, 147 (Tex. 1997). Refusal for a reasonable amount of time to return property is not conversion if, in good faith, the

party holding the property is unsure who the rightful owner is. **Stein v. Mauricio,** 580 S.W.2d 82, 83 (Tex. Civ. App. 1979).

As discussed, Vega claims she shipped the corn to be stored at Port Elevator, but that she never signed a contract regarding that storage. The undisputed evidence demonstrates the corn was stored by Port Elevator, pursuant to the contract signed by Gutierrez. Although Vega claims she never authorized Gutierrez to sign that contract, she still maintains she had the corn sent to be stored at Port Elevator. The undisputed evidence demonstrates Port Elevator legally possessed it.

Therefore, to prove conversion, Vega must establish a wrongful and unreasonable refusal to return the corn after she demanded its return. She fails to do so. When Port Elevator was presented with Vega's claimed ownership and was unable to determine the rightful owner, it filed this interpleader action, bringing in as claimants Vega and Gutierrez. Needless to say, in the light of the summary-judgment record, this was a reasonable step to establish the rightful owner. Therefore, Port Elevator is not liable for conversion. *Id.; see also* **Smith v. Texas & N.O.R. Co.,** 127 S.W. 866, 868-69 (Tex. Civ. App. 1910) (stating that filing interpleader action to determine rights was reasonable and relieved bailee of any liability for conversion).

3.

The following elements are required to establish common-law fraud pursuant to Texas law:

> (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

Vega claims Port Elevator falsely represents itself to the public as a public warehouse that stores corn or grain and only releases those commodities with the express consent of the owner. This claim certainly does *not* rise to the level of fraud — Vega does not even claim Port Elevator made *any* statement to her, let alone a material representation. Therefore, Vega cannot establish Port Elevator made a statement "with the intent that [she] act upon it". *Id.*

4.

Vega claims Port Elevator violated § 17.46(a) and (b)(5) of the DTPA, resulting in damages. Relevant to this appeal, a consumer may recover for violations of the DTPA when a defendant engages in

> (1) ... a false, misleading, or deceptive act or practice that is:

>       (A) specifically enumerated in a subdivision
>   of Subsection (b) of Section 17.46 of this
>   subchapter; and
>
>       (B) relied on by a consumer to the consumer's
>   detriment[.]

TEX. BUS. & COM. CODE ANN. § 17.50(a). The above-referenced § 17.46 provides, *inter alia*:

>   (a) False, misleading, or deceptive acts or
>   practices in the conduct of any trade or
>   commerce are hereby declared unlawful and are
>   subject to action by the consumer protection
>   division under Sections 17.47, 17.58, 17.60,
>   and 17.61 of this code.
>
>   (b) Except as provided in Subsection (d) of
>   this section, the term "false, misleading, or
>   deceptive acts or practices" includes, but is
>   not limited to, the following acts:
>
>   . . . .
>
>   (5) representing that goods or services have
>   sponsorship, approval, characteristics,
>   ingredients, uses, benefits, or quantities
>   which they do not have or that a person has a
>   sponsorship, approval, status, affiliation, or
>   connection which he does not[.]

*Id.* § 17.46(a), (b)(5).

As noted, Vega claims Port Elevator held itself out as a public warehouse that would not release a stored commodity without the commodity owner's express consent. Port Elevator asserts Vega does not qualify as a consumer for DTPA purposes because, as a stranger to the corn-storage contract, she never purchased goods or services from Port Elevator. (This, of course, is contrary to its claim that it did have that contract with Vega through her agent.)

In any event, even if Vega qualifies as a consumer for DTPA purposes, she provides no evidence establishing a DTPA violation. Vega contends Port Elevator misrepresented the nature of its business; but, as with her fraud claim, she points to no specific misrepresentations. In fact, as discussed earlier, Vega fails to demonstrate Port Elevator made any representations. Her unsupported allegation is insufficient to withstand summary judgment. *May v. Dep't of Air Force*, 777 F.2d 1012, 1016 (5th Cir. 1985).

C.

Finally, Vega challenges the default judgment against Gutierrez and Sysco de Baja. Neither appeared in district court nor appeals. Vega cannot appeal on their behalf.

III.

For the foregoing reasons, the judgment is **VACATED IN PART** and **AFFIRMED IN PART** and this matter is **REMANDED** for further proceedings consistent with this opinion.

*VACATED IN PART; AFFIRMED IN PART; AND REMANDED*