IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

SEP 1 1 2009

Clerk of Court

| | | |
|---|---|---|
| PORT ELEVATOR BROWNSVILLE, L.C. and SOUTHWEST GRAIN CO., INC., | § § § | |
| Plaintiffs, | § § § | |
| v. | § § § | CIVIL ACTION NO. B-98-23 |
| IVONNE SOTO VEGA, ET AL., | § § § | |
| Defendants. | § § | |

## OPINION AND ORDER

BE IT REMEMBERED that on September ___*ll*___, 2009, the Court considered Defendant's Motion to Compel and Motion for Sanctions, Dkt. No. 231, Defendant's Motion for Reconsideration and Motion for Hearing, Dkt. No. 232, and the Texas Department of Agriculture's Motion to Quash Subpoena, Dkt. No. 234.

### I.    Background

The parties have become embroiled in a post-judgment discovery dispute. On March 30, 2009, this Court entered an Amended Final Judgment and ordered Plaintiff Port Elevator to deposit the amount of $153,480.88 in the registry of the Court.  Dkt. No. 210 at 1.  On April 29, 2009, Plaintiff filed a Notice of Appeal. Dkt. No. 215.  By June 2, 2009, Plaintiff had not yet deposited the required amount in the registry of the Court.

The following day, Defendant Ivonne Soto Vega propounded a set of interrogatories and requests for production of documents asking Plaintiff to produce evidence concerning the whereabouts of the judgment amount.  Dkt. No. 231 Ex. 1-2.  She also noticed "one or more corporate representatives" of Port Elevator for "Deposition in Aid of Judgment" for July 15, 2009.  Dkt. No. 231 at 2 (citing *Id.* Ex. 4).

Vega also filed a Motion to Enforce Writ of Execution.  Dkt. No. 219.  In response, Port Elevator filed a Motion to Suspend Judgment and deposited $10 in the registry of the Court on June 19, 2009.  Dkt. No. 227.  In support of that motion, Port Elevator filed the affidavit of Craig Elkins, one of Plaintiff's Principals and a General Manager, certifying that the company has had a continuously negative net worth since at least 2007.  *Id.* at Ex. 1 at 1.  On July 17, 2009, this Court entered an Order approving Plaintiff's supersedeas bond.  Dkt. No. 230.

Port Elevator sent two letters objecting to Vega's post-judgment discovery.  On July 2, 2009, it informed Vega that it would not respond to her interrogatories and requests for production of documents because it had "filed a deposit and affidavit sufficient to supersede the judgment."  Dkt. No. 231 Ex. 4 at 14.  Similarly, on July 14, 2009, Port Elevator informed Vega that it would not produce corporate officers for deposition because it had "superseded the judgment with the bond and affidavit posted."  *Id.* Ex. 7 at 1.  Vega filed a motion to compel seeking sanctions for discovery abuse.  Dkt. No. 231.

Vega also sought production of Port Elevator's mandatory financial filings from the Texas Department of Agriculture (TDA).  On July 15, 2009, Vega issued a subpoena to the TDA requesting "all financial information submitted by Port Elevator, Brownsville-L.C., from the years 2002 to the present . . . to establish net worth."  Dkt. No. 234 Ex. A at 1.  The TDA filed a Motion to Quash, Dkt. No. 234, arguing that the records sought by Vega are privileged from public disclosure under Tex. Agric. Code § 14.012 (Vernon 2008).  In their response, Vega asked the Court to permit discovery of the financial records under a protective order which would prevent public disclosure.  *See* Dkt. No. 241 at 1.

Finally, on July 22, 2009, Vega filed a motion to set aside the Court's July 17, 2009 Order approving Port Elevator's supersedeas bond and conduct a hearing to determine Port Elevator's net worth.  Dkt. No. 232.  Port Elevator has responded to this motion.  Dkt. No. 235.

## II.     Discussion

Federal Rule of Civil Procedure 69(a)(2) permits a judgment creditor to "obtain discovery from any person—including the judgment debtor—as provided

2

in these rules or by the procedure of the state where the court is located." Port Elevator has consistently maintained that it is not required to respond to Vega's post-judgment discovery because it posted a valid supersedeas bond sometime before July 2, 2009, presumably on June 19, 2009, the day on which the bond was deposited in the registry of the Court. *See* Dkt. No. 231 Ex. 7 at 1. In its July 14, 2009, letter to Vega, Port Elevator made its position clear: "Because [Port Elevator] has superceded the judgment with the bond and affidavit posted, [an officer of the corporation] will not be presenting himself tomorrow for deposition." *Id.* Of course, if a stay were in effect by July 2, 2009, it would stand to reason that Vega's subpoena to the Texas Department of Agriculture, issued July 15, 2009, would be invalid.

Vega insists that "no stay had been issued" before the Court issued its July 17, 2009, order approving Port Elevator's supersedeas bond. Dkt. No. 230. Vega finds support in the plain language of Federal Rule of Civil Procedure 62(d) which states that "[t]he stay takes effect when the Court approves the bond." The applicable Texas rule states

> At any time after rendition of judgment, and so long as said judgment has not been suspended by a supersedeas bond . . . , the successful party may, for the purpose of obtaining information to aid in the enforcement of such judgment, initiate and maintain in the trial court in the same suit in which said judgment was rendered any discovery proceeding authorized by these rules for pre-trial matters.

Tex. R. Civ. P. 621a (Vernon 2008). Vega implies that a judgment debtor cannot avoid post-judgment discovery already in progress by applying for a supersedeas bond. *See* Dkt. No. 231 at 6. Yet that is exactly the choice judgment debtors have under Rules 62(d) and 621a.

After approving a supersedeas bond, a court may consider the propriety of continuing all post-judgment discovery regardless of when that discovery was initiated. For example, in *Halliburton Energy Servs., Inc., v. NL Indus.*, 618 F. Supp. 2d 614 (S.D. Tex. 2009), plaintiffs won a multi million dollar money judgment against defendant Halliburton. *Id.* at 642. The day after that judgment

3

became final, plaintiffs filed requests for production of documents concerning Halliburton's financial condition and ability to satisfy the judgment. *Id.* at 655. The court approved a supersedeas bond in an amount exceeding the judgment thirteen days later. *See id.* at 657. Several months later, after examining the progress of the appeal, the court concluded that "[t]he record does not support the need for discovery or an order preventing transfer or dissipation of assets at this time." *Id.* The *Halliburton* court entered a protective order preventing the judgment creditors from pursuing post-judgment discovery even though that discovery had been initiated before Halliburton posted and the court approved the supersedeas bond. *Id.* at 657-58. Texas courts interpreting Rule 621a have put judgment debtors to a similar choice: respond to post-judgment discovery or post a supersedeas bond. *See, e.g.*, In re Emeritus Corp., 179 S.W.3d 112, 113-15 (Tex. App. 2005) (posting supersedeas bond foreclosed discovery under first prong of rule 621a); Hayes v. Hayes, 920 S.W.2d 344, 344 (Tex. App. 1996) (per curiam) (giving party choice of either filing supersedeas bond or complying with post-judgment discovery); O'Connor v. Sam Houston Med. Hosp., Inc., 802 S.W.2d 247, 251 (Tex. App. 1990) (utilizing failure to file supersedeas bond as factor when determining appropriateness of failure to respond to post-judgment discovery).

When a judgment debtor posts a supersedeas bond in the full amount of a money judgment, a stay normally takes effect upon approval of the bond by the Clerk of the Court. Hebbert v. Exxon Corp., 953 F.2d 936, 938 (5th Cir. 1992); Houston Fire Cas. & Ins. Co. v. Ivens, 323 F.2d 112, 114 (5th Cir. 1963). The fact that this Court approved a supersedeas bond totaling less than the amount of the money judgment does not diminish its power to stay all post-judgment discovery in this case. This conclusion flows from the purpose of a supersedeas bond. "The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal." Poplar Grove Planting & Ref. Co. v. Stuart, 600 F.2d 1189, 1190-91 (5th Cir. 1979), quoted in *Hebbert*, 953 F.2d at 938. Port Elevator has met its burden to show this Court that its $10 deposit protects Vega's interests on appeal. *See Poplar Grove*, 600

F.2d at 1190. That is, because Port Elevator has had a negative net worth since 2007, Vega would not necessarily be able to collect the full value of the judgment. Dkt. No. 230 at 2. The approved supersedeas bond therefore will preserve the status quo and protect Vega's interests on appeal. *See* Edwards v. Armstrong World Indus., 6 F.3d 312, 320 (5th Cir. 1993); *Poplar Grove*, 600 F.2d at 1190-91. As this bond will perform the same function of preserving the status quo in this case, the Court concludes that it should treat Vega's post-judgment discovery according to the rules applicable when a full supersedeas bond has been posted.

The parties agree that Texas Rule of Civil Procedure 621a applies to their post-judgment discovery. Dkt. No. 231 at 7; *see also* Fed. R. Civ. P. 69(a)(2) (2008). Rule 621a permits post-judgment discovery in two discrete situations. *Halliburton*, 618 F. Supp. 2d at 659 (citing *In re Emeritus*, 179 S.W.3d at 114). The first is qualified by the language "so long as the judgment has not been suspended by a supersedeas bond." Tex. R. Civ. P. 621a (Vernon 2008). It does not apply when a judgment debtor posts a bond in the full amount of the money judgment. *Halliburton*, 618 F. Supp. 2d at 659-60 (citing *In re Emeritus*, 117 S.W.3d at 114). This Court sees no reason why it should apply when a judgment debtor posts a bond in an amount less than the full money judgment when the Court has found that this amount protects the judgment creditor's interests on appeal.

Rule 621a also permits post-judgment discovery "in furtherance of motions made under Texas Rule of Appellate Procedure 24."[1] *Halliburton*, 618 F. Supp. 2d at 659 (quoting Tex. R. Civ. P. 621a (Vernon 2008)). A determination under that rule "is a factual matter requiring the trial court to determine whether the judgment debtor is likely to dissipate or transfer its assets to avoid satisfaction of the judgment." *Id.* at 660 (quoting Emeritus Corp. v. Ofczarzak, 198 S.W.3d 222, 227 (Tex. App. 2006)).

---

[1] Rule 621a currently refers to Texas Rules of Appellate Procedure 47 and 49. *See* Tex. R. Civ. P. 621a (Vernon 2008). However, these rules have been subsequently merged into Rule 24. *Halliburton*, 618 F. Supp. 2d at 659 n.23 (citations omitted).

The Court does not believe discovery is warranted at this time by a risk that Port Elevator will transfer or dissipate its assets.  The Court has already been persuaded in its July 17, 2009, Order and Opinion, Dkt. No. 230, that Port Elevator has had a negative net worth for the last three years.  Dkt. No. 230 at 2. In its motion to set aside that order, Vega argues that it has uncovered new evidence tending to show that Port Elevator has misstated its financial position to this Court or that it might dissipate its assets.  *See* Dkt. No. 232 at 5-6.  This evidence could be better characterized as a new line of argument not raised in its original Motion to Enforce Judgment.

Vega points out that Texas law requires Port Elevator to maintain a surety with a specific cash value per bushel of grain in the elevator it operates.  Dkt. No. 232 at 6 (citing Tex. Agric. Code. § 14.031(e) (Vernon 2008).  This must mean, according to Vega, that Port Elevator does not have a negative net worth as it claims.  *See id.*  This is not necessarily so.  If anything, Port Elevator's obligation to keep these assets on hand makes it more likely that it will ultimately be able to satisfy the judgment if it does not prevail on appeal.  Texas law makes it difficult for Port Elevator to transfer or dissipate assets used as its surety without posting a deficiency bond.  *See id.*  Those same assets could ultimately be used to satisfy the judgment, but depositing them with the Court during the pendancy of the appeal would threaten Port Elevator's good standing with the TDA and perhaps its continued business interests.  *See* Tex. Agric. Code § 14.031 (Vernon 2008).  Thus, the Court believes that the danger of dissipation of Port Elevator's assets is minimal at this time.[2]

Port Elevator represents to the Court that the difference in net worth calculations can be attributed to differences in the accounting methods of Generally Accepted Accounting Principals which it used when making its representations to this Court and the reporting rules of the TDA.  See Dkt. No. 235 at 2.  Vega's estimate of Port Elevator's net worth is within $2,500.00 of the

---

[2] For reasons similar to its state law analysis sought, the Court also finds that the Court also bases its ruling on its power to issue protective orders under Federal Rule of Civil Procedure 26(c)(1).  *See Halliburton*, 618 F. Supp. 2d at 661 n.24.  Further post-judgment discovery would constitute an undue burden on Port Elevator especially in light of the fact that Texas law makes it unlikely that Port Elevator will dissipate its assets at this time.

company's stated negative net worth.  Dkt. No. 232 at 6 ($833,332.32) *with* Dkt. No. 230 at 2 (-$835,736.00).  This similarity could be easily explained If Port Elevator were to list its surety obligation to the TDA as a liability and did not have other cash on hand at the end of its fiscal year.  The Court therefore credits Port Elevator's explanation and concludes that it is unlikely that Port Elevator misstated its financial position to this Court.

Having concluded that further post-judgment discovery is not appropriate at this time, sanctions are inappropriate given Port Elevator's good faith belief that a stay was in effect.  *Cf.* Bon Air Hotel, Inc. v. Time, Inc., 376 F.2d 118, 121 (5th Cir. 1967) (good faith relevant factor when considering sanctions and failure to comply with discovery orders).  Also, for the same reason, The Court need not reach the state law privilege issues raised by the Texas Department of Agriculture's Motion to Quash.  Dkt. No. 234.

## III.   Conclusion

WHEREFOR, the Court **DENIES** Defendant Ivonne Soto Vega's Motion to Compel and Defendant's Motion to Set Aside.  Dkt. Nos. 231, 232.  The Court **GRANTS** the Texas Department of Agriculture's Motion to Quash.  Dkt. No. 234.

The Court also **STAYS** further post-judgment discovery in this case.  The parties have leave to apply to the Court to lift this stay upon a showing of good cause.

DONE at Brownsville, Texas, on September ___11___, 2009.

Hilda G. Tagle
United States District Judge

7